# EXHIBIT E

**FILED**
Chris Daniel
District Clerk
MAY 04 2015
Time: _____
By _____ 8:28am
Harris County, Texas
Deputy _____ M. Hill

CAUSE NO. _____ 2015 25577

|  |  |  |
|---|---|---|
| TINA ALEXANDER, | § | IN THE DISTRICT COURT OF |
| Plaintiff, Pro Se | § | |
| | § | HARRIS COUNTY, TEXAS |
| V. | § | |
| | § | _165_ JUDICIAL DISTRICT |
| WELLS FARGO BANK, N.A. | § | |
| FKA WACHOVIA MORTGAGE, FSB, | § | |
| FKA WORLD SAVINGS BANK, FSB, | § | |
| ITS SUCCESSORS AND/OR ASSIGNS, | § | COMPLAINT FOR: |
| "DOES" 1-10 | § | 1. DECLARATORY RELIEF |
| Defendant(s) | § | 2. TEMPORARY RESTRAINING ORDER |
| | § | |
| *these being fictitious names as the true and  actual identities | § | |
| are not known by Plaintiff at this time | § | **BENCH TRIAL REQUESTED** |

## PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DECLARATORY

## JUDGEMENT AND TEMPORARY RESTRAINING ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Tina Alexander, *Pro Se* (hereinafter referred to as "Plaintiff") hereby files this Plaintiffs' Original Petition and Request for Declaratory Judgment and Request for a Temporary Restraining Order complaining of defendants Wells Fargo Bank, N.A., FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, its successors and/or assigns, and "Does 1-10" for the underlying violations of the Texas Constitution, Texas Deceptive Trade Practices Act, Texas Uniform Commercial Code, violation of the Texas legal standard regarding Breach of Contract, Remedial Fraud, Negligent Representation, Duty to Deal in Good Faith and the Ogden Notice Requirement, and in support thereof shows the Court the following:

## I. DISCOVERY PLAN

1. Plaintiff requests that Discovery shall be conducted under Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

## II. PARTIES

2. Plaintiff Tina Alexander at all relevant times were and continues to be, a resident of the

1

CONFIRMED FILE DATE: 5/4/2015

County of Harris, State of Texas, and is the title owner of the real property situated at 12318 Mossycup Drive, Houston, Texas. Tina Alexander may be served with papers and other service at the above address as they are in Pro Se.

3. Defendant Wells Fargo Bank, N.A., FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, its successors and/or assigns, upon information and belief, is a federally chartered bank and is engaged in the banking business in the State of Texas, who may be served by and through their Registered Agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808 and Wells Fargo Bank, N.A., 4101 Wiseman Boulevard, San Antonio, TX 78251. Service of said Defendant as described above can be effected by Certified Mail Return Receipt Requested.

4. Plaintiff is unaware of the true names and capacities of the Defendants sued herein and identified in the caption as John Doe's 1 through 10 inclusive, and therefore sue these Defendants as "Doe's". Upon information and belief, the "Doe" defendants are agents, servants, and/or employees of Defendant Wells Fargo Bank, N.A., and they engaged in conduct that is complained of herein; at all relevant times, the "Doe" defendants acted within the scope of their agency and/or employment and each of the foregoing "Doe" Defendants is responsible for the conduct alleged herein, and is responsible for the damages suffered by Plaintiff described in this complaint. The Plaintiff will advise the Court of the true names and capacities of these "Doe" Defendants as soon as they are ascertained.

### III. JURISDICTION AND VENUE

5. The Court has the jurisdiction to hear these causes of action in that the damages are within the minimum jurisdictional limits and authority of the Court.

6. All or a substantial part of the events and transactions giving rise to the causes of action stated herein occurred in Houston, Harris County, Texas making venue proper in Harris County pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

7. This action is related to the recovery of real property or an estate or interest in real property, or to remove encumbrances from the title to real property, or for recovery of damages to real property or to quiet title to real property, and as such real property is located in Harris County, Texas venue is proper in Harris County pursuant to Tex. Civ. Prac. & Rem. Code § 15.011. *(Acts*

*1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.  Amended by Acts 1995, 74th Leg., ch. 138, § 2, eff. Aug. 28, 1995.)*

  8. Venue is proper as to the defendant who participated in the transactions making the basis of this action, occurred in Harris County, Texas and thus, venue is proper as to all defendants in Harris County, pursuant to Tex. Civ. Prac. & Rem. Code § 15.005.

## IV.  ACTS OF AGENTS

  9. Whenever in this petition it is alleged that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB did any act or thing, it is meant that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB performed or participated in such act or thing or that such act was performed by Defendant Does 1 through 10 and who were authorized to act and did in fact act on behalf of Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB or otherwise acted under the guidance and direction of Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB.

## V.  FACTUAL BACKGROUND

  10. On or about September 15, 1998, Plaintiff borrowed the sum of  $296,000.00 from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB as a home equity loan as defined under Section 50(a)(6), Article XVI of the Texas Constitution. An acknowledgement of the fair market value of Plaintiff's home was not executed. As evidence of the loan transaction, Plaintiff signed and delivered to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a written promissory note in the form of a Texas Equity Fixed Rate – First Lien.  A copy of the aforesaid promissory note is annexed to this Complaint as Exhibit "**1**" and incorporated herein by reference.

  11. To secure payment of the promissory note, Plaintiff signed and delivered to Gary Bradley, trustee for Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, a deed of trust dated September 16, 1998, in which Plaintiff (as trustor) conveyed to Gary Bradley (as trustee) an interest in the Property as security for payment of the promissory note to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB (as beneficiary). A copy of the deed of trust is annexed hereto as Exhibit "**2**" and is incorporated herein by reference.

12.   On or about September 22, 1998, the deed of trust was recorded in the Official Records of the County of Harris, State of Texas.

13.   The above referenced promissory note, Section 3, specified a monthly payment due from the Plaintiff to the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB of $2,120.59 per month.

14.   On or About June 14, 2002, the Plaintiff, while reviewing Plaintiff's file on the home 12318 Mossycup Drive, Houston, Texas, discovered that there was no Acknowledgement of Fair Market Value of the Mossycup home or an appraisal of the Mossycup home.

15.   On or about June 15, 2002, Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail, A copy of which is annexed hereto as Exhibit "3" and is incorporated herein by reference, and informed them of the lack of an Acknowledgement of Fair Market Value or appraisal showing the same and requested a copy of the Fair Market Value Acknowledgement from their files. Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB has never responded.

16.   On or about September 1, 2005, Plaintiff fell behind on their payments to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB.

17.   On or about June 8, 2006, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB sent to the Plaintiff a Notice of Acceleration and a copy of the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB Application for an Order of Foreclosure filed in the District Court of Harris County, Texas, 215th Judicial District. A copy of the Notice of Acceleration is annexed hereto as Exhibit "4" and is incorporated herein by reference. A copy of the Application for an Order of Foreclosure is annexed hereto as Exhibit "5" and is incorporated herein by reference.

18.   On or about June 4, 2007, Plaintiff filed for Chapter 13 Bankruptcy.

19.   On or about July 25, 2007, Plaintiff's Chapter 13 Bankruptcy was dismissed and Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB was given leave to go forward with foreclosure proceeding.

20.   On or about September 7, 2007, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB sent the Plaintiff a Notice of Acceleration, Posting & Foreclosure. A copy of the Notice of Acceleration, Posting & Foreclosure is annexed hereto as Exhibit "6" and incorporated herein by reference.

21.   On or about September 19, 2007, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB forwarded to the Plaintiff a "Reinstatement Quote" dated September 13, 2007, stating in relevant part, "Please find the breakdown of the total amount due to *reinstate (emphasis added)* the above loan from foreclosure as indicated below." The "Reinstatement Quote" goes on to indicate an amount of $105,440.15 needs to be forward from the Plaintiff to the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB in order to reinstate the loan and showing a breakdown of the total due to reinstate of:

| | |
|---|---|
| 43 payment(s) | $93,388.02 |
| Advance(s): Escrow | .00 |
| Accrued Late Charge | $3,710.16 |
| MISCELLANEOUS FEE(S) | |
| Corporate Advance | $1,321.00 |
| Additional Charges | $6,227.97 |
| Foreclosure | $748.00 |
| Less: Credit (suspense) | .00 |
| Total required to reinstate loan in full | $105,395.15 |
| Property preservation/inspection fees | $45.00 |
| NSF fees | $.00 |
| TOTAL REQUIRED TO REINSTATE LOAN | $105,440.15 |
| AND RELATED WORLD SAVINGS CHARGES | |

A copy of the Reinstatement Quote dated September 13, 2007 is annexed hereto as Exhibit "7" and incorporated herein by reference.

22.   On or about September 28, 2007, Plaintiff forwarded to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB via wire transfer $106,000.00

to satisfy the requirements of the above referenced and attached Reinstatement Quote. Proof of payment annexed hereto as Exhibit "**8**" and incorporated herein by reference.

23.   On or about October 12, 2007, Plaintiff contacted Defendant Doe 1-10 regarding the regular monthly payment of the reinstated loan. Defendant Doe 1-10 indicated that an additional 440.53 was added to the October 1, 2007 regular monthly payment, which would serve to clear the final escrow amount from the monthly statements, and that the regular monthly payment would return to the contracted $2,120.59. Plaintiff agreed to a single forbearance payment of $440.53 to be added to the October 1, 2007 regular monthly payment of $2,120.59, for a total of $2,561.12, and made said payment telephonically and received a confirmation number of 5120948963 from the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB. On or about October 13, 2007, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB forwarded by fax to Plaintiff a loan statement dated October 1, 2007 reflecting the regularly monthly payment and the single forbearance payment of $440.53 and showing no transaction activity with regards to escrow. A copy of the payment acknowledgement dated October 12, 2007 is annexed hereto as Exhibit "**9**" and incorporated herein by reference. A copy of the Loan Statement dated October 1, 2007 is annexed hereto as Exhibit "**10**" and incorporated herein by reference.

24.   On or about October 15, 2007, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB forwarded to the Plaintiff an Annual Escrow Account Disclosure Statement dated October 4, 2007. This Annual Escrow Account Disclosure Statement reflected a change in the monthly payment due from Plaintiff to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB from $2,561.12 to $8,768.85 monthly, effective December 1, 2007. Plaintiff immediately contacted Defendant Doe 1-10 and was told that the Annual Escrow Account Disclosure Statement was in error. A copy of the Annual Escrow Account Disclosure Statement dated October 4, 2007 is annexed hereto as Exhibit "**11**" and incorporated herein by reference.

25.   On or about October 16, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a Loan Statement dated October 6, 2007 showing a payment demand for $11,350.21 reflecting no transaction activity with regards to escrow, and stating a loan History Statement will follow under separate cover.  The payment demand for $11,350.21 included a past due amount of $8,789.09, which included the

October 1, 2007 payment of $2,120.59 with the single forbearance payment of $440.53 totaling $2,561.12 and $6,227.97 in fees due. The Plaintiff contacted Defendant Doe 1-10, by mail, a copy of which is annexed hereto as Exhibit "_" and is incorporated herein by reference, to enquire as to the discrepancy between the Annual Escrow Account Disclosure Statement, the just received Loan Statement dated October 6, 2007, the acknowledgement of the October 12, 2007 regular monthly payment of $2,120.59 with the single forbearance payment of $440.53 totaling $2,561.12, and the statement from Defendant Doe 1-10 that the Annual Escrow Account Disclosure Statement was in error and would be corrected. Plaintiff was told by Defendant Doe 1-10 to ignore the Loan Statement dated October 6, 2007, because they were in receipt of Plaintiff's October 1, 2007 payment, and that the $6,227.97 in fees was still being cleared from escrow disbursements on Plaintiff's monthly loan statements, which had been reflected on the loan reinstatement detail as fees. Defendant Doe 1-10 also informed Plaintiff that Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB was still applying the Plaintiff's reinstatement funds to Plaintiff's loan account and that all the discrepancies would be cleared up and Plaintiff would receive an accounting of the applied reinstatement funds. Defendant Doe 1-10 reiterated to Plaintiff to disregard the Annual Escrow Account Disclosure Statement and the Loan Statement dated October 6, 2007, because both were incorrect and the Plaintiff's payment would be the reinstated amount of $2,120.59. On or about October 16, 2007, Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail to confirm and document the above statements and direction from Defendant Doe 1-10 to the Plaintiff on several phone enquiries, and Plaintiff's request of a complete and accurate accounting of Plaintiff's loan and an explanation of the discrepancies noted above. A copy of the Loan Statement dated October 6, 2007 is annexed hereto as Exhibit "12" and incorporated herein by reference. A copy of the Plaintiff's letter dated October 16, 2007 is annexed hereto as Exhibit "13" and incorporated herein by reference.

26. On or about October 20, 2007, Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail pointing out that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB has forwarded multiple, conflicting accountings and demands for payment and that none of them reflected the terms of the loan agreement that had been reinstated, and that the Plaintiff was frustrated and confused and unsure of which if any demand to pay. Plaintiff further stated that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB's actions and demands were in violation of the loan agreement and seemed to be designed to force the Plaintiff into

7

default. A copy of the Plaintiff's letter dated October 20, 2007 is annexed hereto as Exhibit "**14**" and incorporated herein by reference.

27. On or about October 29, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a Loan Statement dated October 18, 2007 showing a payment due of either $8,789.09 or $11,248.67. This statement also included an escrow balance of $80,219.63. The preceding first Loan Statements dated October 1, 2007, the second Loan Statement dated October 6, 2007 did not show this balance. Plaintiff contacted Defendant Doe 1-10 regarding this Loan Statement and enquired as to the discrepancies between this statement and the first October 6, 2007 Loan Statement, the Annual Escrow Account Disclosure Statement, the second Loan Statement dated October 1, 2007, the acknowledgement of October 12, 2007 regular monthly payment of $2,561.12 inclusive of the single forbearance payment of $440.53 and the October 15, 2007 statement from Defendant Doe 1-10 that the Annual Escrow Account Disclosure Statement was in error. Plaintiff was told that they were to pay either $8,789.09 or $11,248.67 and that a payment of $2,120.59 would not be accepted. On or about October 29, 2007 Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail to enquire regarding the escrow balance that was not reflected in the earlier October 1, 2007 and October 6, 2007 Loan Statements, the discrepancies between the Loan Statements, payment demands, statement's by Defendant Doe 1-10, 1-10, and 1-10 and that none of them reflected the terms of the loan agreement that had been reinstated, and that the Plaintiff was frustrated and confused and unsure of which if any demand to pay. Plaintiff further stated that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB's actions and demands were in violation of the loan agreement and seemed to be designed to force the Plaintiff into default. A copy of the Loan Statement dated October 18, 2007 is annexed hereto as Exhibit "**15**" and incorporated herein by reference. A copy of the Plaintiff's letter dated October 29, 2007 is annexed hereto as Exhibit "**16**" and incorporated herein by reference.

28. On or about November 1, 2007, Plaintiff tried to make the regular monthly payment of $2,120.59, as previously instructed by Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB. Defendant Doe 1-10 refused the payment. Defendant Doe 1-10 told Plaintiff an additional $6,227.97 stated as past due fees also had to be paid, and that Plaintiff could pay either $8,789.09 or $11,248.67, as reflected on the statement dated October 18, 2007. Plaintiff told Defendant Doe 1-10 about the loan statement dated October 6, 2007, (See Exhibit

"**12**"), and that on or about October 16, 2007, Defendant Doe 1-10 had discussed with Plaintiff, the $6,227.97 reflected as past due fees on the October 6, 2007 loan statement had been paid with the reinstatement payment of $106,000 on September 28, 2007 (See Exhibit "**7**"). In that discussion, Defendant Doe 1-10 explained to Plaintiff that the $6,227.97 labeled additional charges on the reinstatement detail dated September 13, 2007 was to pay the escrow amount listed on Plaintiff's previous statements of $860.38 and $5,286.33, totaling $6,146.71, and Plaintiff's loan payment would be reinstated to the original payment of $2,120.59, as Plaintiff had requested. Plaintiff also informed Defendant Doe 1-10 that Plaintiff had sent a letter on October 16, 2007 to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB documenting the explanation provided by Defendant Doe 1-10. Defendant Doe 1-10 was unconcerned with earlier statements and letters and stated that the only payment that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB would accept was either $8,789.09 or $11,248.67, as stated on loan statement dated October 18, 2007. Plaintiff had previously enquired about the escrow balance of $80,219.63 and pointed out that the loan was fully reinstated and current after the $106,000.00 reinstatement payment of September 28, 2007, and that Defendant Doe 1-10 had previously stated to Plaintiff that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB was transitioning from World Savings to Wachovia and that some funds were most likely applied incorrectly and Defendant Doe 1-10 would look into the issue.

29. On or about November 20, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a refund $61.00 for the overpayment of the reinstatement payment of $106,000.00 paid on September 28, 2007. Plaintiff was hopeful that Plaintiff's loan reinstatement was finally being corrected. A copy of the refund receipt dated November 20, 2007 is annexed hereto as Exhibit "**17**" and incorporated herein by reference.

30. On or about November 27, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a Loan Statement dated November 20, 2007 showed a total payment due of $14,182.97 on December 1, 2007. Plaintiff contacted Defendant Doe 1-10 regarding the newly received Loan Statement and Defendant Doe 1-10 stated the earlier Loan Statements provided should be disregarded and that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB would not accept any payment from the Plaintiff except for $14,182.97. The Plaintiff asked Defendant Doe 1-10 if funds were owed above the $106,000.00, then why did Defendant Wells Fargo Bank, N.A. FKA Wachovia

Mortgage, FSB, FKA World Savings Bank, FSB send Plaintiff a refund of $61.00 for an over payment. Defendant Doe 1-10 stated that Plaintiff should pay the $14,182.97 before further action was taken. On or about November 27, 2007, Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail pointing out that Defendant had forwarded multiple loan statements for the same time period with conflicting demands for payment, and that none of the statements reflected the terms of Plaintiff's loan agreement that had been reinstated, and Plaintiff had tried to make the accurate reinstated loan payments of $2,120.59 for both November and December 2007 and both payments were refused by Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB. Plaintiff expressed immense frustration with the lack of answers to the inconsistent loan statements, that contained unaccounted items, unexplained amounts, such as the magically appearing escrow numbers, and Plaintiff was confused and unsure how to resolve the discrepancies, since Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB would not accept Plaintiff's correct reinstated loan payments. Plaintiff included that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had not provide any reliable accounting or cohesive explanation of the payment demands and that without reliable accountings with explanations and acknowledgement of the reinstated loan agreement, Plaintiff was unable to act and what Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB continued to do and had been doing was unconscionable, unscrupulous and unreasonable and had broken and breached the loan agreement. A copy of the Loan Statement dated November 20, 2007 is annexed hereto as Exhibit **"18"** and incorporated herein by reference. A copy of the Plaintiff's letter dated November 27, 2007 is annexed hereto as Exhibit **"19"** and incorporated herein by reference.

31. On or about November 28, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a letter dated November 21, 2007, stating that the November payment from the Plaintiff had not been received, and stated in relevant part "Please make the payment immediately, including any late charges due for a total of $5,414.12." Plaintiff contacted Defendant Doe 1-10 and enquired as to the discrepancies between 3 different payment amounts Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had sent to Plaintiff for the November 1, 2007 loan payment. The 3 conflicting payment demands provided by Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB are for the payment demand of $5,414.12 in the

letter dated November 21, 2007, for the payment demand of $8,789.09 on Loan Statement dated October 6, 2007, and for the payment demand of either $8,789.09 or $11,248.67 on loan statement dated October 18, 2007. Also, Plaintiff enquired why late fees increased to $2,853.00 and were applied when late fees were always $106.03 since the beginning of this loan.  Plaintiff informed Defendant Doe 1-10 stated that Plaintiff had tried to pay the regular monthly payment of $2,120.59, which was the reinstated amount, and Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB refused to accept the payment. Defendant Doe 1-10 stated that they were uninterested in the earlier varying statement demands and that the Plaintiff was to pay $5,414.12. Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail pointing out that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB has forwarded multiple, conflicting accountings and demands for payment and that none of them reflected the terms of the loan agreement that had been reinstated, and that the Plaintiff was frustrated, confused and unsure of which, if any, demand to pay and that they were unable to trust the payment demands of Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB as they were in excess of the loan agreement and Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had not provide any reliable accounting or cohesive explanation of the payment demands and that without reliable accountings with explanation and acknowledgement of the reinstated agreement, Plaintiff was unable to act and what Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB was doing and had been doing was unconscionable, unscrupulous and unreasonable and had breached the loan agreement. Plaintiff stated that Defendant Does 1-10 refused to accept the correct, reinstated loan payment of $2,120.00 from Plaintiff multiple times.  Plaintiff additionally enquired as to why Plaintiff's earlier letters had gone unanswered. A copy of Defendant's letter dated November 21, 2007 is annexed hereto as Exhibit "**20**" and incorporated herein by reference. A copy of Plaintiff's letter dated November 28, 2007 is annexed hereto as Exhibit "**21**" and incorporated herein by reference.

32.  On or about December 11, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a Certified letter "Notice of Intent to Foreclose" dated December 4, 2007. This Notice stated that Plaintiff's loan was in default and 2 months in arrears and demands a payment of $14,182.97, inclusive of a $106.03 late charge. This would equal to a payment of $7,038.47 per month, exclusive of the $106.03 late charge. On or

about December 11, 2007, Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB and spoke with Defendant Doe 1-10; Plaintiff was extremely upset, because only 2 months, 6 days prior to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB preparing the "Notice of Intent to Foreclose", Plaintiff had paid $106,000 to reinstate Plaintiff's loan, and only 14 days prior to the "Notice of Intent to Foreclose" Defendant sent Plaintiff a refund of $61.00 overpayment. Plaintiff enquired of Defendant Doe 1-10 as to why Plaintiff had received from October 1, 2007 to December 11, 2007 multiple demands for payment, none of which was the $2,120.59 regular monthly payment from the reinstated loan agreement. Defendant Doe 1-10 stated the Plaintiff was in default and that all prior statements and accountings prepared by and forwarded from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB were unimportant and that the Plaintiff was to pay the demanded $14,182.97 or face foreclosure. On or about December 11, 2007, Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail pointing out that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had sent multiple, conflicting accountings and demands for payment, and that none of the loan statements reflected the terms of the loan agreement that had been reinstated. Plaintiff had repeatedly tried to make the required reinstated loan payment of $2,120.59, but Defendant Does 1-10 would not accept the payments, and Plaintiff was frustrated, confused and unsure of which, if any, demand to pay, and that Plaintiff was unable to trust the payment demands of Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, because they were in excess of the loan agreement, and the loan statements were not consistent, contained unaccounted items, and unexplained amounts incorporated into the payment demands. Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had not provide any reliable accounting or cohesive explanation of the payment demands, and that without reliable accountings with explanation and acknowledgement of the reinstated agreement, Plaintiff was unable to act, and what Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB continued to do and had been doing was unconscionable, unscrupulous, and unreasonable, and Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had broken and breached the loan agreement. Plaintiff additionally enquired as to why Plaintiff's earlier letters confirming the conversations and discussions with Defendant Does 1-10 regarding the discrepancies that began appearing in October 2007 had remained unanswered. A copy of Defendant's Notice of Intent to

12

Foreclose dated December 4, 2007 is annexed hereto as Exhibit "**22**" and incorporated herein by reference. A copy of Plaintiff's letter dated December 11, 2007 is annexed hereto as Exhibit "**23**" and incorporated herein by reference.

33. On or about December 21, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a letter dated December 17, 2007 stating that there were past due payment on the loan and the amount due was $14,289.00 and offering ways to possibly work with Plaintiff to avoid foreclosure. Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB and spoke with Defendant Doe 1-10 to enquire as to why Plaintiff had not received an accounting with explanations, why none of the payment demands reflected the reinstated loan agreement, why the mysteriously appearing escrow that Defendant Does 1-10 previously told Plaintiff was incorrect, had not been corrected, and why there was such a wide variance of demands by Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB. Defendant Doe 1-10 stated that they had no information regarding any accountings and if Plaintiff did not want the foreclosure to proceed they would have to pay the $14,289.00 indicated in the December 17 letter. Defendant Doe 1-10 stated that only the demanded amount of $14,289.00 would be accepted. On or about December 21, 2007 Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail pointing out that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB has forwarded multiple, conflicting accountings and demands for payment and that none of them reflected the terms of the loan agreement that had been reinstated, Plaintiff had repeatedly tried to make the required reinstated loan payment of $2,120.59, but Defendant Does 1-10 would not accept the payments and that the Plaintiff was frustrated, confused and unsure of which, if any, demand to pay and that Plaintiff was unable to trust the payment demands of Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB as they were in excess of the loan agreement, and the loan statements were not consistent, contained unaccounted items, and unexplained amounts incorporated into the payment demands. Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had not provide any reliable accounting or cohesive explanation of the payment demands, and that without reliable accountings with explanation and acknowledgement of the reinstated agreement, Plaintiff was unable to act, and what Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB continued to do and had been doing was unconscionable, unscrupulous and unreasonable, and

Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had broken and breeched the loan agreement. Plaintiff additionally enquired as to why their earlier letters confirming the conversations and discussions with Defendant Does 1-10 regarding the discrepancies that began appearing in October 20007 had remained unanswered. A copy of Defendant's letter providing options to help avoid foreclosure dated December 17, 2007 is annexed hereto as Exhibit **"24"** and incorporated herein by reference. A copy of Plaintiff's letter dated December 21, 2007 is annexed hereto as Exhibit **"25"** and incorporated herein by reference.

34. On or about December 27, 2007, Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail and stated that on September 28, 2007, Plaintiff paid $106,000.00 to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB to **reinstate** the Loan Agreement, that the Loan Agreement as written is a contract, that the Plaintiff performed under the terms of the agreement as written until Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB refused to accept the contractually required payment, that in refusing to accept Plaintiff's payments, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had broken and breached the Loan Agreement, and that the Plaintiff expects Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB to abide by the terms of the Loan Agreement, and to repair the breach. Plaintiff further stated that as Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had breached the existing agreement, the Plaintiff would not perform under the agreement until such time as Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB repaired the breach. A copy of Plaintiff's letter dated December 27, 2007 is annexed hereto as Exhibit **"26"** and incorporated herein by reference.

35. On or about April 25, 2008, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a NOTICE OF ACCELERATION OF TEXAS NON-RECOURSE HOME EQUITY LOAN dated April 18, 2008. On or about April 25, 2008, Plaintiff contacted Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB by mail and forwarded the Plaintiff's prior correspondence dated October 16, 2007, October 20, 2007, October 29, 2007, November 27, 2007, November 28, 2007, December 11, 2007, December 21, 2007 and December 27, 2007 with a cover letter dated April 25, 2008 stating that 1. The Loan Agreement was a valid contract, 2. Plaintiff performed under the contract until

Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB refused to accept payment as specified in the Loan Agreement, 3. Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB breached the Loan Agreement by refusing the contractually specified payment and providing inaccurate and widely varying accountings and demands, 4. Pursuing legal action and attempting to seize the Plaintiff's home was doing harm to the Plaintiff, and 5. Plaintiff would not perform on the Loan Agreement as Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB breached the agreement, and despite repeated requests for clear accountings with full explanations and warnings that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB was in breach of the Loan Agreement, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB refused to repair the breach and provide any reliable accountings or cohesive explanation for unaccounted items and unexplained amounts incorporated into the payment demands. A copy of the Defendant's Notice of Acceleration of Texas Non-Recourse Home Equity Loan dated April 18, 2007, is annexed hereto as Exhibit "27" and incorporated herein by reference. A copy of Plaintiff's letter dated April 25, 2008 is annexed hereto as Exhibit "28" and incorporated herein by reference. The attached correspondence to the Plaintiff's letter of April 25, 2008 has already been identified as Exhibits **"26"**, **"25"**, **"23"**, **"21"**, **"19"**, **"16"**, **"14"**, and **"13"** have been incorporated by reference.

36. On or about June 5, 2008, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a copy of an APPLICATION FOR EXPEDITED FORECLOSURE PROCEEDING PURSUANT TO RULE 736 OF THE TEXAS RULES OF CIVIL PROCEDURE filed on May 19, 2008. A copy of Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB's APPLICATION FOR EXPEDITED FORECLOSURE PROCEEDING PURSUANT TO RULE 736 OF THE TEXAS RULES OF CIVIL PROCEDURE filed May 19, 2008 is annexed hereto as Exhibit "29" and incorporated herein by reference.

37. On or about May 3, 2009, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a copy of an "Escrow Breakdown".

38. On or about July 19, 2009, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a copy of an APPLICATION FOR EXPEDITED FORECLOSURE PROCEEDING PURSUANT TO RULE 736 OF THE TEXAS

15

RULES OF CIVIL PROCEDURE filed on July 14, 2009 on behalf of Gary Bradley, Trustee. A copy of Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB's APPLICATION FOR EXPEDITED FORECLOSURE PROCEEDING PURSUANT TO RULE 736 OF THE TEXAS RULES OF CIVIL PROCEDURE filed July 14, 2009 is annexed hereto as Exhibit "30" and incorporated herein by reference.

39. On or about October 9, 2009, Plaintiff attended an oral hearing in the District Court of Harris County, 157th Judicial District with Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB. At the end of the hearing, Judge Randy Wilson ordered Plaintiff to pay the regular monthly payment to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB of $2,120.00 each month for 3 months. Plaintiff informed Judge Wilson that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB had refused to accept Plaintiff's reinstated loan payment of $2,120.59 numerous times in the past. Judge Wilson did not order Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB to accept the payments, but that the Plaintiff should make the payments even "if you have to camp out in Wachovia's offices."

40. On or about October 12, 2009, Plaintiff attempted to make the contractually specified payment of $2,120.00 to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB and Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB refused to accept the proffered payment. Plaintiff was only able to effectuate payment through Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB counsel of record. A copy of the cancelled check referencing the loan number 10585743 and showing Wachovia Mortgage's stamp dated November 20, 2009 is annexed hereto as Exhibit "31" and incorporated herein by reference.

41. On or about November 19, 2009, Plaintiff made the contractually specified payment of $2,120.53 to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB and Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB refused to accept the proffered payment. Plaintiff was only able to effectuate payment through Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB counsel of record. A copy of the cancelled check referencing the loan number 10585743 and showing Wachovia Mortgage's stamp dated November 27, 2009 is annexed hereto as Exhibit "32" and incorporated herein by reference.

42. On or about December 16, 2009, Plaintiff made the contractually specified payment of $2,120.53 to Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB and Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB refused to accept the proffered payment. Plaintiff was only able to effectuate payment through Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB counsel of record, after multiple attempts. A copy of the cancelled check referencing the loan number 10585743 and showing Wachovia Mortgage's stamp dated January 21, 2010 is annexed hereto as Exhibit "33" and incorporated herein by reference.

43. On or about January 8, 2010, counsel for Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB provided the plaintiff with a "Escrow Breakdown" covering the period from March 1, 2005 to July 31, 2006. This "Escrow Breakdown" reflects a cumulative balance of disbursements from escrow of $110,750.49. This "Escrow Breakdown" shows Harris County taxes for the years 2002 and 2003 being paid from escrow three times on the dates March 1, 2005, October 14, 2005, and July 31, 2006. It further shows Harris County taxes for the year 2004 were paid from escrow three times on the dates March 1, 2005, March 18, 2005 and March 23, 2005 and Spring Branch ISD taxes for the year 2002, 2003 and 2004 were paid three times on the dates March 1, 2005, October 14, 2005 and July 31, 2006. Tax penalties were also paid 3 separate times for each of the years 2002, 2003 and 2004 on the dates of April 1, 2005, April 18, 2005 and July 31, 2006. In short the "Escrow Breakdown" purports to show that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB paid of the exact same tax bills three separate times. A copy of the "Escrow Breakdown" is annexed hereto as Exhibit "34" and incorporated herein by reference.

44. On or About January 30, 2010, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB an IRS Form 1098 Mortgage Interest Statement. Even though 2 of the loan payments directed by Judge Randy Wilson and referenced in paragraphs 40 through 43 was deposited and cleared into Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB accounts, the forwarded IRS Form 1098 did not reflect any payments in 2009. A copy of the IRS Form 1098 is annexed hereto as Exhibit "35" and incorporated herein by reference.

45. On or about February 10, 2010, Judge Randy Wilson of the 157th Judicial District of the District Court of Harris County signed an Order Permitting Foreclosure of Lien.

46. On or about January 30, 2011, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB an IRS Form 1098 Mortgage Interest Statement. Even though all 3 of the loan payments directed by Judge Randy Wilson and referenced in paragraphs 40 through 43 was deposited and cleared into Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB accounts, the forwarded IRS Form 1098 for the year 2009 reflected a single payment in 2010. A copy of the IRS Form 1098 for the year 2009 is annexed hereto as Exhibit "**36**" and incorporated herein by reference

47. On or about September 13, 2013, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB filed an Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure. In the aforementioned filing there is a copy of a demand for payment but no notice of acceleration. A copy of this filing is annexed hereto as Exhibit "**37**" and incorporated herein by reference.

48. On or about March 3, 2014, Plaintiff filed a Complaint and Application for a Temporary Restraining Order against Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB.

49. On or about March 6, 2014, Plaintiff received from Defendant a Notice of Rescission of Acceleration. A copy of this Notice is annexed hereto as Exhibit "**39**" and incorporated herein by reference.

50. On or about March 18, 2014, Plaintiff, based upon the inducement of the Notice of Rescission, moved to dismiss its pending Complaint in the United States District Court for the Southern District of Texas, where it had been removed to on March 13, 2014. Dismissal without prejudice was granted on or about March 18, 2014.

51. From March 10, 2014 through July 25, 2014, Plaintiff, in an act of forbearance, attempted to pay the contractually specified payment to the Defendant, physically at various branches of the Defendant's business. At each attempt, Plaintiff was informed by employees of the Defendant that Plaintiff's account was in foreclosure and no payments would be accepted, this despite the fact that the Defendant had rescinded its notice of acceleration and was expecting performance by the Plaintiff. These attempts are evidenced by receipts attached hereto as Exhibit "**40 A-I**" inclusive. On two occasions, Defendant's employees identified the plaintiff's account as being someone else's in another state.

52. On or about July 28, 2014, Defendant forwarded a Notice of Acceleration of Texas Non-Recourse Home Equity Loan to the Plaintiff.

53. On or about September 2, 2014, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB filed an Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure.

54. On or about April 7, 2015, Trustee Sale of the Plaintiff's property at 12318 Mossycup Drive, Houston, Texas is set for May 5, 2015

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Declaratory Relief)

55. Referencing the facts evidenced in paragraphs 14 and 15 above. Plaintiff states that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB violated the permissive provisions of Texas Constitution Article 16, Section 50(A)(6)(Q)(9) & (10), to wit:

    a.      (Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

    b.      (9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

The Plaintiff does not view this as a mere technicality and refers the court to *Stringer v. Cendant Mortgage Corp., 23 S.W. 3d 353, 355 (Tex. 2000)* which reads in relevant part, **"When interpreting our state constitution, we rely heavily on its literal text and must give effect to it's plain language."** We also refer the court to *Republican Party of Tex. v. Dietz, 940 S.W.2d 86, 89 (Tex. 1997); City of Beaumont v. Bouillion, 896 S.W.2d 143, 148 (Tex. 1995); Edgewood Indep. Sch. Dist. v. Kirby, 777 S.W.2d 391, 394 (Tex. 1989).* **"We strive to give constitutional provisions the effect their makers and adopters intended."** *City of El Paso v. El Paso Community College Dist., 729 S.W.2d 296, 298 (Tex. 1987); Farrar v. Board of Trustees of Employees Retirement Sys. of Tex., 150 Tex. 572, 243 S.W.2d 688, 692 (Tex. 1951).* **"We avoid a construction that renders any provision meaningless or inoperative."** *Hanson v. Jordan, 145 Tex. 320, 198 S.W.2d 262, 263 (Tex. 1946).*

56. Plaintiff believes this violation can only be remedied as provided by the Texas Constitution Article 16, Section 50(A)(6)(Q)(10) to wit;

"PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION;"

57. Plaintiff requests a judicial determination and declaration that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB violated the permissive provisions of Texas Constitution Article 16, Section 50(A)(6)(Q)(9) & (10). A judicial determination of the foregoing is appropriate at this juncture so that the rights of Plaintiff may be determined and protected. Without a judicial termination, Plaintiff will suffer irreparable and permanent injury.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Relief)

58. Referencing the facts evidenced in paragraphs 20 through 27 above Plaintiff states that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB knowingly breached the loan agreement. When the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB provided the Plaintiff misleading and inaccurate accounting, conflicting demands for payment and refusal to accept contractually specified payment, thereby preventing Plaintiff from performing under the agreement, the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB materially breached the reinstated loan agreement. Texas law recognizes that every contract includes a common-law duty **"to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as breach of the contract."** The loan agreement in the instant case sets the monthly payment due from the Plaintiff at $2,120.59. The Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB saw fit, using misleading accounting and conflicting demands to change the monthly amount due without honest explanation or accurate accounting despite being informed on multiple occasions by the Plaintiff that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB was breaching the agreement. Defendant(s) actions evinced no discernible care or faithfulness to the Loan Agreement.

59. Pursuant to *14 Tex Jur Contracts § 303* and we quote in relevant part **"It is a fundamental principle of contract law that when one party to a contract commits a material**

breach of that contract, the other party is discharged or excused from further performance; a party which has breached the contract itself cannot then insist on performance by the other party, or recover damages for a subsequent breach of the agreement by the other party. However, treating a contract as continuing after a breach deprives the nonbreaching party of any excuse for terminating his or her own performance." And we refer the court to *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc., 134 S.W.3d 195 (Tex. 2004); Compass Bank v. MFP Financial Services, Inc., 152 S.W.3d 844 (Tex. App. Dallas 2005)*, review denied, (July 29, 2005); *Gupta v. Eastern Idaho Tumor Institute, Inc., 140 S.W.3d 747 (Tex. App. Houston 14th Dist. 2004)*, review denied, (Sept. 10, 2004); *Carrico v. Kondos*, 111 S.W.3d 582 (Tex. App. Fort Worth 2003); *Houston County v. Leo L. Landauer & Associates, Inc., 424 S.W.2d 458 (Tex. Civ. App. Tyler 1968)*, writ refused n.r.e., (June 5, 1968); *Miller v. Kennedy & Minshew, Professional Corp.*, 142 S.W.3d 325 (Tex. App. Fort Worth 2003). The Plaintiff attempted on more than one occasion to pay the contractually specified amount only to have those payments refused. The Plaintiff informed the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB that they were in breach of the agreement prior to the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB legal actions claiming non-performance and seeking to foreclose.

60.    Plaintiff received from the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a "Reinstatement Quote". This "Reinstatement Quote" offers to reinstate the loan, reading in pertinent part "Please find the breakdown of the total amount due to reinstate the above loan from foreclosure status as indicated below." There cannot be any honest misunderstanding of the meaning of the word reinstatement. A plain-language and plain-meaning analysis of reinstate yields: reinstate - bring back into original existence, use, function, or position. There can be no misunderstanding after reviewing this "Reinstatement Quote" that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB is representing to the Plaintiff that a payment of $105,440.15 would serve to reinstate the loan. The notice did not offer to modify, change or alter the terms of the loan or the loan agreement. The notice offered to reinstate the loan and was titled "Reinstatement Quote". The plain meaning of the phrase "Reinstatement Quote" contemplates that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB is offering to reinstate the loan with the unambiguous meaning of reinstate. The Plaintiff does not believe that it is unreasonable to trust the plain and unambiguous meaning of common words. The Plaintiff believes, as decided in *Pierce-*

*Fordyce Oil Ass'n v. Warner Drilling Co., 187 S.W. 516, 1916 Tex. App. LEXIS 758 (Tex. App. May 6, 1916, Decided )* **"the agreement of the parties is to be ascertained from the plain language used by them, and such agreement is to be enforced no matter what the intention may have been, and that, where the meaning of a contract is plain, another meaning cannot be added by implication or intendment."**

61. Plaintiff requests a judicial determination and declaration that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB breached the Loan Agreement in the instant case prior to the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB legal actions against the Plaintiff and that said breaches are ongoing. A judicial determination of the foregoing is appropriate at this juncture so that the rights of Plaintiff may be determined and protected. Without a judicial termination, Plaintiff will suffer irreparable and permanent injury.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Declaratory Relief)

62. Referencing the facts evidenced in paragraphs 34 and 35 above Plaintiff states that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB actions constitute Negligent Representation.

63. Plaintiff understands in the State of Texas, the elements of negligent misrepresentation are: (1) One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. (2) Liability is limited to loss suffered (a) By the person for whose benefit and guidance he intends to supply the information, or knows that the recipient intends to supply it, and (b) Through reliance upon it in a transaction which he intends the information to influence, or knows that the recipient so intends. (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

64. The Plaintiff and the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB through the existing agreement evidenced as Exhibit "1" have

a contractual relationship under law. The Plaintiff believes that in light of that relationship, the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB has a duty under law to use reasonable care whenever it provides information to its contractual partners, and that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB breached this duty when it encouraged the Plaintiff to incur expenses in reliance on the information related to their equity loan. The Plaintiff states that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB misrepresented existing facts as well as a promise of future conduct, to wit;

a) On September 7, 2007, Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB forwarded a Notice of Acceleration (Exhibit **"6"**);

b) On September 19, 2007, Plaintiff received a loan reinstatement quote of $105,440.15 dated September 13, 2007 showing an Escrow balance of $0.00 (Exhibit **"7"**);

c) On September 28, 2007, Plaintiff wired $106,000.00 to the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB to satisfy loan reinstatement (Exhibit **"8"**);

d) October 12, 2007, Plaintiff made regular loan payment pursuant to October 7, 2007 loan statement of $2,561.12 inclusive of a $440.53 escrow charge, which was accepted by the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB. Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB loan statement shows escrow disbursements of $860.38 and $5,286.33 (Exhibit **"10"**);

e) October 15, 2007, Plaintiff received from the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB an Annual Escrow Account Disclosure Statement changing the regular loan payment to $8,768.85 as of December 1, 2007 (Exhibit **"11"**);

f) October 16, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a Loan Statement dated October 6, 2007 demanding a monthly loan payment of $8,789.09 due November 1, 2007, showing an escrow disbursements of $860.38 and $5,286.33 (Exhibit **"12"**);

g) October 29, 2007, Plaintiff received from Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB a Loan Statement dated

October 18, 2007 demanding a monthly payment of $8,789.00. This statement had an escrow balance amount of $80,660.16 (Exhibit "**15**"). There had never been an escrow balance on any preceding statements.

h)  November 1, 2007, Plaintiff attempted to pay the normal amount of the monthly loan payment. Payment was refused by the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB despite the fact that one of the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB notice claimed that any increase was in effect on December 1, 2007.

65.  As evidenced in the above referenced exhibits, exhibits created by the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB with the intention that the Plaintiff rely upon them and forwarded to the Plaintiff by the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB did plainly negligently misrepresent material facts.

66.  Considering the evidence in the light most favorable to the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, Plaintiff believes the evidence shows that the Plaintiff relied on misrepresentations by Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB.

67.  Plaintiff believes that the Texas courts have recognized the negligent misrepresentation action as a form of "remedial fraud." See *Rosenthal v. Blum, 529 S.W.2d 102, 104 (Tex. Civ. App.-- Waco 1975, writ ref'd n.r.e.)*, and cases cited therein. Where circumstances are such that the Defendant is presumed to know the facts to which his misrepresentation relates, a misrepresentation is fraudulent even if it is not made knowingly, willfully, or with actual intent to deceive. See *Dugan v. Jones, 615 P.2d 1239, 1250 (Utah 1980)*.

68.  Here, the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB was in complete control of the Plaintiffs loan, and presumably knew the facts to which its misrepresentation related. Since the Plaintiff altered their position in reliance on the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB

24

representations, they are entitled to damages based on the benefit-of-the-bargain rule. See *LeFlore v. Reflections of Tulsa, 708 P.2d 1068, 1076 (Okla. 1985)*.

69. Plaintiff requests a judicial determination and declaration that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB actions constitute Negligent Misrepresentation. A judicial determination of the foregoing is appropriate at this juncture so that the rights of Plaintiff may be determined and protected. Without a judicial termination, Plaintiff will suffer irreparable and permanent injury.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Declaratory Relief)

70. Referencing the facts evidenced in paragraphs 35, 36 and 49 through 53 above Plaintiff states that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB actions constitute a violation of the Texas Legal Duty to Deal in Good Faith.

71. **"Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."** *Tex. Bus. & Com. Code Ann. § 1.203 (Tex. U.C.C.) (Vernon 1987). La Sara Grain v. First Nat'l Bank, 673 S.W.2d 558, 563 (Tex. 1984).* Promissory notes are governed by the Texas Uniform Commercial Code. *Southview Corp. v. Kelberg First Nat'l Bank, 512 S.W.2d 817 (Tex. Civ. App. -- Corpus Christi 1974, no writ); Carter v. South Texas Lumber Co., 422 S.W.2d 951 (Tex. Civ. App. -- Eastland 1967, no writ); see also Williams v. Stansbury, 649 S.W.2d 293 (Tex. 1983).* Thus, every promissory note has an implied covenant of good faith and fair dealing by virtue of *§ 1.203 of the Texas U.C.C.* The obligation of good faith pursuant to the Texas U.C.C. requires not only that good faith be evidenced but that a standard of commercial reasonableness be observed. Such obligation permeates all of the dealings between lender and borrower because the promissory note in issue is the primary agreement between the parties. The other documents merely elaborate on the obligation of the promissory note. Furthermore, the related agreements should be governed by a good faith and fair dealing standard pursuant to *§ 205 of the Restatement (Second) of Contracts* which provides, **"every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."**

72. The foundation of a mortgage/loan is the loan agreement, a contract under Texas law. The nature of a mortgage/loan relationship requires the debtor to rely upon the accountings of the

lender to fulfill their obligations under the agreement and to trust in the lender's diligence, good faith and fair dealings.

    73.  In light of the above, Plaintiff directs the court's attention to the foregoing paragraphs 14 through 48 and Exhibit "1" through "37" attached hereto, as well as;

    a)  On December 1, 2008, at an Oral Hearing in the 164th Judicial District both Plaintiff and the court requested that Applicant produce full accounting with explanations, particularly as regards to charges of $15,861.51 and $55,568.26 both dated 3/30/07 and labeled Misapplication Reversal/Corp Advance, for the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB's loan account since the $106,000.00 payment within 30 days;

    b)  On April 28, 2009, Respondent received from the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB an "Escrow Breakdown" purporting to be the accounting requested by the Plaintiff and the Court, attached as Exhibit "38". Plaintiff was directed to contact the Applicant's counsel at a number that was out of service. A review of this account shows the same $15,861.51 and $55,568.26 charges with the same dates and the same labels.

    c)  A review of the Exhibit "7" attached hereto shows on September 13, 2007 a Corporate Advance charge of $1,321.00. The charge was included in the reinstatement charge of $105,440.15, which was paid on September 28, 2007 to the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB as evidenced by Exhibit "8" attached hereto;

    d)  To date, the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB have not;

        i.  Explained the discrepancy of a charge of over $70,000.00 dollars, labeled as "Misapplication Reversal/**Corp Advance**" being due 6 months prior to the reinstatement quote, a reinstatement quote calculated, produced and forwarded by the Applicant;

        ii.  Explained how the reinstatement quote calculated, produced and forwarded by the Applicant to the Respondent show a charge labeled **Corporate Advance** being $1,321.00 and there being no charge labeled **Misapplication Reversal**;

iii.   Explained exactly what is "Misapplication Reversal/Corp Advance is, despite numerous requests from the Respondent and the Court.

74. Plaintiff believes that the Defendant's Notice of Rescission, which states in relevant part, **"Lender, without prejudice or waiver of any right or remedy available to it by reason of past or future default by Borrower, other than the specified defaults, hereby rescinds Acceleration of the debt and maturity of the Note. *The Note and Security Instrument are now in effect in accordance with their original terms and conditions, as though no acceleration took place."*,** which was proffered as an inducement to Plaintiff to withdraw litigation, coupled with the Defendant's refusal to accept any contractually specified forbearance payments and then use that non-payment as grounds for foreclosure is the clearest and most egregious form of bad faith and unfair dealing and the height of unreasonableness.

75. Plaintiff believes that it would be obvious to a reasonable person that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB did not observe or exercise good faith, fair dealing or reasonableness and has violated the principles and standards enunciated in the above cited cases and the Texas Business and Commercial Code.

76. Plaintiff requests a judicial determination and declaration that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB actions constitute a violation of the Texas Legal Duty to Deal in Good Faith. A judicial determination of the foregoing is appropriate at this juncture so that the rights of Plaintiff may be determined and protected. Without a judicial termination, Plaintiff will suffer irreparable and permanent injury.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

77. Plaintiff asks that the court take notice of a proposed Substitute Trustee's Sale of the Plaintiff's property located at 12318 Mossycup Drive, Houston, Texas 77024 scheduled for Tuesday, May 5, 2015 by the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB. Plaintiff prays that in light of the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB foregoing behavior and accountings and the Plaintiff's steadfast requests that Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB deal with the Plaintiff in an equitable and fair manner and produce clear, concise, reconcilable and accurate accounting documents, Plaintiff asks this Honorable Court to immediately restrain the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB.

78. Unless this Honorable Court immediately restrains the Defendants from executing a Substitute Trustee's Sale or otherwise selling or taking possession of the subject property during the pendency of this cause, or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the property, Plaintiff will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiff complete, final and equal relief. More specifically, Plaintiff will show unto the court the following:

    a. The harm to Plaintiff is imminent because Plaintiff will lose her property.

    b. There is no adequate remedy at law, which will give Plaintiff complete, final and equal relief if the Temporary Restraining Order is not granted and any transfer of the property is allowed to take place.

    c. Plaintiff is willing to post a reasonable temporary restraining order bond, and hereby requests this Honorable Court to set such bond at a reasonable amount.

    d. Plaintiff has met the burden by establishing each element, which must be present before injunctive relief can be granted by this Court; therefore, Plaintiff is entitled to the requested temporary restraining order.

79. Plaintiff requests this Honorable Court to restrain the Defendants from executing the Substitute Trustee's Sale scheduled for Tuesday, May 5, 2015 or selling or otherwise taking possession of the subject property during the pendency of this cause, or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the property.

80. Plaintiff is likely to succeed on the merits of this lawsuit.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED, PLAINTIFF RESPECTFULLY REQUESTS:**

81. That this matter be set for Bench Trial;

82. That this Petition is filed and that a day is appointed for a hearing on this matter;

83. That notice of the filing of this Petition and the hearing date be given to all parties;

84. That a temporary restraining order will issue, restraining Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, Defendants' officers, agents, servants, employees, and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly from executing a Substitute Trustee's Sale or otherwise selling or taking possession of the subject property during the pendency of this cause, or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the property;

85. That the Court sets a reasonable bond for the temporary restraining order;

86. That, after notice and hearing, any and all Substitute Trustee's Sale on the above-specified property will be set aside and a temporary injunction will issue enjoining and restraining Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, Defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace, and attorneys from taking or selling in any fashion, or taking possession of the subject property during the pendency of this cause, or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession enjoyment of the property;

87. That the Court orders Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB to produce and present to the Court the original, executed Fair Market Acknowledgement or appraisal for the property at 12318 Mossycup Drive, Houston, Texas, more particularly described as:

BEING LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF
FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY,
TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN
VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY,
TEXAS

29

88. That, after trial on the merits, the Court permanently enjoin Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB, Defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly from taking possession of the subject property or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession enjoyment of the property.

89. Economic Damages;

90. Punitive Damages;

91. A declaration that the Defendant Wells Fargo Bank, N.A. FKA Wachovia Mortgage, FSB, FKA World Savings Bank, FSB must produce clear, complete, reconcilable and accurate accountings to the Court and the Plaintiff prior to proceeding with any foreclosure proceedings;

92. Exemplary Damages;

93. Equitable Relief;

94. Reasonable Fees;

95. Court Costs;

96. All other relief to which Plaintiff is entitled

97. Plaintiff prays for general relief.


Respectfully submitted,

Tina Alexander
Plaintiff, *Pro Se*
12318 Mossycup Drive
Houston, Texas 77024
832-516-1577

30

P-299

CONFIRMED FILE DATE: 5/4/2015

# Exhibit "1"

WORLD SAVINGS BANK,
A FEDERAL SAVINGS BANK

# NOTE

### TEXAS EQUITY FIXED RATE - FIRST LIEN

Loan Amount:   $296,000.00                              Loan Number: 0010585743

Property Address:                                       Date: SEPTEMBER 15, 1998
12318 MOSSYCUP
HOUSTON, TX  77024

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S.        $296,000.00,
(this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK,
              ITS SUCCESSORS AND/OR ASSIGNEES. I understand that the Lender may
transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid.
I will pay interest at a yearly rate of 7.750%.
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 6(B) of this Note.

**3. PAYMENTS**
   **(A) Time and Place of Payments**
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the      1ST      day of each month beginning on
NOVEMBER 01, 1998.        I will make these payments every month until I have paid all
of the principal and interest and any other charges described below that I may owe under
this Note. My monthly payments will be applied to interest before principal. If, on
OCTOBER 01, 2028,       I still owe amounts under this Note, I will pay those amounts
in full on that date, which is called the "maturity date."
   I will make my monthly payments at 1901 HARRISON STREET, OAKLAND,
CALIFORNIA 94612" * * * * * * * * * * * * * *   or at a different place
if required by the Note Holder.

   **(B) Amount of Monthly Payments**
   My monthly payments will be in the amount of U.S.        $2,120.59.

**4. BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of principal at any time before they are due. A
payment of principal only is known as a "prepayment." When I make a prepayment, I will tell
the Note Holder in writing that I am doing so.
   I may make a full prepayment or partial prepayments without paying any prepayment
charge. The Note Holder will use all of my prepayments to reduce the amount of principal
that I owe under this Note. If I make a partial prepayment, there will be no changes in the due
date or in the amount of my monthly payment unless the Note Holder agrees in writing to
those changes.

**5. LOAN CHARGES AND LEGAL LIMITS**
   If a law, which applies to this loan and which sets maximum loan charges (including,
without limitation, Section 50(a)(6)(E), Article XVI of the Texas Constitution), is finally
interpreted so that the interest or other loan charges collected or to be collected in
connection with this loan exceed the permitted limits, then (i) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any
sums already collected from me which exceeded permitted limits will be refunded to me. The
Note Holder may choose to make this refund by reducing the principal I owe under this Note
or by making a direct payment to me. My acceptance of any such refund will constitute a
waiver of any right of action I might have arising out of such overcharge.

TEXAS FIXED RATE NOTE—Single Family
SD243A (02.03.98/1-98) C43A          Page 1 of 4          TX

*0001*
LENDER'S USE ONLY

0010585743

It is the express intention of the Note Holder and me to structure the extension of credit evidenced by this Note to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument, or any other related loan document transcends the limit of validity prescribed by applicable law, then any such promise, payment, obligation, or provision shall be reduced to the limit of such validity, or eliminated if necessary for compliance with such law, and such document(s) shall be reformed automatically without the necessity of the execution of any new amendment or new document.

6.  BORROWER'S FAILURE TO PAY AS REQUIRED
    **(A) Late Charge for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00%  of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

    **(D) No Waiver By Note Holder**
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing the extension of credit evidenced by this Note.

7.  GIVING OF NOTICES
    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
    Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify the Note Holder of failure by the Note Holder to comply with the Note Holder's obligations under, or noncompliance with, any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
    This Note and the lien securing same are authorized by the Texas Constitution, Article XVI, Section 50(a)(6). This Note is given without personal liability against each owner of the Property and the spouse of each owner, unless the owner or spouse obtained this extension of credit by actual fraud. If this extension of credit is obtained by actual fraud of any owner or the spouse of any owner, the Note Holder may enforce its rights under this Note against each person who signs this Note and each person who signs this Note is fully and personally liable for all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note.

0010585743

If this extension of credit is not obtained by actual fraud, the Note Holder may enforce its rights under this Note and the Security Instrument only against the Property and Note Holder shall not seek or obtain a judgment for any deficiency in relation to the amounts owed under this Note against any person who signs this Note who is the owner of the Property or a spouse of an owner of the Property.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive notice of intention to accelerate, except as provided in Section 6(C) above, and the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  SECURED NOTE – ACCELERATION**

In addition to the protections given to the Note Holder under this Note, a "Security Instrument," dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**The Loan is Not Assumable.** The extension of credit evidenced by the Note may not be assumed by another Person.

**11.  CLERICAL ERRORS**

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such error.

**12.  LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purpose.

0010585743

**13.  NO ORAL AGREEMENTS**
    THIS NOTE, THE SECURITY INSTRUMENT AND OTHER DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED .


BORROWER(S):


_____ (Seal)
TINA S. ALEXANDER


_____ (Seal)


_____ (Seal)


_____ (Seal)


_____ (Seal)


_____ (Seal)


Mailing Address: 12318 MOSSYCUP
                HOUSTON, TX  77024


TEXAS FIXED RATE NOTE—Single Family
SD243D1 (02.03.88/1-89) D43D                    Page 4 of 4                    FORM 3244 12/83
                                                                              7X

# Exhibit "2"



RECORDING REQUESTED BY
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO
WORLD SAVINGS
CENTRAL PROCESSING CENTER
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 76285-9548

LOAN NUMBER: 0010585742

47/WILLIAMS
STEWART TITLE COMPANY

521-21-C326

FOR RECORDER'S USE ONLY

**TEXAS EQUITY DEED OF TRUST**

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE

THE EXTENSION OF CREDIT SECURED BY THE LIEN OF THIS DEED OF TRUST IS
THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS
CONSTITUTION.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
(A)   Security Instrument This Deed of Trust which is dated SEPTEMBER 15 1998,
will be called the "Security Instrument"

(B)   Borrower  TINA S ALEXANDER, AN UNMARRIED WOMAN

sometimes will be called "Borrower" and sometimes simply "I" or "me"

(C)   Lender WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR
ASSIGNEES, will be called "Lender." Lender is A FEDERAL SAVINGS BANK * * * * *
* * * * * * * which is organized and exists under the laws of the United States Lender's
address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612

(D)   Note The note signed by Borrower and having the same date as this Security
Instrument will be called the "Note" The Note shows that I owe Lender the original principal
amount of US $286,080.00, plus accrued interest and such other amounts as
stated in the Note I have promised to pay the debt in monthly payments and to pay the debt
in full by OCTOBER 01, 2028.

(E)   Property The property that is described below in Section III entitled "Description
of the Property" will be called the "Property"

(F)   Sums Secured The amounts described below in Section II entitled "Borrower's
Transfer of Rights in the Property" sometimes will be called the "Sums Secured"

(G)   Person Any person, organization, governmental authority or other party will be
called "Person"

(H)   Trustor, Beneficiary, Trustee Borrower is the "Trustor," Lender is the "Beneficiary"
and Gary Bradley, 4101 Wiseman Boulevard, San Antonio, Texas 78251, is the "Trustee"

Page 1
DEED OF TRUST TX EQUITY

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST   JAN 1 9 2006
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

FILED
2006 JAN 25 PM 12:50

EXHIBIT B

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
0010586743

**II    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee in trust for Lender with power of sale subject as provided in Paragraph 24 below, subject to the terms of this Security Instrument. This means that by signing this Security Instrument I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result in if I fail to:

(i)  pay all amounts owed to Lender under the Note including any changes to the Note made with the written consent of Lender

(ii)  pay with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property and

(iii)  keep all of my other promises and agreements under this Security Instrument and the Note and any changes to the Note made with the written consent of Lender.

**III    DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)  The property which is located at 12916 MOSSYCUP, HOUSTON, TX 77024 . . . . . . . . . . . . . . . . . The legal description of this property is attached as Exhibit "A" which is made a part of this Security Instrument. This property is called the "Described Property".

(ii)  All buildings and other improvements that are located on the Described Property

(iii)  All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Described Property,

(iv)  All rents or royalties and other income from the Described Property,

(v)  All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)  All rights that I have in the land which lies in the streets or roads in front of behind or next to the Described Property,

(vii)  All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii)  All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)  All replacements of or additions to the property described in subsections (ii) through (viii) of this Section,

(x)  All casualty and condemnation proceeds relating to the Described Property, and

(xi) All of the amounts that I pay to Lender under Paragraph 2 below

**IV    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

SD1588 TIE 06 0771-233 .DOC                    DEED OF TRUST TX EQUITY                    YB
                                               Page 2

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST    JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

CUC T LIEN            Deputy

0010686743

0020-12-125

## COVENANTS

I promise and I agree with Lender as follows:

### 1   BORROWER'S PROMISE TO PAY

I will pay to Lender on time all principal and interest due under the Note and any late charges due under the Note.

### 2   PAYMENTS FOR TAXES AND INSURANCE

#### (A) Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

#### (B) Escrow Account

Subject to applicable law, no escrow shall be required except upon written demand by Lender in which case I shall pay to Lender on the day payments are due under the Note until the Note is paid in full, a sum ("Funds") for (i) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (ii) yearly leasehold payments or ground rents on the Property, if any; (iii) yearly hazard or property insurance premiums; (iv) yearly flood insurance premiums, if any; and (v) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 USC § 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so Lender may at any time collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 34, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD-445 (15 10-vv-85) abp                    DEED OF TRUST-TX EQUITY                         TX
                                                      Page 3

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY
ATTEST           JAN 1 9 2006
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T LIEN

MAY-10-06 WED 03:37 PM   WORLD SAVINGS GEN SVCS T     FAX NO. 210 5434812          P. 06

0010686743

**3    APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First to pay any advances due to Lender under this Security Instrument;
Second to pay the amounts due to Lender under Paragraph 2 above;
Third to pay interest due under the Note;
Fourth to pay principal due under the Note;
Last to pay late charges due under the Note.

**4    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents, if any, due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However this Security Instrument does not require me to satisfy a superior lien if (A) I agree in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation or (B) in good faith I argue or defend against the superior lien in a lawsuit so that during the lawsuit the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement approved in writing by Lender that the lien of that Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgage Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Note and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred then Lender may do so.

The amount paid by the insurance company is called "Proceeds". Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY
ATTEST   JAN 19 2006
BEVERLY B. KAUFMAN County Clerk
Harris County, Texas

_____ Deputy

MAY-10-06 WED 03:37 PM   WQRLD SAVINGS GEN SVCS T     FAX NO. 210 5434812          P. 07

0010546742

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Note, the use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 34 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6     BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the property I will fulfill my obligations under my lease. I also agree that if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7     LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone including me begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations) then Lender may do and pay for whatever is necessary to protect the Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys fees and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7 will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Note. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8     LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender and others authorized by Lender may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made Lender must give me notice stating a reasonable purpose for the inspection.

**9     AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

If all of the Property is taken by condemnation eminent domain or other governmental taking the proceeds from all awards or claims of damages or from a sale of all or any part of the Property to avoid such governmental taking will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction (A) the total amount of the Sums Secured immediately before the taking divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages. Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

SD003 (11.21.00) 172 AW2          DEED OF TRUST TO EQUITY          7b
                                  Page 5

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST   JAN 1 9 2006
BEVERLY R KAUFMAN County Clerk,
Harris County, Texas

_____ Deputy
CUC T LIEN

0010506743

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of the monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

(A)   Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this however that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

(B)   Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 30 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Note and under this Security Instrument.

**11   OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one Person signs this Security Instrument as Borrower each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.

**12   MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law including without limitation Article XVI, Section 50(a)(6) of the Texas Constitution which sets maximum loan charges and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed permitted limits then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 12918 MOSSYCUP, HOUSTON, TX 77024
* * * * * * * * * * * * * * * *
A notice will be given to me at an alternative address if I give Lender a notice of my alternative address. I may designate only one mailing address at a time for notification purposes. Any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled "Definitions of Words Used in this Deed of Trust," unless Lender gives me notice of a different address. However if the purpose of the notice is to notify Lender of failure by Lender to comply with Lender's obligations under or noncompliance with, any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6) Article XVI of the Texas Constitution then notice by certified mail is required. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST   JAN 19 2006
BEVERLY B KAUFMAN County Clerk
Harris County, Texas

_____ Deputy
DUG T. LIEN

9010505743

**21   WAIVER OF STATUTE OF LIMITATIONS**
I will waive within applicable law the pleading of the statute of limitations as a defense to enforce this Security Instrument including any obligations referred to in this Security Instrument or the Note

**22   CAPTIONS**
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument

**23   MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender

**24   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
If the Property is a unit in a condominium cooperative or planned unit development each of which shall be called the "Project" and I have an interest in the common elements of the Project then Lender and I agree that

(A)  If an owner's association or other entity called "Owners Association" holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses proceeds and benefits of my interest.

(B)  The following are called the "Constituent Documents" (i) The declaration or any other document which created the Project (ii) By-laws of the Owners Association (iii) Code of regulations for the Project (iv) Articles of incorporation trust instrument or equivalent document which creates the Owners Association (v) The Project's covenants conditions and restrictions and the other equivalent documents

I shall perform all of my obligations under the Constituent Documents including my obligation to pay, when due all dues and assessments If I do not pay the dues and assessments when due Lender may at its option pay them I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)  If the Owners Association maintains, with an insurance company reasonably acceptable to Lender a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms in the amounts for the periods, and against the hazards Lender requires including fire and hazards included within the term "extended coverage" and Lender is provided with evidence of such master or blanket policy, then (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property, and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements any proceeds payable to me shall be paid to Lender for application to the Sums Secured by this Security Instrument with any excess paid to me

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form amount and extent of coverage

(D)  I shall not except after notice to Lender and with Lender's prior written consent either partition or subdivide the Property or consent to (i) the abandonment or termination of the Project except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally (iii) termination of professional management and assumption of self-management of the Owners Association or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

SDU0A2 (03 29 97/3-97) Ahai            DEED OF TRUST TX COUNTY                      TX
                                              Page 6

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY

ATTEST  **JAN 1 9 2006**
BEVERLY B KAUFMAN County Clerk
Harris County, Texas

_____   Deputy
CUC T LIEN

MAY-10-06 WED 03:39 PM WORLD SAVINGS GEN SVCS T FAX NO. 210 5434812 P. 10

0010565743

25    NONRECOURSE

Unless the extension of credit evidenced by the Note was obtained by my or my spouse's actual fraud, Lender shall have no recourse against me or my spouse and Lender may enforce any obligations hereunder and under the Note solely by enforcement of its rights against the Property. If the extension of credit was obtained by my or my spouse's actual fraud, Lender may obtain a personal judgment against me and/or my spouse, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note thereby subjecting my and my spouse's other assets to satisfaction of the debt.

26    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may at its option require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may at its option require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

The Loan is Not Assumable. The extension of credit evidenced by the Note may not be assumed by another Person.

27    SUBSTITUTION OF TRUSTEE

Lender, at its option and with or without cause, may from time to time remove Trustee and appoint by power of attorney or otherwise, a successor trustee by a Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

28    PROPERTY IS HOMESTEAD. ACKNOWLEDGMENTS CONCERNING DEBTS

I represent that the Property is my homestead notwithstanding any voluntary designation of homestead which I may have filed to the contrary. To the extent that the Property is designated for agricultural use under Texas laws governing property taxes, the Property is used primarily for the production of crafts.

In the future event that another property becomes my homestead I understand and agree that the Property will no longer be my homestead and that the extension of credit secured by the lien of this Security Instrument will no longer be a loan of the type described by Section 50(a)(6) Article XVI of the Texas Constitution.

If any portion of the proceeds of the loan secured by the lien of this Security Instrument were used in repayment of my existing indebtedness to Lender not secured by a valid lien on the Property, I acknowledge that such repayment was not required by Lender but rather was made at my voluntary direction and request.

The indebtedness evidenced by the Note is the only indebtedness secured by the Property as of the date of this Security Instrument unless the other indebtedness was incurred by me for one or more of the purposes allowed under and pursuant to Article XVI, Section 50(a)(1)-(5) of the Texas Constitution.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW ...

A CERTIFIED COPY

ATTEST     JAN 1 9 2006

BEVERLY H. KAUFMAN, County Clerk,
Harris County, Texas

_____ Deputy
DUOT LIEN

**28 RELEASE**

Within a reasonable time after termination and full payment of all Sums Secured, Lender shall provide to me (at the cancelled Note and do a release of this lien of this Security Instrument an recordable forms or a copy of an endorsement and assignment of the lien to another lender referencing the indebtedness evidenced by the Note. OWNER'S ACCEPTANCE OF SUCH RELEASE OR ENDORSEMENT AND ASSIGNMENT SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50 ARTICLE XVI OF THE TEXAS CONSTITUTION.

**29 STATEMENT OF OBLIGATION**

To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Note.

**31 SUBROGATION**

If any of the proceeds of the Note have been used to pay outstanding liens against the Property I have requested Lender to advance the proceeds and I have represented that the liens are valid and are due Lender shall be subrogated to any and all rights superior titles liens and equities owned or claimed by any owner or holder of the outstanding liens and debts, even if those liens and debts are acquired by Lender by assignment or by release by the holder upon payment.

**32 SUCCESSORS AND ASSIGNS BOUND, JOINT AND SEVERAL LIABILITY; CO-SIGNERS**

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and me, subject to the provisions of Paragraph 28. My covenants and agreements shall be joint and several subject to the provisions of Paragraph 35. Any person who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to grant and convey that person's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A) Article XVI of the Texas Constitution providing for execution hereof in order to establish a valid lien by the spouse of both owner of the Property (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and I may agree to extend modify forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

**33 OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan I have sworn and confirm that (A) the Property is my personal and primary residence and (B) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded. If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Note and this Security Instrument.

THIS SPACE INTENTIONALLY LEFT BLANK.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST JAN 1 9 2006
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
DUC T LIEN

MAY-10-06 WED 03:41 PM    WORLD SAVINGS GEN SVCS T    FAX NO. 210 5434812        P. 12

0010585743

**34    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument or (iii) any statement made in my application for this loan was materially false or misleading or if any statement made in my application for this loan was materially false or misleading by reason of my omission of certain facts or (iv) I have made any false statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may accelerate the indebtedness evidenced by the Note and demand immediate payment of all Sums Secured as described below.

Lender shall give me notice prior to acceleration following my Breach of Duty (but not prior to acceleration under Paragraph 29 unless applicable law provides otherwise). The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice shall result in acceleration of the Sums Secured and commencement of Lender's remedies hereunder. The notice shall further inform me of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of mine to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all Sums Secured without further demand and may or Trustee, upon written request of Lender may, institute proceedings to foreclose the lien of this Security Instrument either by judicial foreclosure or by court order in accordance with the laws of civil procedure for expedited foreclosure proceedings promulgated from time to time by the Texas Supreme Court pursuant to the provisions of Article XVI, Section 50(a) of the Texas Constitution or, to the extent such promulgated Rules or a court order permit, Lender may invoke the power of sale If for any reason the provisions of Article XVI, Section 50(a)(6) and 50(a)(7) of the Texas Constitution are invalid, or if the lien of this Security Instrument shall be found not in compliance with Section 50(a)(6) of Article XVI of the Texas Constitution then, in either such event, any portion of the indebtedness secured by this Security Instrument that refinanced a debt authorized by the provisions of Article XVI, Section 50(a)(5) of the Texas Constitution shall remain subject to the lien of this Security Instrument, and Lender may require immediate payment in full of all Sums Secured without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 34, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale as may be permitted pursuant to the above provisions or as may be permitted by court order or the rules promulgated by the Texas Supreme Court, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to me in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month I authorize Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. I understand that the power of sale is not a suspension of judgment or a power of attorney to confess judgment or to appear for me in a judicial proceeding.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. I covenant and agree to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all Sums Secured; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 34, I or any person holding possession of the Property through me shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, I or such person shall be a tenant at sufferance and may be removed by writ of possession.

**35    WAIVER OF NOTICE OF INTENTION TO ACCELERATE**

I waive the right to notice of intention to require immediate payment in full of all Sums Secured except as provided in Paragraph 34.

SD1006 (12.20.2011 3.11 AM)            DEED OF TRUST TX SAFETY            Page 11

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY

ATTEST    JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

            CUC T LIEN            Deputy

0016565740

**36.   HOME EQUITY LENDING COMPLIANCE**

I and Lender intend to conform strictly to Section 50(a)(6), Article XVI of the Texas Constitution. It shall be a precondition to the exercise by me of any right or remedy against Lender that I advise Lender in writing of any alleged failure by Lender to comply with its obligations under Section 50(a)(6) Article XVI of the Texas Constitution with respect to the loan evidenced by the Note and that Lender be given a reasonable time to correct or cure any such failure. I will reasonably cooperate in Lender's efforts to comply with the requirements of Section 50(a)(6) Article XVI of the Texas Constitution. Only after Lender has received my written notice has had a reasonable time to comply and has failed to comply, shall all principal and interest be forfeited by Lender if required by Section 50(a)(6)(X) Article XVI of the Texas Constitution.

If from any circumstances whatsoever any promise payment obligation or provision of the Note this Security Instrument or any other related loan document transcends the limit of validity prescribed by applicable law then any such promise, payment obligation or provision shall be reduced to the limit of such validity or eliminated if necessary for compliance with such law, and such documents shall be reformed automatically without the necessity of the execution of any new document or new document. Any refund of payment will be made in accordance with Paragraph 12.

Lender's right-to-comply as provided in this Paragraph 36 shall survive the satisfaction of Borrower's payment obligation under the Note and this Security Instrument. The provisions of the Paragraph 36 shall supersede any inconsistent provision of the Note or this Security Instrument.

**THIS SPACE INTENTIONALLY LEFT BLANK**

Page 12

ANY PROVISIONS HEREIN, WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY

ATTEST   JAN 1 9 2006
BEVERLY B KAUFMAN County Clerk
Harris County, Texas

_____ Deputy

0010683747

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

YOU MUST SIGN THIS DOCUMENT AT THE OFFICE OF THE LENDER AN ATTORNEY AT LAW OR A TITLE COMPANY DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED

[PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW]

BORROWERS:

_____ (Seal)
TINA S ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL    NOTARY ACKNOWLEDGEMENT

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST JAN 1 9 2006
BEVERLY B KAUFMAN County Clerk
Harris County, Texas

_____ Deputy
CUC T. UEN

MAY-10-06 WED 03:42 PM   WORLD SAVINGS GEN SVCS T    FAX NO. 210 5434812             P. 15

SINGLE ACKNOWLEDGEMENT

521-21-C3

STATE OF   TEXAS                    )
COUNTY OF  HARRIS                   )

BEFORE ME, the undersigned, a Notary Public in and for said County and State,
on this day personally appeared TINA D ALEXANDER

known to be to be the person(s) whose name(s) subscribed to the foregoing instrument,
and acknowledged to me that he executed the same for the purposes and consideration
therein expressed

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 16    day of September
1998        , A.D

(L S )                              Notary Public in and for HARRIS      County,
                                    TEXAS

           SEAL                     Notary Name _____

                                    Notary Expiration Date _____

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL,
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY

ATTEST   JAN 1 9 2006
BEVERLY B KAUFMAN County Clerk
Harris County, Texas

_____ Deputy
     CUC T LIEN

# Exhibit "3"

**Tina S. Alexander**
12318 Mossycup Dr.
Houston, TX 77024

June 15, 2002

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Appraisal and FMV Acknowledgement n Loan Number: 0010585743

To Whom It May Concern:

     I was looking though the loan paperwork on my house and noticed that there was no appraisal, even though I remember paying for one.  Also, there was no Fair Market Value acknowledgement form. I remembered paying for an appraisal, but I don't remember executing a Fair Market Value acknowledgment.   Would you please send me a copy of the appraisal and the Fair Market Value acknowledgement so my file here at home will be complete?

Thanks you for your kind consideration in this matter.

*Tina S Alexander*

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "4"



LAW OFFICES
650 NORTH SAM HOUSTON PARKWAY EAST
SUITE 450
HOUSTON, TEXAS 77060
TELEPHONE 281.925.5200
FAX 281.925.5300

**CODILIS**
— & —
**STAWIARSKI, P.C.**

June 8, 2006

**Via CMRRR and Regular Mail**
TINA S ALEXANDER
12318 MOSSYCUP
HOUSTON, TX 77024

Certified Article Number

7160 3901 9849 4480 8490

SENDERS RECORD

## NOTICE OF ACCELERATION

Re:  Indebtedness secured by the Security Instrument in the original principal amount of
$296,000.00 payable to the order of World Savings Bank, A Federal Savings Bank, its
successors and/or assignees, executed by Tina S. Alexander, an unmarried woman, due
and unpaid to current Mortgagee, World Savings Bank, FSB.

Dear Mortgagor(s):

**\*\* This communication is from a debt collector and this is an attempt to collect a
debt and any information obtained will be used for that purpose. \*\***

This law firm represents the current Mortgage Servicer with respect to the above
referenced Indebtedness.

As you are aware prior demand was made upon you to cure the default in regard to the
above referenced Indebtedness.  In the event your default was not cured, the letter gave you
notice of intent to accelerate the entire amount due and owing under the Note.  You have not
cured your default and the Indebtedness has been accelerated.

This letter is formal notice to you that your Indebtedness has been accelerated.  This letter
is also formal notice to you that the current Mortgagee has filed an Application for Order for
Foreclosure of the property as described in the Deed of Trust you executed securing the Note.

Although the Note has been accelerated, you may have the right and opportunity to cure
the default and reinstate the Note under certain circumstances. Please contact our office if you
desire to inquire about reinstating your loan. You also have a right to bring a court action to assert
the non-existence of a default or any other defense that may exist to acceleration of the Note and
sale of the property.

Mortgagee is exercising its *in rem* rights as allowed under applicable law and is not
attempting any act to collect, recover or offset the indebtedness as your personal liability.

Enclosed is the Notice of Application for Order of Foreclosure and Application for Order
of Foreclosure which have been sent for filing in the district clerk's office.

C&S# 44-05-4679

*One purpose of this communication is to collect a debt and any information obtained will be used for that purpose. This letter is not intended to advise you of your legal rights and obligations. This notice is required by the provisions of the Fair Debt Collection Practices Act. We are not attempting to collect money from anyone who is not a debtor of the aforementioned debt and/or anyone who has discharged the debt under the Bankruptcy laws of the United States. If you are receiving this notice and you are not a debtor, you are receiving this notice for informational purposes only.*

Sincerely,
**Codilis & Stawiarski, P.C.**

C&S# 44-05-4679

# Exhibit "5"

Filed
06 June 1 P5:41
Charles Bacarisse
District Clerk
Harris District

CAUSE NO. *2006-35439*

| | | |
|---|---|---|
| IN RE: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | OF HARRIS COUNTY, TEXAS |
| and | § | |
| | § | |
| 12318 MOSSYCUP | § | |
| HOUSTON, TX 77024 | § | |
| Respondent(s) | § | |
| | § | _115TH_ JUDICIAL DISTRICT |
| | § | |

## APPLICATION FOR ORDER FOR FORECLOSURE

Comes now World Savings Bank, FSB, its Successors and Assigns (hereinafter Applicant), and files this its Application For Order for Foreclosure pursuant to Rule 736 of the Texas Rules of Civil Procedure. This is an *in rem* proceeding. In support of its Application, Applicant would respectfully show the Court as follows:

### I. JURISDICTION

This Court is vested with jurisdiction of this matter under provisions of the Texas Constitution Article XVI, § 50(a)(6)(D) and Rules 735 and 736 of the Texas Rules of Civil Procedure.

### II. FACTS

A debt exists. On September 15, 1998, TINA S. ALEXANDER (hereinafter Respondent, whether one or more) executed a Promissory Note (hereinafter "Note") in the original principal amount of $296,000.00 and payable to the order of World Savings Bank, A Federal Savings Bank, its successors and/or assignees. Respondent is obligated to pay the debt secured by the property according to the records of the holder of the debt. A true and correct copy of the Note

C&S #44-05-4679
Client # 0010585743

is attached hereto as Exhibit "A" and incorporated herein by reference for all purposes. World Savings Bank, FSB is currently the legal owner and holder of the Note.

The debt is secured by a lien created under TEX. CONST. Art. XVI § 50 (a)(6). Concurrently with the execution of the Note, Respondent executed a Security Instrument granting a lien created on Respondent's homestead under TEX. CONST. Art. XVI § 50 (a)(6). The Security Instrument grants a lien on the Property described as follows:

> LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

which has a mailing address of 12318 MOSSYCUP, HOUSTON, TX 77024.

The Security Instrument was duly recorded on September 22, 1998 in the Official Real Property Records of HARRIS County, Texas under Volume 521-21, Page 0328 and/or clerk's file number T280637 and duly re-recorded January 25, 2006 in the Official Real Property Records of HARRIS County, Texas under Clerks File Number Z049229. A true and correct copy of the Security Instrument is attached hereto as Exhibit "B" and incorporated herein for all purposes.

Respondent is the current owner of record of the Property.

A default under the security instrument exists. Respondent is in default on its obligation to Applicant in that payments have not been made when due and owing pursuant to the terms of the above-described Note and Security Instrument.

The Applicant has given the requisite notices to cure the default and accelerate the maturity of the debt under the Security Instrument, TEX. PROP. CODE § 51.002, and applicable law.

Payments have not been made under the terms of the Note and Security Instrument on March 1, 2004 and subsequent months. Payments are currently $2,120.59 per month, plus

C&S #44-05-4679
Client # 0010585743

late charges. The unpaid principal balance due and owing to Applicant on the Note is $279,506.94, plus interest.    Additional fees include Applicant's attorney fees in the amount of $850.00 and costs.

Applicant requests that this Honorable Court allows Applicant to exercise all of its rights and remedies against the Respondent under state law and as provided by TEX. CONST. Art. XVI, § 50(a)(6)(D), including, foreclosing its lien on the Property.

It has been necessary for Applicant to hire the law firm of Codilis & Stawiarski, P.C. to collect the debt owed to it through this Court.  Pursuant to the Note and Security Instrument, Applicant is entitled to reimbursement of its reasonable attorney's fees for their services.

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Applicant prays that this Court enter an Order as required by TEX. CONST. Art. XVI, § 50(A)(6)(D) to sell the property under the Security Instrument and TEX. PROP. CODE § 51.002 and to allow Applicant to exercise and enforce all its rights and remedies against the Respondent as a perfected lienholder to the Property, including, but not limited to, payment of costs, expenses, and reasonable attorney's fees in accordance with the terms of the Note and Security Instrument, and for such other relief to which Applicant may be justly entitled, either at law or in equity.

Respectfully submitted,
CODILIS & STAWIARSKI, P.C.

By: _____
Rachel U. Donnelly SBOT 24043639
Stephen P. Melinder, Jr. SBOT 24032733
Mary M. Speidel SBOT 18908400
650 N. Sam Houston Parkway East, Suite 450
Houston, Texas 77060
Telephone: (281) 925-5200
Facsimile: (281) 925-5300
ATTORNEYS FOR APPLICANT

# Exhibit "6"

C&S No. 44-05-4679 /Home Equity
World Savings Bank, FSB
Servicer No. 0010585743

# NOTICE OF TRUSTEE'S SALE

**WHEREAS**, on September 15, 1998 Tina S. Alexander, an Unmarried Woman executed a Deed of Trust conveying to Gary Bradley, a Trustee, the Real Estate hereinafter described, to secure World Savings Bank, A Federal Savings Bank, its successors and/or assignees in the payment of a debt therein described, said Deed of Trust being recorded in Volume , Page or Clerk's File No. Z049229 in the Deed of Trust Records of HARRIS County, Texas; and

**WHEREAS**, default, as same is defined in said Promissory Note and/or Deed of Trust, has occurred and the outstanding balance on same is now wholly due; and

**WHEREAS**, World Savings Bank, FSB is the Mortgage Servicer representing the owner and holder of said Promissory Note, World Savings Bank, FSB, whose address is C/O P.O. Box 659558
San Antonio, TX 78265, as Mortgage Servicer, is representing the Mortgagee under a servicing agreement with the Mortgagee and World Savings Bank, FSB as representative for the Mortgagee has requested the undersigned to sell said real property to satisfy the indebtedness.

**WHEREAS**, The undersigned has been appointed Substitute Trustee in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust; and

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that on Tuesday, **10/2/2007,** the foreclosure sale will be conducted in HARRIS County in the area of the courthouse designated by the Commissioners Court, pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place. If no place is designated by the commissioners Court, sale will be conducted at the place where the Notice of Trustee's Sale was posted. The trustee's sale will be conducted no earlier than **1:00:00 PM** or not later than three (3) hours after that time, by either one of the Trustees, and will sell, to the highest bidder for cash, subject to the unpaid balance due and owing on any lien indebtedness that is superior to the Deed of Trust.

**NOTICE IS FURTHER GIVEN** that, except to the extent that Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the property shall be made as is, without any representations and warranties whatsoever, express or implied. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

Said Real Estate is described as follows: In the County of **HARRIS**, State of Texas:

**LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.**

<div style="margin-left:40%">

**Cathy Cagle, Substitute Trustee, or**
**Jeff Leva, Successor Substitute Trustee, or**
**Mary M. Speidel, Successor Substitute Trustee**
**1945 Walnut Hill Lane, Irving, TX 75038**

</div>

Codilis & Stawiarski, P.C.
650 N. Sam Houston Parkway East, Suite 450
Houston, TX 77060 / (281) 925-5200

05 July 24 P7:13
Charles Bacarisse
District Clerk
Harris District

SALPX
(8)A

## CAUSE NO. 2006-35439

| | | |
|---|---|---|
| IN RE: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP | § | |
| HOUSTON, TX 77024 | § | |
| Respondent(s) | § | |
| | § | 113th JUDICIAL DISTRICT |
| | § | |

### ORDER TO PROCEED WITH NOTICE OF FORECLOSURE SALE
### AND FORECLOSURE SALE

Came on for consideration the application of World Savings Bank, FSB its Successors

and Assigns (hereinafter Applicant), for Order for Foreclosure pursuant to Rule 736 of the Texas

Rules of Civil Procedure. The Court is of the opinion that said application should be

GRANTED.

The court further finds that this is an *in rem* proceeding; that the Application filed by

Applicant complies with Rule 735 and Rule 736, Tex. R. Civ. P.; that Respondent(s) have not

previously filed a Response; that a copy of the required Notice with Certificate of Service has

been on file with the Clerk of the Court for at least ten (10) days, exclusive of the date of filing;

that the Applicant has met its burden of proof as to the elements of Rule 736 (I)(E); and that the

Applicant should proceed with foreclosure of the Property under the terms of the security

instrument and Texas Property Code § 51.002.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Applicant may

proceed with foreclosure under the security agreement (Deed of Trust) recorded in the Official

Real Property Records of HARRIS County, Texas under Volume 521-21 and Page 0328 and/or

C&S# 44-05-4679
Client No. 0010585743

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

clerk's file number T280637, executed by Respondent, and TEX. PROP. CODE § 51.002 of the property located at 12318 MOSSYCUP, HOUSTON, TX, 77024 and described as follows:

LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

IT IS FURTHER ORDERED that the Applicant send a copy of this Order to Respondent with the notice of foreclosure sale;

IT IS FURTHER ORDERED that the Applicant may communicate with the Respondent and all third parties reasonably necessary to conduct the foreclosure sale; and

IT IS FURTHER ORDERED that the Applicant shall mail to Respondent's counsel a copy of the notice by certified mail, return receipt requested, of the foreclosure sale if the Respondent is represented by counsel.

SIGNED this 5th day of February, 2006.

_Signature_
JUDGE PRESIDING

APPROVED AS TO FORM AND ENTRY REQUESTED:

CODILIS & STAWIARSKI, P.C.

By: _Signature_
Rachel U. Donnelly SBOT 24043639
Stephen P. Melinder, Jr. SBOT 24032733
Mary M. Speidel SBOT 18908400
650 N. Sam Houston Pkwy. East, Suite 450
Houston, Texas 77060
Telephone: (281) 925-5200
Facsimile: (281) 925-5300
ATTORNEYS FOR APPLICANT

After Recording, please return to:
Codilis & Stawiarski, P.C.
650 N. Sam Houston Pkwy. East, Suite 450
Houston, Texas 77060

C&S# 44-05-4679
Client No. 0010585743

## NOTICE OF ACCELERATION AND
## NOTICE OF POSTING & FORECLOSURE

September 7, 2007                                                                          **Certified Mail**

**\*\* This communication is from a debt collector and this is an attempt to collect a debt and any information obtained will be used for that purpose.\*\***

RE: Promissory Note in the amount of $296,000.00 dated September 15, 1998, executed by Tina S. Alexander, an Unmarried Woman, and Deed of Trust dated September 15, 1998, executed by Tina S. Alexander, an Unmarried Woman and recorded in Vol. , Page , or Clerk's File No. Z049229 in the Deed of Trust Records of HARRIS County, Texas.

This law firm represents World Savings Bank, FSB, the Mortgage Servicer for World Savings Bank, FSB with respect to the above referenced indebtedness.

You have failed to pay the indebtedness when due and, as a result, have been in default under the terms of the indebtedness.

You are further notified that World Savings Bank, FSB is acting as the Mortgage Servicer for World Savings Bank, FSB, who is the Mortgagee and the owner and holder of the Note and Deed of Trust. World Savings Bank, FSB, as Mortgage Servicer, is representing the Mortgagee, whose address is C/O P.O. Box 659558
San Antonio, TX 78265. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.

You are hereby notified that because you have not cured the default, your obligations under the Note and Deed of Trust have been matured, and that the entire principal indebtedness evidenced by the Note, together with interest thereon as provided by the terms of the Note and earned thereunder, has been accelerated.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Mortgage Servicer is exercising its *in rem* rights as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability. We are not attempting to collect money from anyone who is not a debtor of the aforementioned debt and/or anyone who has discharged the debt under the Bankruptcy laws of the United States. If you are receiving this notice and you are not a debtor, you are receiving this notice for informational purposes only.

Also attached to this letter is a Notice of Trustee's Sale of the property described therein, as provided by the terms of the Deed of Trust and the laws of the State of Texas.

Sincerely,

CODILIS & STAWIARSKI
650 N. Sam Houston Parkway East, Suite 450
Houston, TX 77060; (281) 925-5200

C&S No.     44-05-4679
ALEXANDER,TINA S.
Loan No.    0010585743 / Home Equity

Exhibit "7"

 **WORLD SAVINGS**

September 13, 2007                    Loan Number: 0010585743

**REINSTATEMENT QUOTE**

Tina Alexander
12318 Mossycup Dr
Houston, TX 77024 4907

Customer:  Tina S Alexander
Property: 12318 Mossycup, Houston TX 77024

Dear Sir or Madam:

Please find the breakdown of the total amount due to reinstate the above loan from foreclosure status as indicated below.  Should you have any questions, please contact us at 1-800-282-3458.  A representative is available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m., Central Time.

Breakdown of Total Due to Reinstate:

| | |
|---|---:|
| 43 payment(s): | 93,388.02 |
| Advance(s): Escrow | .00 |
| Accrued Late Charge: | 3,710.16 |
| Miscellaneous Fee(s): | |
| CORPORATE ADVANCE | 1,321.00 |
| ADDITIONAL CHARGES | 6,227.97 |
| Foreclosure | 748.00 |
| Less: Credit (Suspense) | < .00> |
| Total required to reinstate loan in full | 105,395.15 |
| Property Preservation/Inspection Fees | 45.00 |
| NSF Fees | .00 |
| TOTAL REQUIRED TO REINSTATE LOAN AND RELATED WORLD SAVINGS CHARGES (Good through 09-25-07) | 105,440.15 |

Only certified funds will be accepted to reinstate this loan.  All personal and/or business checks, partial funds, and cash will be returned.  Payments may be made at any World Savings branch or mailed to the address on page two of this letter.

Please note that we do not recognize mailing postmark dates. Therefore, the amount quoted above must be received in a World Savings branch or at our San Antonio office no later than 5:00 p.m., Central Time, on 09-25-07.  After this date, additional amounts may become due.

L-11740

P.O. Box 659558
San Antonio, Texas 78265-9558



**WORLD SAVINGS**
XF613 048 AVR


Tina S Alexander
0010585743
September 13, 2007
Page 2


To remit your balance due by mail or wire, please send to:

|  |  |
|---|---|
| <u>Mail</u> | <u>Wire</u> |
| World Savings | World Savings |
| Attn: Cashiering Dept., TX1361 | ABA/RT:322186961 |
| 4101 Wiseman Blvd. | Account No.: 11052019 |
| San Antonio, Texas 78251 | Reference Loan Number |

As a reminder, you are required by your Note and Security Instrument
to continue to meet and pay other obligations including, payment and
maintenance of insurance, property taxes, HOA/PUD fees, and other
assessments. If you are unable to make future payments on the
loan, pay property taxes, provide proof of hazard insurance, maintain
the collateral, or pay other obligations as required by the Note and
Security Instrument, the beneficiary or mortgagee may insist that
you do so in order to reinstate your account in good standing.  In
addition, the beneficiary or mortgagee may require, as a condition of
reinstatement, that you provide reliable written evidence that all
senior liens, property taxes, and insurance premiums are paid current.

Payment in accordance with this reinstatement quote may not be
sufficient to cure all defaults of the Note and Security Instrument.
You should review any previously issued Notices of Intent to Foreclose
or Notices of Default to determine if any non-monetary defaults remain
outstanding.  Unless all defaults are cured, foreclosure sale
proceedings will continue.

This reinstatement quote may or may not include advances for insurance,
property taxes and other assessments.  If World Savings advanced
delinquent property taxes, hazard/flood insurance, or other assessments
on your behalf, you may be required to make payment into an escrow
account with World Savings.  You will be notified in writing upon the
reinstatement of your loan as to specific requirements, if any.

Thank you for your attention to this matter.

Foreclosure Department

XF613 048 AVR

<u>NOTICE REQUIRED BY FEDERAL LAW</u>:
*Please be advised that World Savings may be attempting to collect
a debt.  If you are currently in bankruptcy or your debt has been
discharged in bankruptcy, World Savings is only exercising its
rights against the property and is not attempting to hold you
personally liable on the Note.

P.O. Box 659558
San Antonio, Texas 78265-9558

L-11740

**Tina S. Alexander**
12318 Mossycup Dr.
Houston, TX 77024

September 19, 2007

*World Savings*
4101 Wiseman Boulevard
San Antonio, TX  78251-4201
Attn: Mike Lara, Foreclosure Department

Re: Reinstated Quote for Loan Number: 0010585743

**Mr. Mike Lara,**

Please have this letter confirm our conversation today regarding the Reinstatement Quote you faxed to me yesterday, which I received in the mail today.  I called to reconfirm that there are no other amounts that I owe World Savings. If I pay this reinstatement quote amount of $105,440.15, my loan will be current and in good standing. It is my intention to pay this amount and bring my loan current.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

Exhibit "8"

12318 Mossycup Dr. Houston, TX 77024

**Tina S. Alexander**

# Fax

**To:** *Mike Lara*   **From:** Tina S. Alexander

**Fax:** *210-509-1147*   **Pages:** 2

**Phone:**   **Date:** 9/28/2007

**Re:** *Wire Loan 0010585743*   **CC:**

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

• **Comments:**

Attached is the wire confirmation for
$106,000 °° to reinstate my loan at
World Savings loan # 0010585743.
Please call me at 713-419-2834 cell if
you have any questions or issues.

Sincerely,

Tina S. Alexander

(713)461-7730
713-419-2834 Cell
713-722-0972 Fax

# WACHOVIA

## Wire Transfer of Funds Request

| | |
|---|---|
| **For Use by CMG Field Personnel Only (Not for Financial Center use)** | |

Preparer's Signature                379493

| Account Status | NSF Only |
|---|---|

Callback NO
Required
(Yes or No)    Initiator's Signature

Sufficient (Audio Checked)
Not Sufficient (NSF)
**SUFFICIENT**

NSF Source of Funds

Credit Approver Name (Please Print)

Customer Accepting Call Back/Phone Number

Credit Approver Signature

Verifier's Signature

Date        Time of Call

---

## Wire Transfer of Funds
## WACHOVIA BANK, N.A.

| | Current Date | Control Number |
|---|---|---|
| | 09/28/07 | 400206 |

| Domestic or International | Non-Repetitive or Repetitive | Line Number | Amt Verify Cd | Verify I.D. | Type (Fed, Book, Other) |
|---|---|---|---|---|---|
| DOMESTIC | NON-REPETITIVE | | N | | FED |

| Caller | Financial Center or Department | Request Type (Fax, Phone, Walk in) |
|---|---|---|
| | 0802925 | WALK-IN |

| Description 2 (GL) | Execution Date | Domestic Transfer Amount |
|---|---|---|
| | 09/28/07 | $ 106,000.00 |

| Type Currency | Value Date | Foreign Amount | Exchange Rate |
|---|---|---|---|

Contract Number / Provided By

| U.S. Dollar Amount | | Foreign Currency Transfer Amount |
|---|---|---|
| $ | = | |

### Originator

| Name | Check One ☐ Internal  ☐ Customer Initiated | Org | Account Number |
|---|---|---|---|
| MELODY GODAR-MCDAID | | 75 | 1010093671723 |

Address
112 KAISER DRIVE DOWNINGTOWN PA

City/State/Zip/Country
19335

ID 22943177        ID Source PA    ID Type DL        Expiration Date 090317

### Receiving Bank

| Name | R/T Number |
|---|---|
| WORLD SAVINGS BANK FSB | 322186961 |

Address
4101 WISEMAN BLVD.

City/State/Zip/Country
SCOTTSDALE AZ 78251

Advice NONE
(No Phone Advice Required, Credit and Phone Advice, Notify and Pay, Pay Upon Proper I.D.)

### Beneficiary Payment Information

| Name | Org | Account Number |
|---|---|---|
| WORLD SAVINGS | | 11052019 |

Address

City/State/Zip/Country

Other Payment Information
LOAN #0010585743

---

CHARGE

**Fee Method**
(Waive/Charge)

### Customer Contract
All of the above information is complete and correct and provided to Wachovia Bank, N.A. or to Wachovia Bank of Delaware, N.A. (each, the "Bank") for it to implement a wire transfer of funds from my account. The Bank's acceptance and execution of my wire transfer transaction is subject to the Terms and Conditions contained in this Wire Transfer of Funds Request.  My signature below evidences that I have received a complete copy of this Request, and that I have received the Deposit Agreement.

X  M. S. Godar-McDaid          X  9/28/07
   Customer Signature                Date

COPY 1 - FINANCIAL CENTER   COPY 2 - CUSTOMER

# Exhibit "9"

**World Savings**
**EFT Processing Center**
4101 Wiseman Boulevard
San Antonio, TX 78251-4201

Any Questions? Call
Customer Service Dept.
(800) 642-0257

October 12, 2007

T1  P1
Tina S Alexander

12318 Mossycup Dr
Houston TX 77024-4907
llllllllllllllllllllllllllllllllllllllll

RE: 0010585743
Confirmation Number: 5120948963

Dear Tina S Alexander,

Thank you for using World Savings's EFT electronic drafting service. As
per your verbal authorization on October 12, 2007, this one-time request
will be processed in the amount of $2,561.12, and will be applied to the
loan as of October 12, 2007. This amount will be reflected on your bank
statement following this payment.

Should you have any questions about the EFT payment or this confirmation
please contact us at the number below. A Customer Service Representative
will be available to assist you Monday through Friday from 8:00 a.m. to
8:00 p.m. and Saturday 8:00 a.m. to 5:00 p.m. (CST).

Please be advised that your request will initiate a debit to your bank
account.  This will be reflected on your bank statement following the
payment to your loan.

Sincerely,

Customer Service Dept.
World Savings
EFT
(800) 642-0257

# Exhibit "10"

# WORLD SAVINGS
*How may we help you?*

## LOAN STATEMENT

**Property Address:** 12318 MOSSYCUP
HOUSTON          TX 77024-4907

**Loan Number:** 10585743

**Payment Due Date:** 10/01/07

**Statement Date:** 10/01/07

**Questions about your loan?**
For quick answers, call . . . . . . . . . . . . . . . . . . .1-800-642-0257
8 a.m. – 8 p.m. Mon. – Fri., 8 a.m. – 5 p.m. Sat., Central Time
*(Please have your loan and Social Security numbers ready.)*

005815  YNNNNNN  M0DLLSTA

**TINA S ALEXANDER**
**12318 MOSSYCUP DR**
**HOUSTON          TX 77024-4907**

To check the status of your World loan anytime, day or night,
visit us at . . . . . . . . . . . . . . . . . . . .www.worldsavings.com
For new purchase, refinance, or home equity loan assistance,
simply call . . . . . . . . . . . . . . . . . . . . . . . . . . .1-800-914-8166

## 1 PAYMENT OPTIONS

*Select your option on the Payment Coupon below. Please see*
*CHOOSING YOUR PAYMENT OPTIONS on reverse side for explanations.*

## 2 CURRENT PAYMENT EXPLANATION

**Payment Options**
Interest Due                    1,701.88
Deferred Interest†
Principal Paid                    418.71
Escrow/Other                      440.53
Total Past Due
Total Payment                   2,561.12

| Past Due Amount | Late Charges/ Fees Due | Total Past Due | Total Outstanding Deferred Interest † | Current Interest Rate |
|---|---|---|---|---|
| | | | | 7.750 |

† *See explanation of deferred interest on reverse side under CHOOSING YOUR PAYMENT OPTIONS.*

## 3 YEAR-TO-DATE INFORMATION

| Year-to-Date Payments | Year-to-Date Escrow Disbursements |
|---|---|
| Principal | Taxes |
| Interest | Additional Assessments 860.38 |
| Late Charges/ Fees | Homeowner's Insurance 5,286.33 |
| | Other |

## 4 TRANSACTION ACTIVITY

| Date | Description | Total | Principal | Interest Paid | Interest Rate | Escrow | Optional Insurance | Late Charges/ Other Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

## 5 IMPORTANT MESSAGES

# www.worldsavings.com

 **WORLD SAVINGS**

October 03, 2007                              Loan Number: 0010585743


Tina S Alexander
12318 Mossycup Dr
Houston, TX 77024 4907


Property:   12318 Mossycup
            Houston TX 77024-4907

Dear Tina S Alexander :

World Savings is pleased to inform you that we have received and
processed the funds to reinstate the above referenced loan.

The loan is now due for the October 01, 2007 payment in the amount
of $ 2,561.12.  Regular billing statements will be generated
with the October 01, 2007 payment.  Payment(s) may be mailed to the
following address:

                    World Savings
                    P. O. Box 60129
                    Los Angeles, CA 90060-0129

Thank you for your attention to this matter.  You are a valued
customer and we look forward to a long term relationship with
you.  Should you have any questions or need additional information,
please contact our Customer Service Center at 1-800-642-0257.  A
representative is available to assist you Monday through Friday,
8:00 a.m. to 8:00 p.m., and Saturday 8:00 a.m. to 5:00 p.m.,
Central Time.  For your convenience, you may also obtain home loan
information or contact us at www.worldsavings.com.

Foreclosure Department

FC622 034 PMI


NOTICE REQUIRED BY FEDERAL LAW:
*Please be advised that World Savings may be attempting to collect
a debt.  If you are currently in bankruptcy or your debt has been
discharged in bankruptcy, World Savings is only exercising its
rights against the property and is not attempting to hold you
personally liable on the Note.


P.O. Box 659558
San Antonio, Texas 78265-9558

L-11740

# Exhibit "11"

**WORLD SAVINGS**
*How may we help you?*

www.worldsavings.com

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

TINA S ALEXANDER                    74
12318 MOSSYCUP DR
HOUSTON TX 77024-4907

ANALYSIS DATE:
10/04/2007

LOAN NUMBER:
0010585743

PROPERTY ADDRESS:

12318 MOSSYCUP
HOUSTON TX 77024

### YOUR HOME LOAN PAYMENT MAY BE CHANGING - THIS STATEMENT WILL HELP YOU UNDERSTAND WHY

This annual disclosure statement is required by Federal law and provides a detail summary of activity related to your escrow account. At your request we maintain an escrow account that is used to pay items such as your property taxes, insurance premiums, and/or mortgage insurance. If you have questions about this statement, please refer to the enclosed guide.

### 1  YOUR HOME LOAN PAYMENT

This section provides a breakdown of both your current and new payments, including the minimum payment, total escrow payment, and repayment of any shortage that may exist (or credit for an overage of less than $50). **Please refer to Section 3 for an explanation of how your new escrow payment amount was calculated.** If your loan is an adjustable rate mortgage, an additional payment may occur on the anniversary of your loan. Refer to your billing statement for additional payment options.

|  | NEW MONTHLY HOME LOAN PAYMENT | CURRENT MONTHLY HOME LOAN PAYMENT |
|---|---|---|
| Minimum Payment | $2,120.59 | $2,120.59 |
| Escrow Payment | 0.00 | 0.00 |
| Shortage Payment or Overage Credit | $6,648.26 | $440.53 |
| Credit Life and/or Disability Payment | 0.00 | 0.00 |
| Other | 0.00 | 0.00 |
| **TOTAL MONTHLY PAYMENT** | **$8,768.85** | **$2,561.12** |
| **NEW PAYMENT EFFECTIVE DATE** | **12/01/07** | |

### 2  ESCROW SHORTAGE

Your escrow account has a shortage. You have three options for repaying the shortage:

- You may use the escrow shortage remittance form attached below to make a full shortage payment of $79,779.10. This option will reduce your total home loan payment by $6,648.26 and will provide the lowest monthly payments.
- You may use the remittance form attached below to pay a portion of the shortage. This option will reduce your escrow shortage by the amount you pay. Any remaining shortage will be spread over 12 monthly payments.
- You may choose not to pay any portion of the shortage amount at this time, in which case no action is required. The shortage amount has been spread over 12 payments and included in your new monthly home loan payment. Please disregard the remittance form attached below.

### 3  ANTICIPATED ESCROW ACCOUNT DISBURSEMENT AND NEW ESCROW PAYMENT AMOUNTS FOR THE NEXT 12 MONTHS

This section shows the property tax amounts and/or insurance premiums we anticipate we will collect for and pay on your behalf during the next 12 months. The dollar amount shown may reflect the last item actually paid for each item or we may project the next amount due, as allowed by Federal law (See Section 5 for an explanation of escrow account projection). Insurance and tax payments are disbursed before their due date to allow for mailing and processing time at the tax office or insurance company.

| ESCROW ITEM | YEARLY DISBURSEMENT AMOUNT | NEW MONTHLY ESCROW PAYMENT AMOUNT |
|---|---|---|
| Mortgage Insurance | $0.00 | $0.00 |
| Taxes | $0.00 | $0.00 |
| Insurance | $0.00 | $0.00 |
| TOTAL PAYMENTS FROM ESCROW | $0.00 | $0.00 |

Your new monthly escrow payment amount is calculated by dividing the yearly disbursement amount over 12 payments.

### *** Continued on the reverse side ***

---

**WORLD SAVINGS**

*Detach here and return with payment. Thank you.*

Escrow Shortage Remittance Form

Name: TINA S ALEXANDER

Loan Number 0010585743

Make your check payable to World Savings and write your loan number on the memo line of your check.

World Savings
P.O. Box 659406
San Antonio, TX 78265-9406

**Escrow Shortage Payment Options:**

- ☐ Full shortage payment of $79,779.10 Reduces escrow payment by $6,648.26 and provides the lowest monthly payment.

- ☐ Other shortage payment: $_____ Reduces escrow shortage by the amount you pay. Any remaining shortage will be spread over 12 payments.

**4** IMPORTANT INFORMATION

Should you have any questions or need additional information, please contact our Customer Service Center at 1-800-642-0257, extension 33676. A representative is available to assist you Monday through Friday, 8:00 a.m. to 8:00 p.m., and Saturday, 8:00 a.m. to 5:00 p.m., Central Time.

This statement is for informational purposes only. Please be advised that World Savings may be attempting to collect a debt. If you are currently in bankruptcy or your debt has been discharged in bankruptcy, World Savings is exercising its right against the property and is not attempting to hold you personally liable on the Note.

**5** YOUR ESCROW ACCOUNT PROJECTION FOR THE NEXT 12 MONTHS

This section lists a 12-month running escrow balance to determine the appropriate target balance and to determine if a shortage or overage exists. All anticipated payments into escrow and disbursements from escrow are included along with the projected escrow account balance, derived by carrying forward your current actual escrow balance. **Please refer to Section 3 for an explanation of how your new escrow payment amount was calculated.**

| PAYMENTS INTO ESCROW | | DISBURSEMENTS FROM ESCROW | | | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|---|
| MONTH/ YEAR | PROJECTED | MORTGAGE INS | PROPERTY TAXES | FLOOD INS | HAZARD INS | OTHER INS | PROJECTED | REQUIRED |
| | | | | | | | $79779.10- | $0.00 |
| 01/08 | | | | | | | $79779.10- | $0.00 |
| 03/08 | | | | | | | $79779.10- | $0.00 |
| 05/08 | | | | | | | $79779.10- | $0.00 |
| 07/08 | | | | | | | $79779.10- | $0.00 |
| 09/08 | | | | | | | $79779.10- | $0.00 |
| 11/08 | | | | | | | $79779.10- | $0.00 |

World Savings does not collect or require a cushion in your escrow account. We require that your escrow balance be $.00 at the end of December 2007. We project your escrow account balance will be $79,779.10- at that time. This means you have a shortage of $79,779.10-. We have divided the shortage over 12 monthly payments. Please keep this statement for comparison with the actual activity in your account at the end of the next escrow accounting computation year.

**6** YOUR ESCROW ACCOUNT HISTORY FOR THE PAST 12 MONTHS

The following is a statement of actual activity in your escrow account from 05/07 through 11/07. The information below provides a summary of what we projected would occur compared to what actually occurred in your escrow account.

| PAYMENTS INTO ESCROW | | | DISBURSEMENTS FROM ESCROW | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|
| MONTH/ YEAR | PROJECTED | ACTUAL | PROJECTED | ACTUAL | DESCRIPTION | PROJECTED | ACTUAL |
| | | | | | | $0.00 | $82662.81 |
| 06/07 | | | | | | $0.00 | $82662.81 |
| 08/07 | | | | | | $0.00 | $82662.81 |
| 10/07 | | $2643.18 E | | | | $0.00 | $80219.63- |
| 12/07 | | | | | | $0.00 | $0.00 |
| 02/08 | | | | | | $0.00 | $0.00 |
| 04/08 | | | | | | $0.00 | $0.00 |

\* - An asterisk (\*) shows a difference between what actually occurred and what was anticipated. A difference can be due to an increase or decrease in the amount of an escrow bill or due to the disbursement of funds on a date other than originally anticipated.

E- The letter "E" beside an amount indicates the payment or disbursement has not yet occurred but is estimated to occur as shown.

During this period, an additional $0.00 was deposited into your escrow account for interest on escrow.

# Exhibit "12"

**WORLD SAVINGS**
*How may we help you?®*

# LOAN STATEMENT

5,915

| | |
|---|---|
| **Property Address:** | 12318 MOSSYCUP |
| | HOUSTON    TX 77024-4907 |
| **Loan Number:** | 10585743 |
| **Payment Due Date:** | 11/01/07 |
| **Statement Date:** | 10/06/07 |

**Questions about your loan?**
For quick answers, call . . . . . . . . . . . . . . . . . .**1-800-642-0257**
8 a.m. – 8 p.m. Mon. – Fri., 8 a.m. – 5 p.m. Sat., Central Time
*(Please have your loan and Social Security numbers ready.)*



005815 YNNNNN M9DLLSTA

**TINA S ALEXANDER**
**12318 MOSSYCUP DR**
**HOUSTON          TX 77024-4907**

To check the status of your World loan anytime, day or night,
visit us at . . . . . . . . . . . . . . . . . .**www.worldsavings.com**
For new purchase, refinance, or home equity loan assistance,
simply call . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1-800-914-8166**

# 1  PAYMENT OPTIONS

Select your option on the Payment Coupon below. Please see
**CHOOSING YOUR PAYMENT OPTIONS** on reverse side for explanations.

| ) Minimum Payment | 11,350.21 |
|---|---|

# 2  CURRENT PAYMENT EXPLANATION

**Payment Options**

| | |
|---|---|
| Interest Due | 1,698.91 |
| Deferred Interest† | |
| Principal Paid | 421.68 |
| Escrow/Other | 440.53 |
| Total Past Due | 8,789.09 |
| Total Payment | 11,350.21 |

| Past Due Amount | Late Charges/ Fees Due | Total Past Due | Total Outstanding Deferred Interest† | Current Interest Rate |
|---|---|---|---|---|
| 2,561.12 | 6,227.97 | 8,789.09 | | 7.750 |

†See explanation of deferred interest on reverse side under **CHOOSING YOUR PAYMENT OPTIONS.**

# 3  YEAR-TO-DATE INFORMATION

| Year-to-Date Payments | Year-to-Date Escrow Disbursements |
|---|---|
| Principal | Taxes |
| 16,030.79 | |
| Interest | Additional Assessments |
| 75,608.40 | 860.38 |
| Late Charges/ Fees | Homeowner's Insurance |
| 3,816.19 | 5,286.33 |
| | Other |

# 4  TRANSACTION ACTIVITY

| Date | Description | Total | Principal | Interest Paid | Interest Rate | Escrow | Optional Insurance | Late Charges/ Other Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|
| | A loan History Statement will follow under separate cover. | | | | | | | | |

# 5  IMPORTANT MESSAGES                **www.worldsavings.com**

Your loan is 01 payment(s) past due.  Your oldest payment was due  10/01/07.
*********If you are having difficulties making your mortgage payments, we encourage you to contact World
Savings at 1-800-282-3451.  Some of our payment plans may pleasantly surprise you.  If your payment has
already been made, please disregard this message.

*Please detach coupon and return with payment. Thank you.*

# Exhibit "13"

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

October 16, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

On September 28, 2007, I made a payment of $106,000.00 to
completely reinstate my loan with World Savings prior to the property
being foreclosed. I had several conversations with Mr. Mike Lara
prior to making the payment, to ensure that this $106,000.00 was the
total required to completely resolve all issues with my loan.  He
assured me that the reinstatement quote dated September 13, 2007, for
$105,440.15 was the total amount due to resolve all issues and
reinstate my loan in full.

On October 8, 2007, I received a letter from World Savings dated
October 3, 2007, informing me that they received and processed the
funds to reinstate my loan.  Also, the October 1, 2007 monthly
payment was due for $2,561.12, of which, I was provided with a
statement reflecting that amount.

On October 12, 2007, I called World Savings and made the October
2007 payment in the amount of $2,561.12 as the statement reflected
was due, and received a confirmation letter from World Savings for
that payment.  I was told that my payment would return to the loan
agreement amount of $2,120.59, next month, because the escrow year to
date disbursements of $5,286.33 and 860.38 reflected on my statements
would be paid in full from the $105,440.15 reinstatement payment made
on September 28, 2007.

On October 15, 2007, I received an Annual Escrow Account
Disclosure Statement from World Savings, stating that my monthly loan
payment would go from $2,561.12 per month to $8,768.85 per month
beginning December 1, 2007.  The escrow payment previously paid of
$440.53, which was supposedly cleared with the reinstatement payment,
increased to $6,648.26 per month. This statement reflects that I have
an escrow shortage of $79,779.10.  I immediately called World Savings
and was told that this escrow disclosure statement is incorrect. This
balance had never been reflected on any previous statements and World
Savings was in the process of transitioning to Wachovia and some
funds were most likely applied incorrectly.

Then on October 16, 2007, I received a loan statement dated
October 6, 2007 from World Savings for the November 1, 2007 payment,
reflecting a payment due for $11,350.21.  This statement reflected an
$8,789.09 past due amount, which included the October 1 payment plus

$6,227.97 in fees due.  I immediately called World Savings again to inquire about this statement because I had paid the Oct.1 payment and received confirmation from World Savings. In addition, I wanted to know what the $6,227.97 in fees were because that amount was included in the loan reinstatement detail and I was told that it was clearing the escrow disbursements of $6,147.71 recorded on my monthly loan statements, which would then reset my loan agreement to the original payment of $2,120.59. I was told to ignore the statement, because World Savings was still applying all the funds from the reinstatement, and that I would be receiving an accounting of the applied funds from the reinstatement, which would clear up all of these issues.

Please provide me with a complete and accurate accounting of my loan number 0010585743 and an explanation of all discrepancies outlined above.


Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "14"

<div align="center">

**Tina S. Alexander**
12318 Mossycup Dr.
Houston, TX 77024

</div>

October 20, 2007


**World Savings**
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

    Over the past couple of weeks, I have received multiple conflicting account statements and payment demands on my reinstated loan.  Each time I immediately called the phone number on each statement to inquire about the inconsistencies and was told to ignore the statements that my reinstated payment of $106,000 paid on September 28, 2007, was still being processed or applied. Despite the assurances from your office, I am still a bit concerned, since I have not seen any statement or document to date reflecting the terms of my reinstated loan with a payment of $2,120.59 and no escrow.

    On October 16, 2007, I sent a letter regarding the conflicting documents sent to me over the past 22 days after paying $106,000 to reinstate my loan, and the detailed responses of each representative to my questions. Also, I requested a complete and accurate accounting of my loan.

    Even though your office has repeatedly told me that my loan payment due on November 1, 2007 will be my reinstated loan payment of $2,120.59. I would like to see documentation to reflect the terms of my reinstated loan agreement, because the multiple conflicting accounting and demands for payment are in violation of that loan agreement.


Sincerely,

*Tina S. Alexander*

Tina S. Alexander
Loan Number: 0010585743

# WORLD SAVINGS

*How may we help you?*

# LOAN STATEMENT

3,538

**Property Address:** 12318 MOSSYCUP
HOUSTON          TX 77024-4907

**Loan Number:** 10585743

**Payment Due Date:** 11/01/07

**Statement Date:** 10/18/07

**Questions about your loan?**
For quick answers, call . . . . . . . . . . . . . . . . . .**1-800-642-0257**
8 a.m. – 8 p.m. Mon. – Fri., 8 a.m. – 5 p.m. Sat., Central Time
*(Please have your loan and Social Security numbers ready.)*

003536  YNNYYN  M9DLLSTA

TINA S ALEXANDER
12318 MOSSYCUP DR
HOUSTON          TX 77024-4907

## 1 PAYMENT OPTIONS

*Select your option on the Payment Coupon below. Please see*
**CHOOSING YOUR PAYMENT OPTIONS** *on reverse side for explanations.*

| | |
|---|---|
| ) Minimum Payment | 8,789.09 |
| ) 15-Year Payment Plan | 11,248.67 |

To check the status of your World loan anytime, day or night,
visit us at . . . . . . . . . . . . . . . . . .**www.worldsavings.com**
For new purchase, refinance, or home equity loan assistance,
simply call . . . . . . . . . . . . . . . . . . . . . .**1-800-914-8166**

## 2 CURRENT PAYMENT EXPLANATION

| Payment Options | Option 1 | Option 2 |
|---|---|---|
| Interest Due | 1,698.91 | 1,698.91 |
| Deferred Interest† | | |
| Principal Paid | 421.68 | 2,881.26 |
| Escrow/Other | 440.53 | 440.53 |
| Total Past Due | 6,227.97 | 6,227.97 |
| Total Payment | 8,789.09 | 11,248.67 |

| Past Due Amount | Late Charges/ Fees Due | Total Past Due | Total Outstanding Deferred Interest † | Current Interest Rate |
|---|---|---|---|---|
| | 6,227.97 | 6,227.97 | | 7.750 |

† See explanation of deferred interest on reverse side under **CHOOSING YOUR PAYMENT OPTIONS.**

## 3 YEAR-TO-DATE INFORMATION

| Year-to-Date Payments | Year-to-Date Escrow Disbursements |
|---|---|
| Principal | Taxes |
| 16,449.76 | |
| Interest | Additional Assessments |
| 77,310.02 | 860.38 |
| Late Charges/ Fees | Homeowner's Insurance |
| 3,816.19 | 5,286.33 |
| | Other |

## 4 TRANSACTION ACTIVITY

| Date | Description | Total | Principal | Interest Paid | Interest Rate | Escrow | Optional Insurance | Late Charges/ Other Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|
| 10/07 | BEGINNING BALANCE | | +263,476.15 | | | -80,660.16 | | | |
| 10/12 | 10/01 PHONE PMT | 2,561.12 | -418.97 | 1,701.62 | 7.750 | +440.53 | | | |
| 10/18 | ENDING BALANCE | | +263,057.18 | | | -80,219.63 | | | |

## 5 IMPORTANT MESSAGES          www.worldsavings.com

Have your financial needs changed? Want to refinance? Need cash? Contact World first! Because you're our
highly valued customer, we may offer you faster, cheaper, and easier options than other lenders can.  Call us
at 1-800-914-8166.

---

*Please detach coupon and return with payment. Thank you.*

# Exhibit "16"

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

October 29, 2007


World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

On October 18, 2007, I received from World Savings a Loan History Statement, which reflected the payment of $106,000.00 from the Loan Reinstatement.  The loan history statement is not very clear and has numerous "misc application pay" amounts being deducted. Also, at the beginning of the statement are 2 line items dated 3/30 and titled "Reversal".  One is for -55,568.26 and the other is for -15,861.51. This statement is showing a -80,660.16 at the bottom of the Escrow column. This makes absolutely no sense at all.  I am wondering if this -55,568.26 and -15,861.51 = -71,429.77 has anything to do with the Annual Escrow Account Disclosure Statement I received on Oct. 15, 2007, increasing my payment in December 2007, for which World Savings told me was an error and would be corrected.

I have called World Savings several times and no one can explain these items and the general consensus is that it is an error from the Wachovia transition and will be corrected.  Please provide me with some documentation as to what these amounts are.

Today, Oct. 29, 2007, I received a loan statement from World Savings dated Oct. 18, 2007 providing 2 payment options for the November 1, 2007 payment.  Option 1 says to pay $8,789.09 or Option 2 says to pay $11,248.67 a 15 year plan.  In the Transaction Activity section of the statement reflects an escrow balance of -80,219.63, for the first time ever.  What is going on here?  I have called World Savings every week this month with questions about documentation that I am being sent and am repeatedly told it is in error.  Now an escrow amount of $-80,219.63 is magically showing up on my statements, when is the corrections going to happen. I am a single Mom with Lupus and stress aggravates my medical condition. I need this resolved ASAP, because less than a month ago, I paid World Savings $106,000.00 to reinstate my loan to current.  The $106,000.00 is actually more than World Savings said I had to pay. Less than a week after I reinstated the loan and paid $106,000, there are all these errors in documentation and no one seems to be able to provide one accurate, truthful answer. I still am not sure what to pay in November for the monthly payment.  You have told me one amount, however, paperwork sent by World Savings with unexplained numbers says something entirely different.

I would greatly appreciate these questions being answered immediately and the documentation corrected to reflect the reinstated terms of my loan agreement.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "17"

 **WORLD SAVINGS**

November 20, 2007                    Loan Number: 0010585743

Tina S Alexander
12318 Mossycup Dr
Houston, TX 77024 4907

Customer(s):      Tina S Alexander
Property Address:  12318 Mossycup
                   Houston TX 77024

Dear Tina S Alexander :

Thank you for allowing World Savings to meet your home loan needs.
We appreciate your recent remittance of funds to reinstate your
loan.  In applying these funds, there was an overpayment of
foreclosing fees and cost as a result of an estimated quote.  Please
find enclosed a check in the amount of $61.00 representing the
amount of overpayment.

You are a valued customer and we look forward to continuing our
business relationship.  Should you have any questions or need
additional information, please contact or Customer Service
Center at 1-800-642-0257.  A representative is available to assist
you Monday through Friday, 8:00a.m. to 8:00 p.m., and Saturday
8:00 a.m. to 5:00 p.m., Central Time.  For your convenience,
you may also obtain home loan information or contact us at
www.worldsavings.com.

Foreclosure Department

FC725 009 RLC


NOTICE REQUIRED BY FEDERAL LAW:
*Please be advised that World Savings may be attempting to collect
 a debt.  If you are currently in bankruptcy or your debt has been
 discharged in bankruptcy, World Savings is only exercising its
 rights against the property and is not attempting to hold you
 personally liable on the note.

L-11740

                                        P.O. Box 659558
                                        San Antonio, Texas 78265-9558

Z5121-962

WORLD SAVINGS
MACHINE DISBURSEMENT CHECK VOUCHER

11/20/07
PAGE 643

CHECK-NUMBER : 119442

PAYEE NAME TINA S ALEXANDER
PAYEE & ADDRESS 12318 MOSSYCUP DR
HOUSTON TX 77024-6907

PAYEE CODE: 0010585743          BATCH:DB1                                    PAGE   1 OF   1

LOAN-NO          SHORT-NAME          DESCRIPTION          TRAN DATE          AMOUNT
                 INIT  NAME                               CODE               DUE
                 PROPERTY ADDRESS

0010585743       TS ALEXANDE                              FCL          601        61.00

CHECK TOTAL                               1  ITEMS                                61.00

# Exhibit "18"

# WORLD SAVINGS

## LOAN STATEMENT

4,415

**Property Address:** 12318 MOSSYCUP
HOUSTON                    TX 77024-4907

**Loan Number:** 10585743

**Payment Due Date:** 12/01/07

**Statement Date:** 11/20/07

**Questions about your loan?**
For quick answers, call .................1-800-642-0257
8 a.m. – 8 p.m. Mon. – Fri., 8 a.m. – 5 p.m. Sat., Central Time
*(Please have your loan and Social Security numbers ready.)*

004415  YYYNNN  M9DLLSTA

TINA S ALEXANDER
12318 MOSSYCUP DR
HOUSTON                    TX 77024-4907

## 1 PAYMENT OPTIONS

*Select your option on the Payment Coupon below. Please see
CHOOSING YOUR PAYMENT OPTIONS on reverse side for explanations.*

Minimum Payment                     14,182.97

To check the status of your World loan anytime, day or night,
visit us at .................WWW.WORLDSAVINGS.COM
For new purchase, refinance, or home equity loan assistance,
simply call .................1-800-914-8166

## 2 CURRENT PAYMENT EXPLANATION

| Payment Options | |
|---|---|
| Interest Due | 1,496.19 |
| Deferred Interest | |
| Principal Paid | 426.60 |
| Escrow/Other | 6,846.06 |
| Total Past Due | 5,414.12 |
| Total Payment | 14,182.97 |

| Past Due Amount | Late Charges/ Fees Due | Total Past Due | Total Outstanding Deferred Interest† | Current Interest Rate |
|---|---|---|---|---|
| 2,561.12 | 2,853.00 | 5,414.12 | | 7.750 |

†*See explanation of deferred interest on reverse side under CHOOSING YOUR PAYMENT OPTIONS.*

## 3 YEAR-TO-DATE INFORMATION

| Year-to-Date Payments | Year-to-Date Escrow Disbursements |
|---|---|
| Principal | Taxes |
| 16,649.74 | |
| Interest | Additional Assessments |
| 77,310.02 | 860.38 |
| Late Charges/ Fees | Homeowner's Insurance |
| 10,044.16 | 5,286.33 |
| | Other |

## 4 TRANSACTION ACTIVITY

| Date | Description | Total | Principal | Interest Paid | Interest Rate | Escrow | Optional Insurance | Late Charges/ Other Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|
| 5/19 | BEGINNING BALANCE | | 265,097.18 | | 80,219.65 | | | | |
| 1/08 | FEE PAYMENT | 6,121.94 | | | | | | 6,121.94 | |
| 1/20 | ENDING BALANCE | | 265,097.18 | | 80,219.65 | | | | |

## 5 IMPORTANT MESSAGES          www.worldsavings.com

Your loan is 01 payment(s) past due.  Your oldest payment was due 11/01/07.
********If you are having difficulties making your mortgage payments, we encourage you to contact World
Savings at 1-800-282-3451.  Some of our payment plans may pleasantly surprise you.  If your payment has
already been made, please disregard this message.

World Savings is now part of Wachovia and your statement will soon have a brand new look featuring the
Wachovia name and color scheme.  Beginning December 31, 2007, please make out your monthly mortgage check to
Wachovia Mortgage.  Rest assured, the name of our company has changed.  Your loan number and all
customer service contact information/phone numbers/addresses remain the same.  Thank you.

*Please detach coupon and return with payment. Thank you.*

00000105857430008768850014182970014289000000000000000000000000000000044159

| Loan Number: 10585743 | Make check payable to World Savings. | Payment Due Date: | ******** |
|---|---|---|---|
| Name: TINA S ALEXANDER | - Minimum Payment    $14,182.97 | Payment Amount: | _____ |
| | | Additional Amount to go to Principal/Deferred Interest: | _____ |
| WORLD SAVINGS | | Total Amount Enclosed: | _____ |
| PO Box 105693 | | To avoid a Late Charge of please ensure payment is received by 12/17/07 | 186.03 |
| Atlanta GA 30348-5693 | | For change of address or phone number, check the box and enter new information on reverse side. | ☐ |

⑆5400 22250⑆00000 10585743⑆ 512

# Exhibit "19"

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

November 27, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

Today, November 27, 2007, I received a loan statement dated 11/20/07 for the December 1, 2007 payment for $14,182.97. Over-the-top would be an understatement for the amount of frustration that I am feeling regarding World Savings/Wachovia's handling of my loan reinstatement, along with the blatant disregard for accurate accounting and documentation.  This is my third letter since my loan was reinstated and brought current the first of October 2007, via a $106,000 payment. I have requested numerous times both in writing and over the phone for a complete and accurate accounting of my loan. I have repeatedly been told that it is being looked into, but nothing occurs. You have refused to accept my November 2007 payment for the amount of $2,120.59 and now have refused to accept my December 2007 payment of $2,120.59. As a result of your refusal to accept my payments, you are in breach of our loan agreement and must immediately rectify your accounting issues.

On November 20, 2007, I received a refund check of $61.00 from World Savings/Wachovia for the overpayment of my loan reinstatement amount. I paid $106,000 rather than $105,440.15, because I figured there would be a few more days' interest charged and I wanted to make sure that everything was paid and current. My letter dated Oct. 29, 2007, pointed out that I overpaid and you subsequently sent me this refund for $61.00, so obviously you have been receiving my letters and have responded to the overpayment, but not to the accounting, the payment demand errors, and the magically appearing escrow numbers. It is unreasonable to expect anyone to pay amounts demanded without accurate accounting or explanations as to the discrepancies. Also, if these unreasonable amounts were actually correct and owed, then why would you send me a refund?

I have repeatedly attempted to make the Nov. 2007 loan payment for $2,120.59 according to my original loan contract, and World Savings/Wachovia would not accept the payment. Instead, I was told that I had to pay $8,789.09. World Savings/Wachovia was repeatedly told about their inconsistent statement since my loan was brought current. Again, I was told about the World Savings/Wachovia transition, and they would have to look into it. The only amount they would accept was $8,789.09. I knew my Nov. 2007 loan payment should

be $2,120.59, as my original loan contract provided, because the October loan payment was $2,561.12, which included the final $440.53 escrow amount from the reinstatement. I also reminded World Savings/Wachovia that I was waiting on answers regarding the appearance of an escrow balance. I informed them that it was imperative this be resolved because their documentation error was increasing my payments beginning December 1, 2007 by $6,648.26 to a total payment of $8,768.85, which would be a problem for me to pay.

I would greatly appreciate these questions being answered immediately, the documentation corrected to reflect the reinstated terms of my loan agreement, and the acceptance of the contractually specified loan payment for November in the amount of $2,120.59.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "20"

# WORLD SAVINGS

November 21, 2007                          Loan Number: 0010585743

000646 M9DLA1TA
Tina S Alexander
12318 Mossycup Dr
Houston, TX 77024 4907

Dear Tina S Alexander :

World Savings has not received the payment due on November 01, 2007.
If this payment has already been made, then please disregard this
notice.

Please make the payment immediately, including any late charges due
for a total of $ 5,414.12. You have the following payment options:

* Call 1-800-642-0257 to make your payment by phone
* Pay online at www.worldsavings.com
* Call 1-800-282-3451 to discuss payment arrangements (M-F 8:00 a.m.
  to 10:00 p.m., and Saturday, 8:00 a.m. to 5:00 p.m., Central Time).
* You may pay at any World Savings branch, or mail payments to:

                    World Savings
                    Attn: Cashiering Dept., TX 1361
                    P.O Box 659568
                    San Antonio, TX 78265-9568

Please be advised we may report information about your account to
credit bureaus.  If this is an ELOC, we may suspend advance
privileges if payment is not received.

Loan Counseling Department

CO650 063 CPI

*NOTICE REQUIRED BY FEDERAL LAW: Please be advised that World Savings
may be attempting to collect a debt.  If you are currently in
bankruptcy or your debt has been discharged in bankruptcy, World
Savings is only exercising its rights against the property and is
not attempting to hold you personally liable on the Note.

P.O. Box 659558
San Antonio, Texas 78265-9558

L-11740R

# Exhibit "21"

**Tina S. Alexander**
12318 Mossycup Dr.
Houston, TX 77024

November 28, 2007


World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

    Today, November 28, 2007, I received a letter from World Savings
dated 11/21/07 saying you did not receive my November 01, 2007 loan
payment.  I just sent a letter to World Savings yesterday detailing
the events of World Savings refusal to take my November payment, as
per my original loan agreement, and requested a complete accounting
of my loan, along with the documentation errors corrected immediately
to reflect the reinstated terms of my original loan agreement, and
the acceptance of the contractually specified loan payment for
November in the amount of $2,120.59.
    Today, World Savings letter says that I need to pay $5,414.12
for my November 2007 loan payment.  This yet again, brings to light
the blatant discrepancies in the World Savings/Wachovia accounting
requesting a third different amount to be paid for November 2007.
- On 10/16/07, I received a loan statement dated 10/06/07 reflecting
  the Nov. 07 payment being $8,789.09
- On 10/29/07, I received a loan statement dated 10/18/07 reflecting
  the Nov. 07 payment to be either $8,789.09 or 11,248.67
- Now on 11/28/07, I receive a letter dated 11/21/07 saying that my
  Nov. 07 payment was not received and I should pay $5,414.12. How
  can that even be possible? On the Dec. 1, 2007 loan statement
  shows a past due payment being $2,561.12 and late charges and fees
  being $2,853.00 for a total of $5,414.12, which I had to figure
  out because the previous 2 loan statements for Nov. 07 sent by you
  did not have either of these amounts on them. Also, how can late
  charges and fees be greater than the payment amount? Anytime in
  the previous 9 years, late charges have always been $106.03, but
  now you magically increase them to $2,853.00, like you magically
  made an $80,219.63 escrow appear.

    It is apparent that World Savings/Wachovia is having accounting
issues reinstating my loan after accepting $106,000 dollars.  I am
once again requesting a complete and accurate accounting of my loan.
I have attempted to make my Nov. 07 payment in the correct amount of
$2,120.59 and you have refused to accept my payment. You are in
breach of our loan agreement and must immediately rectify your
accounting issues. If you need my assistance, I will help you with

your accounting in regard to my loan agreement. This must be fixed immediately.

I would greatly appreciate these questions being answered immediately, the documentation corrected to reflect the reinstated terms of my loan agreement, and the acceptance of the contractually specified loan payment for November in the amount of $2,120.59."

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "22"

 **WORLD SAVINGS**

December 04, 2007                              Loan Number: 0010585743

*** CERTIFIED MAIL ***
NOTICE OF INTENT TO FORECLOSE


Tina S Alexander
12318 Mossycup Dr
Houston, TX 77024 4907


Property Address:   12318 Mossycup
                    Houston TX 77024

Dear Tina S Alexander :

Our records indicate we have not received your last 2 mortgage
payments.  Your loan is in default and due for the November 01, 2007
payment, and all subsequent payments and late charges.  The total
amount due is $ 14,182.97 which includes $ 106.03 in late charges.
You may also be charged for any additional fees we may incur,
including but not limited to: property tax and insurance payments,
attorney fees, property inspections and other assessments.

Payment must be received in the form of a cashier's check, money
order, or certified check within 30 days of the date of this notice.
Any funds received that are less than the total amount due will
be considered a partial payment and will be applied towards the
arrearages due on your delinquent loan.  Application of a partial
payment is not an acceptance in full satisfaction of the delinquent
amount due.  Please mail payment(s) to the following address:

                    World Savings
                    Cashiering Dept., TX1361
                    P.O. Box 659568
                    San Antonio, Texas 78265-9568

Failure to cure this default on or before January 03, 2008,
will result in the acceleration of the sums secured by the Security
Instrument, making the entire loan immediately due and payable.
The lender will seek foreclosure which will result in the forced
sale of the property.  You are further advised of your right to
reinstate after the acceleration and the right to bring a court
action to assert the non-existence of a default or any other defense
you may have to the acceleration and forced sale.

CO731 022 CPI


P.O. Box 659538
San Antonio, Texas 78265

 **WORLD SAVINGS**

Tina S Alexander
Loan Number 0010585743
NOTICE OF INTENT TO FORECLOSE
Page 2

You may have contacted World Savings and made a promise to pay
by a certain date in order to bring your loan to a current status.
If the promise to pay is fulfilled, please disregard this
notification.  Failure to make the full promised payment, in good
funds, on or before 5:00 p.m. Central Time, on the promised date,
or any other violation of any other terms of your Note and
Security Instrument, will keep this notice in full force and
effect.  You may be eligible for Home Ownership Counseling through
the Housing and Community Development Act of 1987.  Please call
the Community Development Agency at 1-800-569-4287.

Section 6050J of the 1984 Tax Reform Act requires lenders to
report foreclosures and abandonments to the Internal Revenue
Service.

Should you have any questions, please contact us at 1-800-282-3451.
A representative is available to assist you Monday through Friday,
8:00 a.m. to 10:00 p.m., and Saturday, 8:00 a.m. to 5:00 p.m.,
Central Time.

Loan Counseling Department

Enclosure(s)

C0731 022 CPI

<u>NOTICE REQUIRED BY FEDERAL LAW</u>:
*Please be advised that World Savings may be attempting to collect
a debt.  If you are currently in bankruptcy or your debt has been
discharged in bankruptcy, World Savings is only exercising its
rights against the property and is not attempting to hold you
personally liable on the Note.

P.O. Box 659538
San Antonio, Texas 78265

# Exhibit "23"

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

December 11, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

Today, December 11, 2007, I received via certified mail from World Savings/Wachovia dated 12/4/07, "Notice of Intent to Foreclose". There are not words to describe my level of frustration and I will do my best to remain courteous; however, it will be difficult. I just finished a call with another customer service person at World Savings/Wachovia trying to get answers, and it is a waste of time calling.  I am always told the same thing. We will look into it and pay the most current statement. I am sick and tired of hearing that because you, World Savings/Wachovia, never do anything and I have to assume incompetence runs wildly through your organization.

This most current letter from World Savings/Wachovia or Notice of Intent to Foreclose says my loan is in default and due for the Nov. 1, 2007 payment and all subsequent payments and late charges. This notice says the total amount due is $14,182.97 which includes $106.03 in late charges.  However, on 11/28/07, I received a letter from you dated 11/21/07 saying I owe $5,414.12 of which $2,853.00 is late charges. I have tried to make the CORRECT November reinstated loan payment of $2,120.59, which World Savings/Wachovia refused to accept. On November 28, 2007, I sent you a letter requesting accounting and my loan issues to be resolved.  Rather than respond to my numerous letters, except for sending me a refund on Nov. 20, 2007 for a $61.00 over payment, World Savings proceeds with a "Notice of Intent to Foreclose" reflecting an amount that is blatantly incorrect 2 weeks later.

I am beginning to think that World Savings/Wachovia took my $106,000 on 9-28-07, with the intent to create a paperwork nightmare and take my property, even though my loan was reinstated and current the first of October 2007.  I would like to give World Savings/Wachovia the benefit of doubt, however, their behavior including NOT providing an accurate accounting of my loan, the multiple incorrect statements demanding different amounts of money, the $80,219.63 escrow account balance, which magically appeared for the first time on the multiple Nov. 1, 2007 payment statements, and the refusal to accept my accurate, reinstated loan payment of $2,120.59 for November 2007, gives me more than enough reason to

forego any benefit of doubt. It is evident that World Savings/Wachovia either had a horrible transition and they do not have their act together or they are participating in unreasonable and unjust behavior.

Regardless, World Savings/Wachovia's refusal to accept my correct reinstated loan payment of $2,120.59 for November 2007 and December 2007 is in breach of the loan agreement, which I have notified them of such in the multiple letters I have written them the past 6 weeks. Given World Savings/Wachovia's breach of the loan agreement, I question World Savings/Wachovia's right to foreclose on my property.

Please provide an accurate accounting of my loan reinstatement and fix the errors in your system so these matters can be resolved.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "24"

**WORLD SAVINGS**

December 17, 2007                          Loan Number: 0010505743

000168 M9DLAMTA
Tina S Alexander
12318 Mossycup Dr
Houston, TX 77024 4907

Re: Borrower:      Tina S Alexander
    Property Address: 12318 Mossycup, Houston TX 77024

Dear Tina S Alexander :

Thank you for allowing World Savings to meet your home loan needs.
We are very concerned about the past due payment(s) on your mortgage.
The total payment(s) due to World Savings as of today is
$ 14,289.00.  If you are unable to make payment(s) due to financial
problems, please let us know immediately. Our Loan Counselors would
welcome the opportunity to assist you.

If you are experiencing a hardship that has effected your ability
to make payment, such as unemployment, reduced income, divorce,
disability or illness, we want to work with you during this
difficult period.

Rather than risk foreclosure on the property, you should find out
if you qualify for one of these programs:

*  PAYMENT PLAN:  We may be able to delay any foreclosure or other
   legal action if you can commit to repay the delinquent amount
   over an extended period.

*  MODIFICATION PLAN:  You may qualify for a modification to ease
   your repayment of the delinquency.

*  MORTGAGE ASSUMPTION:  Allows a qualified buyer to assume your
   obligation on the loan.

*  LOAN CONVERSION:  You may be able to convert from your current
   loan product to another product that better suits your financial
   needs.

FORECLOSURE HAS VERY SERIOUS CREDIT IMPLICATIONS.  Walking away
from the property may seem like a better choice than making your
delinquent payment(s), but it can carry many long term consequences.
Foreclosures are reported to all major credit reporting agencies in
the United States.  Once foreclosure is reported, it becomes a part
of your permanent credit file and will remain with negative effects
for up to ten years.  We want to help you avoid this action.

Please contact us immediately at 1-800-282-3451 to discuss your
situation.  We are available to assist you Monday through Friday,
8:00 a.m. to 10:00 p.m., and Saturday, 8:00 a.m. to 5:00 p.m.,
Central Time.  We want to help and look forward to hearing from you
very soon.  You may also obtain home loan information, locate the
nearest World Savings branch, or contact us at
www.worldsavings.com.

Loan Counseling Department
CO753 031 CPI
*NOTICE REQUIRED BY FEDERAL LAW: Please be advised that World Savings
may be attempting to collect a debt.  If you are currently in
bankruptcy or your debt has been discharged in bankruptcy, World
Savings is only exercising its rights against the property and is
not attempting to hold you personally liable on the Note.

LN8 814R (11/02)                              P.O. Box 659558
                                              San Antonio, Texas 78265-9558

# Exhibit "25"

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

December 21, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

     Today, December 21, 2007, I received a letter from you, World
Savings/Wachovia dated 12/17/07, providing options to pay the again
different, incorrect amount of $14,289.00 to prevent foreclosure.
     One more time I will ask for a complete accounting of my loan because
I do not owe $14,289.00.  I have repeatedly tried to make the correct
reinstated loan payment of $2,120.59 for Nov. and the same for Dec. 2007,
but you, World Savings/Wachovia will not accept the contractually required
payment. Your refusal to accept my contractually required payment has broken
or breached the loan agreement. World Savings/Wachovia has not responded to
my numerous letters requesting a reliable accounting and/or cohesive
explanation of the multiple different payment demands and the magically
appearing escrow balance that are not reflected in our original loan
agreement that was reinstated.
     Please provide an accurate accounting or your incorrect accounting so
any discrepancies that occurred when my loan was reinstated the first of
October 2007 and when World Savings was transitioning to Wachovia, can be
accurately resolved according to the reinstated loan agreement. I am only
asking for accurate accounting and resolution of these discrepancies and the
mysterious escrow charges that magically appeared on multiple Nov. 07 loan
statements. This magically appearing escrow account did not appear until
after you received and processed my $106,000 payment to reinstatement my
loan. It is my belief that the majority of your accounting discrepancies are
related to this magically appearing escrow.  It is certainly causing my
payments to be grossly inflated in your records and not in accordance with
the reinstated loan agreement.
     My intent is to resolve these issues with you, World Savings/Wachovia,
because I would certainly NOT have paid $106,000.00 2 months ago to
reinstate my loan, only to be in foreclosure again, due to incorrect
accounting or a messy Wachovia transition, along with World
Savings/Wachovia's refusal to accept the correct loan payment according to
the reinstated loan agreement.
     Please provide me with the documentation requested above so that some
resolution can occur amicably.


Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "26"

# Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

December 27, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

    Today, December 27, 2007, I received the Jan. 1, 2008 loan statement
from you, World Savings/Wachovia dated 12/20/07, reflecting that I now need
to pay $23,057.85. It is apparent that World Savings/Wachovia both cannot
fix their accounting errors and provide documentation as such, or you are
negligent and satisfied with your own errors assisting in you stealing your
client's property.

    As you know and I have reminded you often, that on September 28, 2007,
$106,000.00 was wired to you to reinstate my loan agreement in full. Your
employee, Mike Lara in the foreclosure department, faxed me a "REINSTATEMENT
QUOTE" on September 18, 2007, after requesting it multiple times. The
reinstatement quote stated, "Total required to reinstate loan in
full....105,395.15". My detailed notes from conversations, faxes, and
letters with Mike Lara through the reinstatement payment being made to
reinstate my loan:

- On September 18, 2007, received fax of reinstatement quote from Mike
  Lara. After a couple of phone calls discussing the reinstatement
  quote with Mike Lara on the phone, I sent a confirmation letter by
  mail and faxed a copy to Mike Lara on September 19, 2007,
  reconfirming our conversations that there are no other amounts that
  I owed World Savings, and if $105,440.15 is paid, my loan will be
  current, and in good standing. (Confirmation Letter Attached)

- On September 27, 2007, I called Mike Lara to reconfirm again,
  because I was nervous and wanted to make absolutely sure that all
  amounts owed to World Savings would be brought current when
  105,440.15 was paid the next day. On the call, Mike Lara and I
  reviewed an escrow breakdown that I had requested to re-verify that
  all items are included in the reinstatement quote. We began with the
  first item creating a balance:

  o 04/18/06 escrowed charges of $5,286.33. This was included in the
    reinstatement amount, because $440.53 was added to payments being
    brought current by reinstatement. *Confirmed by World Savings
    "Annual Escrow Disclosure Statements" from the actual escrow
    history dated July 2002 through April 2007 revealing a shortage
    of $5,286.33.*

  o 03/09/07 two escrow charges of 470.54 & 389.84 that totals
    $860.38 and 03/13/07 an escrow charge of $5,286.33. These to
    amounts total $6,146.71, which was reflected and accounted for as

"additional charges" for $6,227.97 being brought current by reinstatement. *Confirmed by 04/01/07 World Savings Loan Statement under current year to date escrow disbursements of $860.38 and $5,286.33.*

o 3/30/07 two items with Description "Reversal" for $55,568.26 and $15,861.51 were the final items. Mike Lara said both these amounts with the description of Reversal was an error, because they did not coincide with any previous documentation in World Savings system, and these amounts were not reflected on any statements provided by World Savings. *Confirmed by the "Annual Escrow Disclosure Statements" provided by World Savings through 04/2007 date, which is past the 03/30/07 date of the items, and that these items were errors to be corrected. The only escrow amounts reflected a shortage of $5,286.33 described above. Mike Lara instructed me to ignore these amounts, and that they would be corrected in the World Savings system.*

- On September 28, 2007, a wire for $106,000.00 was sent to World Savings to reinstate my loan. I called and talked to Mike Lara and faxed wire transmittal to him. Mike Lara asked why I sent more than the required reinstatement amount. I stated that I wanted to be sure that everything was current, and figured an additional 3 days of interest charges that should be due since the reinstatement quote was calculated to be accurate until 5:00 pm on September 25, 2007, so I rounded up to $106,000.00 to ensure everything was paid to a current status.

Currently, I have resorted to guessing in an effort to make sense of this nightmare of inconsistent statements containing unaccounted and unexplained amounts, because I have not received any answers to my multiple requests for an accurate accounting of my loan. Therefore, a possible explanation to the reinstated overpayment refund check of $61.00 received on November 20, 2007 from World Savings, could be the difference of the $6,227.97 included in the reinstatement payment and the actual escrow amounts of $6,146.71 being cleared, providing an overpayment of $81.26, which is only $20.26 more than the $61.00 refund check.

I performed under the terms of the reinstated loan agreement making the regular monthly payment of $2,120.59 and a final escrow payment of $440.53 for a total payment of $2,561.12 for the month of October 2007. By paying the one-time additional $440.53 escrow amount after my loan was reinstated, demonstrated my performance and desire for a clean new start with a 100 percent reinstated loan. I have repeatedly tried to make the correct reinstated loan payments of $2,120.59 for November and the same for December 2007, but you, World Savings/Wachovia, would not accept my contractually required payments, as stated under the terms of my loan agreement. Your continued refusal to accept my contractually required payments has broken and breached my loan agreement, and I expect you, World Savings/Wachovia to abide by the terms of the loan agreement and repair the breach.

As of today, World Savings/Wachovia has not responded to my numerous letters requesting a reliable accounting and a cohesive explanation for the multiple and inconsistent payment demands, for unaccounted discrepancies, and the magically appearing escrow balance correction.

World Saving/Wachovia did not repair their breach of the loan agreement and has not responded to the numerous documentation requests. Therefore, as a consequence of World Savings/Wachovia breaching the loan agreement, and their apathetic response in correcting their breach, I will no longer perform under the loan agreement until such time that World Savings/Wachovia repairs their breach.

It has always been and continues to be my intent to resolve these issues with World Savings/Wachovia.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Tina S. Alexander
### 12318 Mossycup Dr.
### Houston, TX 77024

September 19, 2007

**World Savings**
**4101 Wiseman Boulevard**
**San Antonio, TX  78251-4201**
**Attn: Mike Lara, Foreclosure Department**

Re: Reinstated Quote for Loan Number: 0010585743

Mr. Mike Lara,

    Please have this letter confirm our conversation today regarding the Reinstatement Quote you faxed to me yesterday, which I received in the mail today.  I called to reconfirm that there are no other amounts that I owe World Savings. If I pay this reinstatement quote amount of $105,440.15, my loan will be current and in good standing. It is my intention to pay this amount and bring my loan current.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "27"

April 18, 2008



**PITE
DUNCAN
LLP**

*San Diego*

Steven W. Pite *CA/NV/WA*
John D. Duncan *CA/WA*
Peter J. Salmon
*CA/ID/UT/WA*
David E. McAllister
*AZ/CA/HI/OR/UT/WA*

Michelle A. Mierzwa *CA*
Rochelle L. Stanford
*AZ/CA/OR/WA*
Josephine E. Salmon
*AK/AZ/CA/NV*
Laurel I. Handley
*AZ/CA/ID/NV*
Daniel R. Gamez *CA/TX*
Eddie R. Jimenez *CA/NV/TX*
Adam B. Arnold *CA*
Daniel L. Hembree *CA/WA*
Susan L. Petit *AK/CA/WA*
Douglas A. Toleno *AZ/CA*
Amanda M. Lorenz *AZ*
Melissa L. Carter *TX*
Alison J. Malouf *CA*
Christopher R. Chicoine
*AZ/CA*
Cuong M. Nguyen *CA*
Casper J. Rankin *CA*
Anne L. Warner *CA*
Charles A. Correia *CA*
Melodie A. Whitson *CA*
Brian A. Paino *CA/VA*
Christopher M. McDermott
*CA*
Jillian A. Benbow *CA*
Parisa Sadoughianzadeh *CA*
Elsie L. Sécoquian *CA/NV*

*Mailing Address*
P.O. Box 12289
El Cajon, CA
92022-2289

*Overnight Delivery*
525 E. Main Street
El Cajon, CA 92020

*Contact Nos.*
Ph.: (619) 590-1300
Fax: (619) 590-1385

*Orange County*

Steven J. Melmet *CA*

Bruce J. Quilligan *CA*
Kerry W. Franich *CA*
Elana J. Moeder *CA*
Bryan T. Brown *TX*
Thomas N. Abbott *CA*

1820 E. First St., Ste. 420
Santa Ana, CA 92705
Ph: (714) 285-2633
Fax: (714) 285-2668

### NOTICE OF ACCELERATION OF TEXAS
### NON-RECOURSE HOME EQUITY LOAN

### STATE LAW REQUIRES THIS NOTICE.  IT DOES NOT CHANGE OR
### SHORTEN THE TIME PERIOD FOR YOU TO EXERCISE
### YOUR RIGHTS AS DESCRIBED BELOW

Tina S. Alexander
12318 Mossycup
Houston, TX 77024

Re:     Loan No.:     0010585743; ("Loan"); Non-Recourse Home Equity Note ("Note") and Texas
              Home Equity Security Instrument dated September 15, 1998 ("Deed of
              Trust")
        Property Address:      12318 Mossycup, Houston, TX 77024 ("Property")

**This is an attempt by a debt collector to collect a consumer debt and any information obtained
will be used for that purpose.**

**Unless within thirty (30) days after you receive this notice you dispute the validity of this debt,
or any portion of the debt, the debt will be presumed to be valid.**

**If within this thirty days:  (i) You notify this office (hereinafter "we" or "us") in writing that
you dispute this debt, or any portion of it, then we will obtain and mail to you verification of
this debt or a copy of any judgment against you; (ii) You request in writing that we obtain the
name and address of the original creditor, if different from the current creditor, then we will
obtain and mail it to you; (iii) You notify us in writing that you dispute this debt, or any
portion of the debt, then we will cease collection of the debt, until we obtain verification of the
debt, or a copy of any judgment, and mail it to you; (iv) You request in writing the name and
address of the original creditor, if different from the current creditor, then we will cease
collection of the debt, until we obtain the name and address of the original creditor and mail
it to you.**

*(See the name of the creditor and the amount of the debt on the next page)*

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
*See above or visit www.piteduncan.com re individual attorney admissions.*

PITE
DUNCAN, LLP

April 18, 2008
Page 2

1.      The undersigned represents WACHOVIA MORTGAGE, FSB, F.K.A. WORLD SAVINGS BANK, its successors and/or assigns ("Lender"), and is authorized to deliver this letter on its behalf. Despite notice of default and notice of intent to accelerate sent to you, the default on the Loan has not been cured. Because of the failure to pay the delinquent amount due on the above-referenced loan, Lender hereby accelerates the maturity of your loan, and declares the entire unpaid balance of principal and accrued interest on the Loan due and payable without further demand. Lender will proceed with all legal and equitable rights available to sell the Property under the terms of the Texas Home Equity Security Instrument (First Lien) after obtaining a court order authorizing a foreclosure sale pursuant to Texas Constitution Article XVI §50(a)(6) and Rule 736 of the Texas Rules of Civil Procedure and applicable Texas law.

2.      The name of the creditor to whom this debt is owed is: WACHOVIA MORTGAGE, FSB, F.K.A. WORLD SAVINGS BANK, its successors and/or assigns.

3.      All unpaid principal and accrued interest on the Note are due and payable at this time. The amount due on this indebtedness as of April 18, 2008 is $263,057.18 in principal plus all unpaid accrued interest, together with any advances and/or fees that have been or may be made or incurred pursuant to the terms of the Note and Texas Home Equity Security Instrument. The Note will continue to accrue interest at the rate set forth in the Note until paid. Additionally, the Note and the Texas Home Equity Security Instrument securing the Note provide for reimbursement of reasonable attorney's fees incurred by the Noteholder and beneficiary of these instruments in the collection of the indebtedness owed on the Note.

4.      The amount necessary for you to pay to prevent this foreclosure sale may be determined by contacting:

<div align="center">

WACHOVIA MORTGAGE, FSB
c/o Daniel R. Gamez
Pite Duncan, L.L.P.
525 East Main Street
El Cajon, CA 92020
(619) 590-1300

</div>

5.      In the event you are presently on active duty in the Armed Services of the United States or have been discharged within three (3) months prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your DD214 to this office immediately, inasmuch as you may have certain rights available to you pursuant to the Servicemember's Civil Relief Act.

6.      It is not our client's desire to deprive you of your Property. We urge you to contact Payee at the address or phone number set out above immediately to make arrangements to cure the default.

7.      To the extent that the Property is used as your residence, this letter also constitutes notice pursuant to Section 51.002(d) of the Texas Property Code.

Respectfully,

PITE DUNCAN, LLP

DANIEL R. GAMEZ

VIA  U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED
No. 7007 2680 0000 3949 3992

1645087.wpd

# Exhibit "28"

### Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

April 25, 2008

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

    Today, April 25, 2008, I received from Pite Duncan LLP, a Notice of Acceleration of Texas Non-Recourse Home Equity Loan. Wachovia Mortgage, FSB, F.K.A. World Savings Bank hired lawyers to foreclose on my property, 6 months after paying $106,000.00 to reinstate my loan. With my failed attempts at getting documentation and clear answers, and my reinstated loan payments being repeatedly refused, I can hardly expect anything less.

    The attached letters, previously sent to you, will hopefully provide a glimpse into the frustration and stress caused from your refusal to accept my reinstated loan payments and from the conflicting account statements provided with unexplained discrepancies incorporated into the payment demands. Hopefully, you will choose to read the letters; however, if not, please, at least, read the points identified below:

- The Loan Agreement is a Contract.

- I performed under the contract until you refused to accept payment as specified in the loan agreement.

- World Savings/Wachovia breached the Loan Agreement by refusing the contractually specified payments and providing inaccurate and widely varying accountings and payment demands.

- World Savings/Wachovia pursuing legal action and attempting to seize my home is causing me harm.

- I was unable to act and was forced to not perform, because World Savings/Wachovia breached the loan agreement, despite repeated requests for clear accountings with explanations and warnings of their breach, World Savings/Wachovia refused to repair the breach.

    It has always been and continues to be my intent to resolve these issues with World Savings/Wachovia in a swift and amicable manner.


Sincerely,

Tina S. Alexander
Loan Number: 0010585743

# Tina S. Alexander
### 12318 Mossycup Dr.
### Houston, TX 77024

December 27, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

Today, December 27, 2007, I received the Jan. 1, 2008 loan statement
from you, World Savings/Wachovia dated 12/20/07, reflecting that I now need
to pay $23,057.85. It is apparent that World Savings/Wachovia both cannot
fix their accounting errors and provide documentation as such, or you are
negligent and satisfied with your own errors assisting in you stealing your
client's property.

As you know and I have reminded you often, that on September 28, 2007,
$106,000.00 was wired to you to reinstate my loan agreement in full. Your
employee, Mike Lara in the foreclosure department, faxed me a "REINSTATEMENT
QUOTE" on September 18, 2007, after requesting it multiple times. The
reinstatement quote stated, "Total required to reinstate loan in
full....105,395.15". My detailed notes from conversations, faxes, and
letters with Mike Lara through the reinstatement payment being made to
reinstate my loan:

- On September 18, 2007, received fax of reinstatement quote from Mike
  Lara. After a couple of phone calls discussing the reinstatement
  quote with Mike Lara on the phone, I sent a confirmation letter by
  mail and faxed a copy to Mike Lara on September 19, 2007,
  reconfirming our conversations that there are no other amounts that
  I owed World Savings, and if $105,440.15 is paid, my loan will be
  current, and in good standing. (Confirmation Letter Attached)

- On September 27, 2007, I called Mike Lara to reconfirm again,
  because I was nervous and wanted to make absolutely sure that all
  amounts owed to World Savings would be brought current when
  105,440.15 was paid the next day. On the call, Mike Lara and I
  reviewed an escrow breakdown that I had requested to re-verify that
  all items are included in the reinstatement quote. We began with the
  first item creating a balance:

  o 04/18/06 escrowed charges of $5,286.33. This was included in the
    reinstatement amount, because $440.53 was added to payments being
    brought current by reinstatement. *Confirmed by World Savings
    "Annual Escrow Disclosure Statements" from the actual escrow
    history dated July 2002 through April 2007 revealing a shortage
    of $5,286.33.*

  o 03/09/07 two escrow charges of 470.54 & 389.84 that totals
    $860.38 and 03/13/07 an escrow charge of $5,286.33. These to
    amounts total $6,146.71, which was reflected and accounted for as

"additional charges" for $6,227.97 being brought current by reinstatement. *Confirmed by 04/01/07 World Savings Loan Statement under current year to date escrow disbursements of $860.38 and $5,286.33.

o 3/30/07 two items with Description "Reversal" for $55,568.26 and $15,861.51 were the final items. Mike Lara said both these amounts with the description of Reversal was an error, because they did not coincide with any previous documentation in World Savings system, and these amounts were not reflected on any statements provided by World Savings. *Confirmed by the "Annual Escrow Disclosure Statements" provided by World Savings through 04/2007 date, which is past the 03/30/07 date of the items, and that these items were errors to be corrected. The only escrow amounts reflected a shortage of $5,286.33 described above. Mike Lara instructed me to ignore these amounts, and that they would be corrected in the World Savings system.

- On September 28, 2007, a wire for $106,000.00 was sent to World Savings to reinstate my loan. I called and talked to Mike Lara and faxed wire transmittal to him. Mike Lara asked why I sent more than the required reinstatement amount. I stated that I wanted to be sure that everything was current, and figured an additional 3 days of interest charges that should be due since the reinstatement quote was calculated to be accurate until 5:00 pm on September 25, 2007, so I rounded up to $106,000.00 to ensure everything was paid to a current status.

Currently, I have resorted to guessing in an effort to make sense of this nightmare of inconsistent statements containing unaccounted and unexplained amounts, because I have not received any answers to my multiple requests for an accurate accounting of my loan. Therefore, a possible explanation to the reinstated overpayment refund check of $61.00 received on November 20, 2007 from World Savings, could be the difference of the $6,227.97 included in the reinstatement payment and the actual escrow amounts of $6,146.71 being cleared, providing an overpayment of $81.26, which is only $20.26 more than the $61.00 refund check.

I performed under the terms of the reinstated loan agreement making the regular monthly payment of $2,120.59 and a final escrow payment of $440.53 for a total payment of $2,561.12 for the month of October 2007. By paying the one-time additional $440.53 escrow amount after my loan was reinstated, demonstrated my performance and desire for a clean new start with a 100 percent reinstated loan. I have repeatedly tried to make the correct reinstated loan payments of $2,120.59 for November and the same for December 2007, but you, World Savings/Wachovia, would not accept my contractually required payments, as stated under the terms of my loan agreement. Your continued refusal to accept my contractually required payments has broken and breached my loan agreement, and I expect you, World Savings/Wachovia to abide by the terms of the loan agreement and repair the breach.

As of today, World Savings/Wachovia has not responded to my numerous letters requesting a reliable accounting and a cohesive explanation for the multiple and inconsistent payment demands, for unaccounted discrepancies, and the magically appearing escrow balance correction.

World Saving/Wachovia did not repair their breach of the loan agreement and has not responded to the numerous documentation requests. Therefore, as a consequence of World Savings/Wachovia breaching the loan agreement, and their apathetic response in correcting their breach, I will no longer perform under the loan agreement until such time that World Savings/Wachovia repairs their breach.

It has always been and continues to be my intent to resolve these issues with World Savings/Wachovia.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

### Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

September 19, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201
Attn: Mike Lara, Foreclosure Department

Re: Reinstated Quote for Loan Number: 0010585743

Mr. Mike Lara,

    Please have this letter confirm our conversation today regarding
the Reinstatement Quote you faxed to me yesterday, which I received
in the mail today.  I called to reconfirm that there are no other
amounts that I owe World Savings. If I pay this reinstatement quote
amount of $105,440.15, my loan will be current and in good standing.
It is my intention to pay this amount and bring my loan current.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

**Tina S. Alexander**
12318 Mossycup Dr.
Houston, TX 77024

December 21, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX 78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

Today, December 21, 2007, I received a letter from you, World Savings/Wachovia dated 12/17/07, providing options to pay the again different, incorrect amount of $14,289.00 to prevent foreclosure.

One more time I will ask for a complete accounting of my loan because I do not owe $14,289.00. I have repeatedly tried to make the correct reinstated loan payment of $2,120.59 for Nov. and the same for Dec. 2007, but you, World Savings/Wachovia will not accept the contractually required payment. Your refusal to accept my contractually required payment has broken or breached the loan agreement. World Savings/Wachovia has not responded to my numerous letters requesting a reliable accounting and/or cohesive explanation of the multiple different payment demands and the magically appearing escrow balance that are not reflected in our original loan agreement that was reinstated.

Please provide an accurate accounting or your incorrect accounting so any discrepancies that occurred when my loan was reinstated the first of October 2007 and when World Savings was transitioning to Wachovia, can be accurately resolved according to the reinstated loan agreement. I am only asking for accurate accounting and resolution of these discrepancies and the mysterious escrow charges that magically appeared on multiple Nov. 07 loan statements. This magically appearing escrow account did not appear until after you received and processed my $106,000 payment to reinstatement my loan. It is my belief that the majority of your accounting discrepancies are related to this magically appearing escrow. It is certainly causing my payments to be grossly inflated in your records and not in accordance with the reinstated loan agreement.

My intent is to resolve these issues with you, World Savings/Wachovia, because I would certainly NOT have paid $106,000.00 2 months ago to reinstate my loan, only to be in foreclosure again, due to incorrect accounting or a messy Wachovia transition, along with World Savings/Wachovia's refusal to accept the correct loan payment according to the reinstated loan agreement.

Please provide me with the documentation requested above so that some resolution can occur amicably.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

December 11, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

Today, December 11, 2007, I received via certified mail from World Savings/Wachovia dated 12/4/07, "Notice of Intent to Foreclose".  There are not words to describe my level of frustration and I will do my best to remain courteous; however, it will be difficult. I just finished a call with another customer service person at World Savings/Wachovia trying to get answers, and it is a waste of time calling.  I am always told the same thing. We will look into it and pay the most current statement. I am sick and tired of hearing that because you, World Savings/Wachovia, never do anything and I have to assume incompetence runs wildly through your organization.

This most current letter from World Savings/Wachovia or Notice of Intent to Foreclose says my loan is in default and due for the Nov. 1, 2007 payment and all subsequent payments and late charges. This notice says the total amount due is $14,182.97 which includes $106.03 in late charges.  However, on 11/28/07, I received a letter from you dated 11/21/07 saying I owe $5,414.12 of which $2,853.00 is late charges. I have tried to make the CORRECT November reinstated loan payment of $2,120.59, which World Savings/Wachovia refused to accept.  On November 28, 2007, I sent you a letter requesting accounting and my loan issues to be resolved.  Rather than respond to my numerous letters, except for sending me a refund on Nov. 20, 2007 for a $61.00 over payment, World Savings proceeds with a "Notice of Intent to Foreclose" reflecting an amount that is blatantly incorrect 2 weeks later.

I am beginning to think that World Savings/Wachovia took my $106,000 on 9-28-07, with the intent to create a paperwork nightmare and take my property, even though my loan was reinstated and current the first of October 2007.  I would like to give World Savings/Wachovia the benefit of doubt, however, their behavior including NOT providing an accurate accounting of my loan, the multiple incorrect statements demanding different amounts of money, the $80,219.63 escrow account balance, which magically appeared for the first time on the multiple Nov. 1, 2007 payment statements, and the refusal to accept my accurate, reinstated loan payment of $2,120.59 for November 2007, gives me more than enough reason to

forego any benefit of doubt. It is evident that World Savings/Wachovia either had a horrible transition and they do not have their act together or they are participating in unreasonable and unjust behavior.

Regardless, World Savings/Wachovia's refusal to accept my correct reinstated loan payment of $2,120.59 for November 2007 and December 2007 is in breach of the loan agreement, which I have notified them of such in the multiple letters I have written them the past 6 weeks. Given World Savings/Wachovia's breach of the loan agreement, I question World Savings/Wachovia's right to foreclose on my property.

Please provide an accurate accounting of my loan reinstatement and fix the errors in your system so these matters can be resolved.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

November 28, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

Today, November 28, 2007, I received a letter from World Savings
dated 11/21/07 saying you did not receive my November 01, 2007 loan
payment.  I just sent a letter to World Savings yesterday detailing
the events of World Savings refusal to take my November payment, as
per my original loan agreement, and requested a complete accounting
of my loan, along with the documentation errors corrected immediately
to reflect the reinstated terms of my original loan agreement, and
the acceptance of the contractually specified loan payment for
November in the amount of $2,120.59.

Today, World Savings letter says that I need to pay $5,414.12
for my November 2007 loan payment.  This yet again, brings to light
the blatant discrepancies in the World Savings/Wachovia accounting
requesting a third different amount to be paid for November 2007.

- On 10/16/07, I received a loan statement dated 10/06/07 reflecting
  the Nov. 07 payment being $8,789.09

- On 10/29/07, I received a loan statement dated 10/18/07 reflecting
  the Nov. 07 payment to be either $8,789.09 or 11,248.67

- Now on 11/28/07, I receive a letter dated 11/21/07 saying that my
  Nov. 07 payment was not received and I should pay $5,414.12. How
  can that even be possible? On the Dec. 1, 2007 loan statement
  shows a past due payment being $2,561.12 and late charges and fees
  being $2,853.00 for a total of $5,414.12, which I had to figure
  out because the previous 2 loan statements for Nov. 07 sent by you
  did not have either of these amounts on them. Also, how can late
  charges and fees be greater than the payment amount? Anytime in
  the previous 9 years, late charges have always been $106.03, but
  now you magically increase them to $2,853.00, like you magically
  made an $80,219.63 escrow appear.

It is apparent that World Savings/Wachovia is having accounting
issues reinstating my loan after accepting $106,000 dollars.  I am
once again requesting a complete and accurate accounting of my loan.
I have attempted to make my Nov. 07 payment in the correct amount of
$2,120.59 and you have refused to accept my payment. You are in
breach of our loan agreement and must immediately rectify your
accounting issues. If you need my assistance, I will help you with

your accounting in regard to my loan agreement. This must be fixed
immediately.

I would greatly appreciate these questions being answered
immediately, the documentation corrected to reflect the reinstated
terms of my loan agreement, and the acceptance of the contractually
specified loan payment for November in the amount of $2,120.59."

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

November 27, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

Today, November 27, 2007, I received a loan statement dated
11/20/07 for the December 1, 2007 payment for $14,182.97. Over-the-
top would be an understatement for the amount of frustration that I
am feeling regarding World Savings/Wachovia's handling of my loan
reinstatement, along with the blatant disregard for accurate
accounting and documentation.  This is my third letter since my loan
was reinstated and brought current the first of October 2007, via a
$106,000 payment. I have requested numerous times both in writing and
over the phone for a complete and accurate accounting of my loan. I
have repeatedly been told that it is being looked into, but nothing
occurs. You have refused to accept my November 2007 payment for the
amount of $2,120.59 and now have refused to accept my December 2007
payment of $2,120.59. As a result of your refusal to accept my
payments, you are in breach of our loan agreement and must
immediately rectify your accounting issues.
    On November 20, 2007, I received a refund check of $61.00 from
World Savings/Wachovia for the overpayment of my loan reinstatement
amount. I paid $106,000 rather than $105,440.15, because I figured
there would be a few more days' interest charged and I wanted to make
sure that everything was paid and current. My letter dated Oct. 29,
2007, pointed out that I overpaid and you subsequently sent me this
refund for $61.00, so obviously you have been receiving my letters
and have responded to the overpayment, but not to the accounting, the
payment demand errors, and the magically appearing escrow numbers. It
is unreasonable to expect anyone to pay amounts demanded without
accurate accounting or explanations as to the discrepancies.
Also, if these unreasonable amounts were actually correct and owed,
then why would you send me a refund?
    I have repeatedly attempted to make the Nov. 2007 loan payment
for $2,120.59 according to my original loan contract, and World
Savings/Wachovia would not accept the payment. Instead, I was told
that I had to pay $8,789.09. World Savings/Wachovia was repeatedly
told about their inconsistent statement since my loan was brought
current. Again, I was told about the World Savings/Wachovia
transition, and they would have to look into it. The only amount they
would accept was $8,789.09. I knew my Nov. 2007 loan payment should

be $2,120.59, as my original loan contract provided, because the October loan payment was $2,561.12, which included the final $440.53 escrow amount from the reinstatement. I also reminded World Savings/Wachovia that I was waiting on answers regarding the appearance of an escrow balance. I informed them that it was imperative this be resolved because their documentation error was increasing my payments beginning December 1, 2007 by $6,648.26 to a total payment of $8,768.85, which would be a problem for me to pay.

I would greatly appreciate these questions being answered immediately, the documentation corrected to reflect the reinstated terms of my loan agreement, and the acceptance of the contractually specified loan payment for November in the amount of $2,120.59.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

October 29, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

On October 18, 2007, I received from World Savings a Loan History Statement, which reflected the payment of $106,000.00 from the Loan Reinstatement.  The loan history statement is not very clear and has numerous "misc application pay" amounts being deducted. Also, at the beginning of the statement are 2 line items dated 3/30 and titled "Reversal".  One is for -55,568.26 and the other is for -15,861.51. This statement is showing a -80,660.16 at the bottom of the Escrow column. This makes absolutely no sense at all.  I am wondering if this -55,568.26 and -15,861.51 = -71,429.77 has anything to do with the Annual Escrow Account Disclosure Statement I received on Oct. 15, 2007, increasing my payment in December 2007, for which World Savings told me was an error and would be corrected.

I have called World Savings several times and no one can explain these items and the general consensus is that it is an error from the Wachovia transition and will be corrected.  Please provide me with some documentation as to what these amounts are.

Today, Oct. 29, 2007, I received a loan statement from World Savings dated Oct. 18, 2007 providing 2 payment options for the November 1, 2007 payment.  Option 1 says to pay $8,789.09 or Option 2 says to pay $11,248.67 a 15 year plan.  In the Transaction Activity section of the statement reflects an escrow balance of -80,219.63, for the first time ever.  What is going on here?  I have called World Savings every week this month with questions about documentation that I am being sent and am repeatedly told it is in error.  Now an escrow amount of $-80,219.63 is magically showing up on my statements, when is the corrections going to happen. I am a single Mom with Lupus and stress aggravates my medical condition. I need this resolved ASAP, because less than a month ago, I paid World Savings $106,000.00 to reinstate my loan to current.  The $106,000.00 is actually more than World Savings said I had to pay. Less than a week after I reinstated the loan and paid $106,000, there are all these errors in documentation and no one seems to be able to provide one accurate, truthful answer. I still am not sure what to pay in November for the monthly payment.  You have told me one amount, however, paperwork sent by World Savings with unexplained numbers says something entirely different.

I would greatly appreciate these questions being answered immediately and the documentation corrected to reflect the reinstated terms of my loan agreement.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

October 20, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

　　Over the past couple of weeks, I have received multiple conflicting account statements and payment demands on my reinstated loan.  Each time I immediately called the phone number on each statement to inquire about the inconsistencies and was told to ignore the statements that my reinstated payment of $106,000 paid on September 28, 2007, was still being processed or applied. Despite the assurances from your office, I am still a bit concerned, since I have not seen any statement or document to date reflecting the terms of my reinstated loan with a payment of $2,120.59 and no escrow.

　　On October 16, 2007, I sent a letter regarding the conflicting documents sent to me over the past 22 days after paying $106,000 to reinstate my loan, and the detailed responses of each representative to my questions. Also, I requested a complete and accurate accounting of my loan.

　　Even though your office has repeatedly told me that my loan payment due on November 1, 2007 will be my reinstated loan payment of $2,120.59. I would like to see documentation to reflect the terms of my reinstated loan agreement, because the multiple conflicting accounting and demands for payment are in violation of that loan agreement.

Sincerely,

Tina S. Alexander
Loan Number: 0010585743

Tina S. Alexander
12318 Mossycup Dr.
Houston, TX 77024

October 16, 2007

World Savings
4101 Wiseman Boulevard
San Antonio, TX  78251-4201

Re: Reinstated Loan Number: 0010585743

To Whom It May Concern:

On September 28, 2007, I made a payment of $106,000.00 to completely reinstate my loan with World Savings prior to the property being foreclosed. I had several conversations with Mr. Mike Lara prior to making the payment, to ensure that this $106,000.00 was the total required to completely resolve all issues with my loan.  He assured me that the reinstatement quote dated September 13, 2007, for $105,440.15 was the total amount due to resolve all issues and reinstate my loan in full.

On October 8, 2007, I received a letter from World Savings dated October 3, 2007, informing me that they received and processed the funds to reinstate my loan.  Also, the October 1, 2007 monthly payment was due for $2,561.12, of which, I was provided with a statement reflecting that amount.

On October 12, 2007, I called World Savings and made the October 2007 payment in the amount of $2,561.12 as the statement reflected was due, and received a confirmation letter from World Savings for that payment.  I was told that my payment would return to the loan agreement amount of $2,120.59, next month, because the escrow year to date disbursements of $5,286.33 and 860.38 reflected on my statements would be paid in full from the $105,440.15 reinstatement payment made on September 28, 2007.

On October 15, 2007, I received an Annual Escrow Account Disclosure Statement from World Savings, stating that my monthly loan payment would go from $2,561.12 per month to $8,768.85 per month beginning December 1, 2007.  The escrow payment previously paid of $440.53, which was supposedly cleared with the reinstatement payment, increased to $6,648.26 per month. This statement reflects that I have an escrow shortage of $79,779.10.  I immediately called World Savings and was told that this escrow disclosure statement is incorrect. This balance had never been reflected on any previous statements and World Savings was in the process of transitioning to Wachovia and some funds were most likely applied incorrectly.

Then on October 16, 2007, I received a loan statement dated October 6, 2007 from World Savings for the November 1, 2007 payment, reflecting a payment due for $11,350.21.  This statement reflected an $8,789.09 past due amount, which included the October 1 payment plus

$6,227.97 in fees due.  I immediately called World Savings again to inquire about this statement because I had paid the Oct.1 payment and received confirmation from World Savings. In addition, I wanted to know what the $6,227.97 in fees were because that amount was included in the loan reinstatement detail and I was told that it was clearing the escrow disbursements of $6,147.71 recorded on my monthly loan statements, which would then reset my loan agreement to the original payment of $2,120.59. I was told to ignore the statement, because World Savings was still applying all the funds from the reinstatement, and that I would be receiving an accounting of the applied funds from the reinstatement, which would clear up all of these issues.

Please provide me with a complete and accurate accounting of my loan number 0010585743 and an explanation of all discrepancies outlined above.


Sincerely,

Tina S Alexander

Tina S. Alexander
Loan Number: 0010585743

# Exhibit "29"

Cause No. 2008-30835

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP, HOUSTON | § | |
| HOUSTON, TX 77024 | § | 164TH JUDICIAL DISTRICT |
| | § | |

NOTICE TO:  TINA S. ALEXANDER
          12318 Mossycup, Houston
          Houston, TX 77024

An Application has been filed by WACHOVIA MORTGAGE, FSB, F.K.A. WORLD SAVINGS BANK, its successors and/or assigns, as Applicant, on May 19, 2008, in a proceeding described as follows:

Cause No. 2008-30835; In re: Order for Foreclosure Concerning TINA S. ALEXANDER (collectively, "Respondent") and 12318 Mossycup, Houston, TX 77024 ("Subject Property").

The attached application alleges that you, the Respondent, are in default under a security instrument creating a lien on your homestead under Tex. Const. art. XVI, § 50(a)(6). This application is now pending in this court.

Applicant seeks a court order, as required by Tex. Const. art. XVI, § 50(a)(6)(D), to allow it to sell at public auction the Subject Property as more fully described in the attached application under the security instrument and Tex. Prop. Code § 51.002.

You may employ an attorney. If you or your attorney do not file a written response with t he Clerk of the Court at 201 Caroline, Houston, TX 77002  on or before 10:00 a.m. on Monday, July 14, 2008, calculated as the Monday next after 38 days from date this Notice is sent, an order authorizing a foreclosure sale may be signed. If the Court grants the application, the foreclosure sale will be conducted under the security instrument and Tex Prop. Code § 51.002.

You may file a response setting out as many matters, whether of law or fact, as you consider may be necessary and pertinent to contest the application. If a response is filed, the Court will hold a hearing at the request of the Applicant or Respondent.

**In your response to this Application, you must provide your mailing address.** In addition, you must send a copy of your response to Daniel R. Gamez, Pite Duncan, LLP, 525 East

- 1 -

Main Street, El Cajon, CA 92020.

**THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR SOLELY FROM CERTAIN REAL PROPERTY AND NOT FROM YOU PERSONALLY, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

ISSUED

By: Daniel R. Gamez
State Bar No. 24034451
Pite Duncan, LLP
525 East Main Street
El Cajon, CA 92020
(619) 590-1300 telephone
(619) 590-1385 telecopier
Dgamez@piteduncan.com
Attorney for Applicant
WACHOVIA MORTGAGE, FSB,
F.K.A. WORLD SAVINGS BANK, its
successors and/or assigns

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Notice with a copy of the Application was sent via certified and regular mail to the defendants listed below on the ___5th___ day of ___June___, 2008.

Tina S. Alexander
12318 Mossycup
Houston, TX 77024

C/M R.R.R 7008 0150 0000 5139 9752
AND REGULAR U.S. MAIL

Daniel R. Gamez

- 2 -

Cause No. _____

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP, HOUSTON | § | |
| HOUSTON, TX 77024 | § | _____ JUDICIAL DISTRICT |
| | § | |

## APPLICATION FOR EXPEDITED FORECLOSURE PROCEEDING PURSUANT TO RULE 736 OF THE TEXAS RULES OF CIVIL PROCEDURE

To the Honorable Judge of Said Court:

Comes now, WACHOVIA MORTGAGE, FSB, F.K.A. WORLD SAVINGS BANK, its

successors and/or assigns ("Applicant"), and files this, its verified Application for Expedited

Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure. In support of

this Application, Applicant would show as follows:

1.    TINA S. ALEXANDER ("Respondent") is the party who, according to the records

of Applicant, the holder of the debt, is obligated to pay the debt secured by the property (as

hereinafter defined).

2.    The property which is the subject of this Application is described as follows:

LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION
TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE
MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE
MAP RECORDS OF HARRIS COUNTY, TEXAS

which has a mailing address of 12318 Mossycup, Houston, TX 77024 ("Subject Property").

3.    The Subject Property is encumbered by a Texas Home Equity Security Instrument

("Security Instrument") dated September 15, 1998, to Gary Bradley, as Trustee, recorded under

- 1 -

County Clerk File No. T280637 in the Official Real Property Records of Harris County, Texas, and was re-recorded on January 25, 2006 as Instrument No. Z049229, which secures the payment of that certain Texas Home Equity Note ("Note") dated September 15, 1998, in the original principal sum of $296,000.00, executed by Tina S. Alexander, an unmarried woman, bearing interest and being payable as therein set out to the order of WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK. True and correct copies of the Note and Security Instrument are attached hereto as **Exhibits A and B**, respectively, and are incorporated herein by reference.

4.     In further support of this Application, Applicant's representative swears by the sworn Verification attached as **Exhibit C** to this Application that upon the representative's information and belief, which is based upon the review of Applicant's business records, would show the following facts as would be admissible in evidence:

a.     A balance still exists on this debt. The outstanding principal balance owing is $263,057.18. Additionally, late charges and interest have been accruing on the debt because of the default by Respondent.

b.     The debt on which this Application is based is secured by a lien created under Tex. Const. art. XVI, § 50(a)(6) which encumbers the Subject Property.

c.     A default has occurred in the payment of the above-referenced debt and said default still exists. A default exists under the Deed of Trust in that Respondent failed to pay the monthly payment which became due on October 1, 2007, and every monthly installment that has become due since that date.

d.     Applicant and/or its attorney has provided the requisite notice of default/notice of intent to accelerate and notice of acceleration to Respondent. Said notices were given by letters

- 2 -

and mailed to Respondent at the last known mailing address of Respondent as reflected in the records of Applicant. The notice of default/right to cure/notice of intent to accelerate and notice of acceleration were given in accordance with Texas Property Code § 51.002, the Deed of Trust and applicable Texas law.

WHEREFORE, PREMISES CONSIDERED, Applicant WACHOVIA MORTGAGE, FSB, F.K.A. WORLD SAVINGS BANK, its successors and/or assigns, prays that upon final hearing, the Court enter an order allowing Applicant to proceed with foreclosure and sell the Subject Property described herein in accordance with Texas Property Code § 51.002, and for all such other and further relief as may be justly entitled.

Respectfully submitted,

By: _____

Daniel R. Gamez
State Bar No. 24034451
Pite Duncan, LLP
525 East Main Street
El Cajon, CA 92020
(619) 590-1300 telephone
(619) 590-1385 telecopier
Dgamez@piteduncan.com
Attorney for Applicant
WACHOVIA   MORTGAGE,   FSB,
F.K.A. WORLD SAVINGS BANK, its
successors and/or assigns

- 3 -

# EXHIBIT A

WORLD SAVINGS BANK,
A FEDERAL SAVINGS BANK

# NOTE

## TEXAS EQUITY FIXED RATE - FIRST LIEN

Loan Amount: **$296,000.00**                    Loan Number: 0010585743

Property Address:                                    Date: **SEPTEMBER 15, 1998**
**12318 MOSSYCUP**
**HOUSTON, TX  77024**

**1.  BORROWER'S PROMISE TO PAY**
        In return for a loan that I have received, I promise to pay U.S.      **$296,000.00,**
(this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
**WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK,**
                ITS SUCCESSORS AND/OR ASSIGNEES. I understand that the Lender may
transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
        Interest will be charged on unpaid principal until the full amount of principal has been paid.
I will pay interest at a yearly rate of  **7.750%.**
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 6(B) of this Note.

**3.  PAYMENTS**
        **(A) Time and Place of Payments**
        I will pay principal and interest by making payments every month.
        I will make my monthly payments on the      **1ST**      day of each month beginning on
**NOVEMBER 01, 1998.**        I will make these payments every month until I have paid all
of the principal and interest and any other charges described below that I may owe under
this Note. My monthly payments will be applied to interest before principal. If, on
**OCTOBER 01, 2028,**        I still owe amounts under this Note, I will pay those amounts
in full on that date, which is called the "maturity date."
        I will make my monthly payments at **1901 HARRISON STREET, OAKLAND,**
**CALIFORNIA  94612* * * * * * * * * * * * * * * * *  or at a different place**
if required by the Note Holder.

        **(B) Amount of Monthly Payments**
        My monthly payments will be in the amount of U.S.      **$2,120.59.**

**4.  BORROWER'S RIGHT TO PREPAY**
        I have the right to make payments of principal at any time before they are due. A
payment of principal only is known as a "prepayment." When I make a prepayment, I will tell
the Note Holder in writing that I am doing so.
        I may make a full prepayment or partial prepayments without paying any prepayment
charge. The Note Holder will use all of my prepayments to reduce the amount of principal
that I owe under this Note. If I make a partial prepayment, there will be no changes in the due
date or in the amount of my monthly payment unless the Note Holder agrees in writing to
those changes.

**5.  LOAN CHARGES AND LEGAL LIMITS**
        If a law, which applies to this loan and which sets maximum loan charges (including,
without limitation, Section 50(a)(6)(E), Article XVI of the Texas Constitution), is finally
interpreted so that the interest or other loan charges collected or to be collected in
connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any
sums already collected from me which exceeded permitted limits will be refunded to me. The
Note Holder may choose to make this refund by reducing the principal I owe under this Note
or by making a direct payment to me. My acceptance of any such refund will constitute a
waiver of any right of action I might have arising out of such overcharge.

LENDER'S USE ONLY
* 0 0 1 *

It is the express intention of the Note Holder and me to structure the extension of credit evidenced by this Note to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument, or any other related loan document transcends the limit of validity prescribed by applicable law, then any such promise, payment, obligation, or provision shall be reduced to the limit of such validity, or eliminated if necessary for compliance with such law, and such document(s) shall be reformed automatically without the necessity of the execution of any new amendment or new document.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of F I F T E E N   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing the extension of credit evidenced by this Note.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify the Note Holder of failure by the Note Holder to comply with the Note Holder's obligations under, or noncompliance with, any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

This Note and the lien securing same are authorized by the Texas Constitution, Article XVI, Section 50(a)(6). This Note is given without personal liability against each owner of the Property and the spouse of each owner, unless the owner or spouse obtained this extension of credit by actual fraud. If this extension of credit is obtained by actual fraud of any owner or the spouse of any owner, the Note Holder may enforce its rights under this Note against each person who signs this Note and each person who signs this Note is fully and personally liable for all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note.

**TEXAS FIXED RATE NOTE—Single Family**

SD2438 (02.93.98/1-98) C438                              Page 2 of 4

**FORM 3244 12/83**

TX

If this extension of credit is not obtained by actual fraud, the Note Holder may enforce its rights under this Note and the Security Instrument only against the Property and Note Holder shall not seek or obtain a judgment for any deficiency in relation to the amounts owed under this Note against any person who signs this Note who is the owner of the Property or a spouse of an owner of the Property.

## 9. WAIVERS

I and any other person who has obligations under this Note waive notice of intention to accelerate, except as provided in Section 6(C) above, and the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE – ACCELERATION

In addition to the protections given to the Note Holder under this Note, a "Security Instrument," dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**The Loan is Not Assumable.** The extension of credit evidenced by the Note may not be assumed by another Person.

## 11. CLERICAL ERRORS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such error.

## 12. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purpose.

**13.   NO ORAL AGREEMENTS**

THIS NOTE, THE SECURITY INSTRUMENT AND OTHER DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED .

BORROWER(S):

_____ (Seal)
TINA S. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Mailing Address:  12318 MOSSYCUP
                  HOUSTON, TX  77024

TEXAS FIXED RATE NOTE — Single Family                    FORM 3244 12/83
SD243D1 (02.03.98/1-98) C43D              Page 4 of 4                    TX

# EXHIBIT B



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
0010565740

II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale limited as provided in Paragraph 34 below, subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in the Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust, and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i) pay all amounts owed to Lender under the Note, including any changes to the Note made with the written consent of Lender;

(ii) pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii) keep all of my other promises and agreements under this Security Instrument, the Note and any changes to the Note made with the written consent of Lender.

III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i) The property which is located at 12918 MOSSYCUP, HOUSTON, TX 77024. The legal description of this property is attached as Exhibit "A" which is made a part of this Security Instrument. This property is called the "Described Property";

(ii) All buildings and other improvements that are located on the Described Property;

(iii) All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Described Property;

(iv) All rents or royalties and other income from the Described Property;

(v) All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi) All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii) All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii) All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix) All replacements of or additions to the property described in subsections (ii) through (viii) of this Section;

(x) All casualty and condemnation proceeds relating to the Described Property; and

(xi) All of the amounts that I pay to Lender under Paragraph 2 below.

IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:        JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

Title Data, Inc. LS        TDI17487        HA 20490239.002

COVENANTS

I promise and I agree with Lender as follows:

**1.   BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Note and any late charges due under the Note.

**2.   PAYMENTS FOR TAXES AND INSURANCE**

**(A) Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

**(B) Escrow Account**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. (RESPA), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 24, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 15 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
GUS T. LIEN

0010948748

3.   APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraph 1 and 2 above in the following order and for the following purposes:

First, to pay any advances due to Lender under this Security Instrument;
Second, to pay the amounts due to Lender under Paragraph 2 above;
Third, to pay interest due under the Note;
Fourth, to pay principal due under the Note;
Last, to pay late charges due under the Note.

4.   BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgage Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Note and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine and in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

Page 4

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:       JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____   Deputy
CUC T. UEM

0010880748

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY

ATTEST:  JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____  Deputy
GUO-T. LIEN

0010466742

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

(A) Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

(B) Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 24 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Note and under this Security Instrument.

**11. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.

**12. MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law limiting, without limitation, Article XVI, Section 50(a)(6) of the Texas Constitution which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 12215 MOSSYCUP , HOUSTON, TX 77024 .

A notice will be given to me at an alternative address if I give Lender a notice of my alternative address. I may designate only one mailing address at a time for notification purposes. Any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section 1 (C) above, entitled, "Definitions of Words Used in this Deed of Trust," unless Lender gives me notice of a different address. However, if the purpose of the notice is to notify Lender of failure by Borrower to comply with Lender's obligations, under, or noncompliance with, any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

SMART TEXAS HELOC 2000                    DEED OF TRUST-TEXAS EQUITY                    73
                                          Page 8

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
        JAN 19 2005
ATTEST:
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
        DAO T. LIEN

Title Data Inc. LS                    (D)17491        ha 20492(B (00)



**15.   GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Security Instrument or the Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Note.

**16.   BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Note and of this Security Instrument.

**17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If the Property is no longer my homestead, and if Lender requires immediate payment in full or I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask if Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) ask for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 26, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of r/reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.   INJURY TO PROPERTY; LENDER'S RIGHTS**

I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. Upon the request of Lender, I will assign those rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds for injury or damage to the Property or to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights.

**19.   CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Note or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such errors and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.   LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:   JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____   Deputy
OUC-T. LIEN

00103897.43

**21.   WAIVER OF STATUTE OF LIMITATIONS**
I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or the Note.

**22.   CAPTIONS**
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.   MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(a)   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(b)   The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; and (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(c)   If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(d)   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

Page 8

---

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T. LIEN

Title Data, Inc. LS          TDI17-497          HA 2049.229 (10)

0010585-749 

**25.   NONRECOURSE**

Unless the extension of credit evidenced by the Note was obtained by my or my spouse's actual fraud, Lender shall have no recourse against me or my spouse and Lender may enforce my obligations hereunder and under the Note solely by enforcement of its rights against the Property. If the extension of credit was obtained by my or my spouse's actual fraud, Lender may obtain a personal judgment against me and/or my spouse, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting my and my spouse's other assets to satisfaction of the debt.

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THIS PROPERTY IS SOLD OR TRANSFERRED**

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of this Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

The Loan is Not Assumable. The extension of credit evidenced by the Note may not be assumed by another Person.

**27.   SUBSTITUTION OF TRUSTEE**

Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder, without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**28.   PROPERTY IS HOMESTEAD; ACKNOWLEDGMENTS CONCERNING DEBTS**

I represent that the Property is my homestead notwithstanding any voluntary designation of homestead which I may have filed to the contrary. To the extent that the Property is designated for agricultural use under Texas laws governing property taxes, the Property is used primarily for the production of milk.

In the future event that another property becomes my homestead, I understand and agree that the Property will no longer be my homestead and that the extension of credit secured by the lien of this Security Instrument will no longer be a loan of the type described by Section 50(a)(6), Article XVI of the Texas Constitution.

If any portion of the proceeds of the loan secured by the lien of this Security Instrument were used to repayment of any existing indebtedness to Lender not secured by a valid lien on the Property, I acknowledge that such repayment was not required by Lender but rather was made at my voluntary direction and request.

The indebtedness evidenced by the Note is the only indebtedness secured by the Property, as of the date of this Security Instrument unless the other indebtedness was incurred by me for one or more of the purposes allowed under and pursuant to Article XVI, Section 50(a)(1)-(5) of the Texas Constitution.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:   JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____   Deputy
CUC T. LIEN

0010685748

**29.   RELEASE**
Within a reasonable time after termination and full payment of all Sums Secured, Lender shall provide to me all the cancelled Note and to a release of the lien of this Security Instrument in recordable form or a copy of an endorsement and assignment of the lien to another lender referencing the indebtedness evidenced by the Note. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.

**30.   STATEMENT OF OBLIGATION**
To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Note.

**31.   SUBROGATION**
If any of the proceeds of the Note have been used to pay outstanding liens against the Property, I have requested Lender to advance the proceeds and I have represented that the liens are valid and are due. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, even if those liens and debts are acquired by Lender by assignment or by release by the holder upon payment.

**32.   SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CO-SIGNERS**
The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and me, subject to the provisions of Paragraph 28. My covenants and agreements shall be joint and several, subject to the provisions of Paragraph 28. Any person who co-signs this Security Instrument but does not execute the Note is) is co-signing this Security Instrument only to grant and convey that person's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution providing for execution hereof, in order to establish a valid lien, by the spouse of each owner of the Property; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and I may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

**33.   OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for the loan. I have stated and confirm that (A) the Property is my personal and primary residence; and (B) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded. If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Note and this Security Instrument.

THIS SPACE INTENTIONALLY LEFT BLANK.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 1 9 2005
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T. LESS

00106-08743

34.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if I: (a) do not pay the full amount of each monthly payment on the date it is due; or (b) I fail to perform any of my promises or agreements under the terms of this Security Instrument; or (c) any statement made in my application for the loan was materially false or misleading or (d) any statement in my application for the loan was materially false or misleading by reason of my omission of certain facts; or (e) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all Sums Secured as described below.

Lender shall give me notice prior to acceleration (informing my Breach of Duty but not prior to acceleration under Paragraph 28 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the Sums Secured and commencement of Lender's remedies hereunder. The notice shall further inform me of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of mine to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all Sums Secured without further demand and may, at Trustee, upon written request of Lender may, institute proceedings to foreclose the lien of this Security Instrument either by judicial foreclosure or by court order in accordance with the rules of civil procedure for expedited foreclosure proceedings promulgated from time to time by the Texas Supreme Court pursuant to the provisions of Article XVI, Section 50(a) of the Texas Constitution or, to the extent such promulgated rules or a court order permit, Lender may invoke the power of sale. If for any reason the provisions of Article XVI, Section 50(a)(6) and 50(a)(8) of the Texas Constitution are invalid, or if the lien of this Security Instrument shall be found not in compliance with Section 50(a)(6) of Article XVI of the Texas Constitution then, in either such event, any portion of the Indebtedness secured by this Security Instrument that refinanced a debt authorized by the provisions of Article XVI, Section 50(a)(2)-(8) of the Texas Constitution shall remain subject to the lien of this Security Instrument, and Lender may require immediate payment in full of all Sums Secured without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 34, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale as may be permitted pursuant to the above provisions or as may be permitted by court order or the rules promulgated by the Texas Supreme Court, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to me in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 9 a.m. and 4 p.m. on the first Tuesday of the month, I authorize Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. I understand that the power of sale is not a revocation of judgment or a power of attorney to contest judgment or to appear for me in a judicial proceeding.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. I covenant and agree to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all Sums Secured; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 34, I or any person holding possession of the Property through me shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, I or such person shall be a tenant of sufferance and may be removed by writ of possession.

35.    WAIVER OF NOTICE OF INTENTION TO ACCELERATE

I waive the right to notice of intention to require immediate payment in full of all Sums Secured except as provided in Paragraph 34.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:    JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

CUC T. LIEN                    Deputy

00109.05.743

**38.   HOME EQUITY LENDING COMPLIANCE**

I and Lender intend to conform strictly to Section 50(a)(6), Article XVI of the Texas Constitution. It shall be a precondition to the exercise by me of any right or remedy against Lender that I advise Lender, in writing, of any alleged failure by Lender to comply with its obligations under Section 50(a)(6), Article XVI of the Texas Constitution with respect to the loan evidenced by the Note and that Lender be given a reasonable time to correct or cure any such failure. I will reasonably cooperate in Lender's efforts to comply with the requirements of Section 50(a)(6), Article XVI of the Texas Constitution. Only after Lender has received my written notice, has had a reasonable time to comply, and has failed to comply, shall all principal and interest be forfeited by Lender if required by Section 50(a)(6)(x) Article XVI of the Texas Constitution.

If, from any circumstances whatsoever, any promise, payment, obligation, or provision of the Note, this Security Instrument, or any other related loan document transcends the limit of validity prescribed by applicable law, then any such promise, payment, obligation, or provision shall be reduced to the limit of such validity, or stricken if necessary for compliance with such law, and such document(s) shall be reformed automatically without the necessity of the execution of any new amendment or new document. Any refusal of payment will be made in accordance with Paragraph 12.

Lender's right-to-comply as provided in this Paragraph 38 shall survive the satisfaction of Borrower's payment obligations under the Note and this Security Instrument. The provisions of this Paragraph 38 shall supersede any inconsistent provision of the Note or this Security Instrument.

THIS SPACE INTENTIONALLY LEFT BLANK.

Page 15

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:   JAN 1 9 2006
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
GUC F. LIEN

0010488743

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

YOU MUST SIGN THIS DOCUMENT AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWERS:

_____ (Seal)
TINA S. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL - NOTARY ACKNOWLEDGEMENT

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

SINGLE ACKNOWLEDGEMENT

STATE OF   TEXAS        )
                       )
COUNTY OF  HARRIS      )

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

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared TINA S. ALEXANDER

known to me to be the person(s) whose name(s) subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 16 day of September , A.D. 1998

(L.S.)                          _____
                                Notary Public in and for HARRIS        County,
                                TEXAS

SEAL                            _____
                                Notary Name

                                _____
                                Notary Expiration Date

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY

ATTEST: JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____          Deputy
DUC T. LIEN

Tina Cobb Inv LS        TO#17497    HA 2045028 v14

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

## WORLD SAVINGS

### E X H I B I T  "A"
### LEGAL DESCRIPTION

LOAN NO. _____ 0010986749 _____

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF HARRIS
STATE OF TEXAS * * * * * * * * , DESCRIBED AS FOLLOWS:

TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: **JAN 1 9 2006**
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
C___, CUC Y. LEDY.

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS
CENTRAL PROCESSING CENTER
CLOSING DEPARTMENT
P.O. BOX 859548
SAN ANTONIO, TX 78265-9548



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

FOR RECORDER'S USE ONLY

## PLANNED UNIT DEVELOPMENT RIDER

LOAN NO. 0010585743

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 15TH day of SEPTEMBER, 1998, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK, * * * * * * * * * * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR ASSIGNEES, (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
      12818 MOSSYCUP
      HOUSTON, TX  77024
          [ Property Address ]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in EXHIBIT "A" attached incorporated herein (the "Declaration"). The Property is a part of a planned unit development known as

    FROSTWOOD
      [ Name of Planned Unit Development ]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

MULTISTATE PUD RIDER — Single Family — FNMA/FHLMC UNIFORM INSTRUMENT
FORM 3150 9/90
SD3MDR1 (97.10.92/1-98) D40A         Page 1         ALL STATES EXCEPT CO, DE, FL, IL,
                                                     MS, NE, SAN, NC, NJ, SD, WA, WI

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:  JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____  Deputy
      CUC T. LIEN



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

0010585749

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

MULTISTATE PUD RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT     FORM 3150 9/90

BII3105 B7,12.3635-80),0480                Page 2            ALL STATES EXCEPT CO, OR, FL, SC, NY, WA

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST:     JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____  Deputy
CUO T. LIEN

Title Data nn  s8        FD117-87       HA / 452 26 017

0010585742

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

THIS SPACE INTENTIONALLY LEFT BLANK.

MULTISTATE PUD RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT      FORM 3150 9/90
5034SC (97.75.98/3/RN) 0604                  Page 2          ALL STATES EXCEPT CO, FL, MI, MO, SFA

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL,
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY.

ATTEST:   JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas


                              Deputy
CUC T. LIEN

0010595743

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
TINA S. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Mailing Address:  12318 MOSSYCUP
HOUSTON, TX  77024

ATTACH INDIVIDUAL   NOTARY ACKNOWLEDGEMENT

MULTISTATE PUD RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT        FORM 3150 9/90
2094201 197.1285/2-85)  D401                Page 4 of 4            ALL STATES EXCEPT CO, DE, FL, MA, MI, MN, ND, PA, WA

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY.

ATTEST: **JAN 1 9 2006**
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T. LIEN

Title Data, Inc. TS      TDI17497      HA 2040229.019

This document is being re-recorded to include the "Exhibit A", legal description listed below that was missing from the original Deed of Trust that was recorded on September 22, 1998 in Harris County Clerk's File No. T280637.

"EXHIBIT A"

Lot Fourteen (14), in Block Thirteen (13), of FROSTWOOD, SECTION TWO (2), an addition in Harris County, Texas according to the map or plat thereof recorded in Volume 77, Page 52 of the Map Records of Harris County



RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

JAN 2 5 2006

Beverly B. Kaufman
COUNTY CLERK
HARRIS COUNTY, TEXAS

Return To:   Stewart Title Houston Division
             Underwriting Department
             4700 W. Sam Houston Pkwy. #100
             Houston, TX 77041
             Attn: Victor Davis
             TISI 5033.0035553-06

Title Data, Inc. LS        TDI17497      HA Z049229.021

# EXHIBIT C

## **VERIFICATION**

STATE OF _____ _MN_____
COUNTY OF ___ _Dakota_____

BEFORE ME, the undersigned Notary Public, on this day personally appeared

_Craig Hanlon_____, on behalf of WACHOVIA MORTGAGE, FSB, F.K.A.

WORLD SAVINGS BANK, its successors and/or assigns, who being by me duly sworn, on his/her

oath deposed and said that he/she has read the above and foregoing Application for Expedited

Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure regarding TINA

S. ALEXANDER and 12318 Mossycup, Houston, TX 77024, and that every statement contained

therein is within his/her personal knowledge and is true and correct.

> WACHOVIA MORTGAGE, FSB, F.K.A.
> WORLD SAVINGS BANK
>
> By: _Craig Hanlon_
> Its:  **Attorney in Fact**

SUBSCRIBED AND SWORN TO BEFORE ME on _____ _4/29/08_____,

by _Craig Hanlon_____ of WACHOVIA MORTGAGE, FSB, F.K.A. WORLD

SAVINGS BANK, its successors and/or assigns to certify which witness my hand and seal of office.

NOTARY PUBLIC, STATE OF __ _MN_

MARK BISCHOF
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2013

2 0 0 8 - 3 0 8 3 5

Cause No. _____

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP, HOUSTON | § | |
| HOUSTON, TX 77024 | § | ___ JUDICIAL DISTRICT |
| | § | |

## CERTIFICATE OF LAST KNOWN ADDRESS

| | |
|---|---|
| THE STATE OF CALIFORNIA | § |
| | § |
| COUNTY OF SAN DIEGO | § |

BEFORE ME, the undersigned authority, on this day personally appeared Daniel R. Gamez, attorney of record for Plaintiff herein, who, after first being duly sworn, deposed and stated as follows:

I, Daniel R. Gamez, attorney of record for Plaintiff herein, certify that the last known mailing address for Respondent(s), Tina S. Alexander, is at her place of residence: 12318 Mossycup, Houston, TX 77024.

_____
Daniel R. Gamez

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this _13th_ day of
_____, A.D., 2008.

_____
Notary Public, State of California
My commission expires: _Jan 29, 2012_

KELLIE K. OWEN
Commission # 1788179
Notary Public - California
San Diego County
My Comm. Expires Jan 29, 2012

- 4 -

2008-28685

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP, HOUSTON | § | |
| HOUSTON, TX 77024 | § | JUDICIAL DISTRICT |
| | § | |

## PLAINTIFF'S SERVICEMEMBERS' AFFIDAVIT

| | |
|---|---|
| THE STATE OF CALIFORNIA | § |
| COUNTY OF SAN DIEGO | § |

BEFORE ME, the undersigned notary, on this day personally appeared Daniel R. Gamez, a person whose identity is known to me, and after administration of the oath, stated as follows:

"My name is Daniel R. Gamez. I am above the age of twenty-one (21) years, have never been convicted of a felony or a crime of moral turpitude and am competent to make this Affidavit. I am capable of making this Affidavit. I understand that if I make or use a military status affidavit, knowing it to be false, I may be fined, imprisoned for not more than one year, or both. See 50 U.S.C. App. Section 521(c). The facts stated in this Affidavit are within my personal knowledge and are true and correct.:

Defendants are not in the military. In support, offer the following facts to show Defendants are not in the military: Per the Department of Defense Manpower Data Center Military Status Report, attached hereto as **Exhibit A**, and incorporated herein by reference.

❑ Plaintiff asks the court to appoint an attorney to represent the Defendant because:
    ❑ Plaintiff is unable to determine if the Defendant is in the military. The Servicemember's Civil Relief Act of 2003, 50 U.S.C App. Section 521, requires the trial court to appoint an attorney to represent Defendant before a judgment may be rendered against him/her.
    ❑ Defendant is in the military The Servicemember's Civil Relief Act of 2003, 50 U.S.C. App. Section 521, requires the court to appoint an attorney to represent Defendant before a judgment may be rendered against him/her.
    I understand that costs for the attorney ad litem may be assessed against the Plaintiff as costs of court unless otherwise ordered by the court. -

_____
Daniel R. Gamez

SWORN TO AND SUBSCRIBED before me by Daniel R. Gamez on this ___13th___ day of ___May___, A.D., _2008_.

_____
Notary Public, State of California
My commission expires: _Jan 29, 2012_

KELLIE K. OWEN
Commission # 1788179
Notary Public - California
San Diego County
My Comm. Expires Jan 29, 2012

- 5 -

# EXHIBIT A

Department of Defense Manpower Data Center                                    MAY-12-2008 11:27::



Military Status Report
Pursuant to the Servicemembers Civil Relief Act

| ◄ Last Name | First/Middle | Begin Date | Active Duty Status | Service/Agency |
|---|---|---|---|---|
| ALEXANDER | Tina S. | | Based on the information you have furnished, the DMDC does not possess any information indicating that the individual is currently on active duty. | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Military.

*Mary M. Snavely-Dixon*

---

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Servicemembers Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family membe friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's active duty status contacting that person's Military Service via the "defenselink.mil" URL provided below. If you have evidence the person is on active-duty and you fail to obtain this additional Military Service verification, provisions of the SCRA may be invoked against you.

If you obtain further information about the person ( e.g., an SSN, improved accuracy of DOB, a middle name), you c submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects current active duty status only. For historical information, please contact the Military Service SCRA points-of-contact.

See: http://www.defenselink.mil/faq/pis/PC09SLDR.html

WARNING: This certificate was provided based on a name and Social Security number (SSN) provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.

*Report ID:**RZANKEDVHJ***

# Exhibit "30"

**PITE DUNCAN LLP**

*San Diego*

Steven W. Pite *CA/NV/WA*
John D. Duncan *CA/TX/WA*
Peter J. Salmon *CA/ID/UT/WA*
David E. McAllister *AZ/CA/HI/OR/UT/WA*

Rochelle L. Stanford *AZ/CA/OR/WA*
Josephine E. Salmon *AK/AZ/CA/NV*
Laurel I. Handley *AK/AZ/CA/NV*
Daniel R. Gamez *CA/TX*
Eddie R. Jimenez *CA/NV/TX*
Susan L. Pelit *AK/CA/WA*
Douglas A. Toleno *AZ/CA*
Cuong M. Nguyen *CA/NV*
Casper J. Rankin *CA/OR*
Charles A. Correia *CA*
Melodie A. Whitson *CA*
Brian A. Paino *CA/TX/VA*
Christopher M. McDermott *CA*
Jillian A. Benbow *CA*
Thomas N. Abbott *CA*
Tracy D. Mabry *TX*
Drew A. Callahan *CA*
Natalie T. Nguyen *CA*
Caroline M. Robert *CA*
Genail M. Anderson *CA*
Ellen Cha *CA/MN*
Jose A. Garcia *CA*
Erin L. Laney *CA*
Angela M. Fontanini *CA*
Jacque A. Gruber *CA/NV*
John B. Acierno *CA*
William L. Partridge *CA*
Christopher L. Peterson *CA*
Katie L. Johnson *CA*

*Mailing*
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935

*Overnight*
4375 Jutland Drive, Suite 200
San Diego, CA 92117

Ph.: (858) 750-7600
Fax: (619) 590-1385

*Orange County*
Kerry W. Franich *CA/NV*
Elana J. Moeder *CA*
Bryan T. Brown *CO/TX*
Michael J. Fox *CA*

1820 E. First St., Ste. 420
Santa Ana, CA 92705
Ph: (714) 285-2633
Fax: (714) 285-2668

*Arizona Office*
Charles L. Firestein
Phoenix, AZ

*Hawaii Office*
David B. Rosen
Honolulu, HI

*Washington Office*
Seattle, WA

*Texas Office*
William P. Weaver, Jr.
San Antonio, TX

July 14, 2009

Loren Jackson
Harris County District Clerk
201 Caroline Street, 14th Floor
Houston, Texas 77002

Re:  Cause No. 2009-42370; WACHOVIA MORTGAGE, FSB, FKA WORLD SAVINGS BANK, FSB, its successors and/or assigns /TINA S. ALEXANDER; In the 157th Judicial District Court of Harris, Texas
Our File No.: 000008-001305.001

Dear Clerk:

Enclosed please find an original and one (1) copy of the Notice sent to TINA S. ALEXANDER.

Please file the Notice, stamp the extra copy enclosed and return to the undersigned in the enclosed self-addressed, stamped envelope. Thank you for your assistance in this matter.

Respectfully,

Daniel R. Gamez
State Bar No. 24034451
PITE DUNCAN, LLP
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
SAN DIEGO, CA 92177-0935
TELEPHONE: (858) 750-7600
FACSIMILE: (619) 590-1385
dgamez@piteduncan.com

cc:  Tina S. Alexander

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
See above or visit www.piteduncan.com re individual attorney admissions

Cause No. 2009-42370

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP | § | |
| HOUSTON, TX 77024 | § | 157TH JUDICIAL DISTRICT |
| | § | |

NOTICE TO:  TINA S. ALEXANDER
              12318 Mossycup
              Houston, TX 77024

An Application has been filed by WACHOVIA MORTGAGE, FSB, FKA WORLD SAVINGS BANK, FSB, its successors and/or assigns, as Applicant, on July 6, 2009, in a proceeding described as follows:

Cause No. 2009-42370; In re: Order for Foreclosure Concerning TINA S. ALEXANDER (collectively, "Respondent") and 12318 Mossycup, Houston, TX 77024 ("Subject Property").

The attached application alleges that you, the Respondent, are in default under a security instrument creating a lien on your homestead under Tex. Const. art. XVI, § 50(a)(6). This application is now pending in this court.

Applicant seeks a court order, as required by Tex. Const. art. XVI, § 50(a)(6)(D), to allow it to sell at public auction the Subject Property as more fully described in the attached application under the security instrument and Tex. Prop. Code § 51.002.

You may employ an attorney. If you or your attorney do not file a written response with t he Clerk of the Court at 201 Caroline, 1st Floor, Houston, TX 77002 on or before 10:00 a.m. on Monday, August 24, 2009, calculated as the Monday next after 38 days from date this Notice is sent, an order authorizing a foreclosure sale may be signed. If the Court grants the application, the foreclosure sale will be conducted under the security instrument and Tex Prop. Code § 51.002.

You may file a response setting out as many matters, whether of law or fact, as you consider may be necessary and pertinent to contest the application. If a response is filed, the Court will hold a hearing at the request of the Applicant or Respondent.

- 1 -

**In your response to this Application, you must provide your mailing address.** In addition, you must send a copy of your response to Daniel R. Gamez, Pite Duncan, LLP, 4375 Jutland Drive, Suite 200, P.O. Box 17935, San Diego, CA 92177-0935.

**THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR SOLELY FROM CERTAIN REAL PROPERTY AND NOT FROM YOU PERSONALLY, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

<div align="center">ISSUED</div>

By: _____

  Daniel R. Gamez
  State Bar No. 24034451
  Pite Duncan, LLP
  4375 Jutland Drive, Suite 200
  P.O. Box 17935
  San Diego, CA 92177-0935
  (858) 750-7600 telephone
  (619) 590-1385 telecopier
  Dgamez@piteduncan.com
  Attorney for Applicant
  WACHOVIA MORTGAGE, FSB, FKA WORLD SAVINGS BANK, FSB, its successors and/or assigns

<div align="center">CERTIFICATE OF SERVICE</div>

I certify that a true and correct copy of this Notice with a copy of the Application was sent via certified and regular mail to the defendants listed below on the _____ day of _____, 2009.

Tina S. Alexander      C/M R.R.R 7009 0820 0001 7222 4118
12318 Mossycup       AND REGULAR U.S. MAIL
Houston, TX 77024

_____
Daniel R. Gamez

<div align="center">- 2 -</div>

000008-001305.001

2008-42370

Cause No. _____

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP, HOUSTON | § | 157 JUDICIAL DISTRICT |
| HOUSTON, TX 77024 | § | |
| | § | |

## APPLICATION FOR EXPEDITED FORECLOSURE PROCEEDING PURSUANT TO RULE 736 OF THE TEXAS RULES OF CIVIL PROCEDURE

To the Honorable Judge of Said Court:

Comes now, WACHOVIA MORTGAGE, FSB, F.K.A. WORLD SAVINGS BANK, its successors and/or assigns ("Applicant"), and files this, its verified Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure. In support of this Application, Applicant would show as follows:

1.    TINA S. ALEXANDER ("Respondent") is the party who, according to the records of Applicant, the holder of the debt, is obligated to pay the debt secured by the property (as hereinafter defined).

2. .    The property which is the subject of this Application is described as follows:

LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS

which has a mailing address of 12318 Mossycup, Houston, TX 77024 ("Subject Property").

3.    The Subject Property is encumbered by a Texas Home Equity Security Instrument ("Security Instrument") dated September 15, 1998, to Gary Bradley, as Trustee, recorded under

- 1 -

County Clerk File No. T280637 in the Official Real Property Records of Harris County, Texas, and was re-recorded on January 25, 2006 as Instrument No. Z049229, which secures the payment of that certain Texas Home Equity Note ("Note") dated September 15, 1998, in the original principal sum of $296,000.00, executed by Tina S. Alexander, an unmarried woman, bearing interest and being payable as therein set out to the order of WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK. True and correct copies of the Note and Security Instrument are attached hereto as **Exhibits A** and **B**, respectively, and are incorporated herein by reference. On December 31, 2007, World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB. A true and correct copy of the Affidavit of Name Change is attached hereto as **Exhibit C**, and is incorporated herein by reference.

  4.  In further support of this Application, Applicant's representative swears by the sworn Verification attached as **Exhibit D** to this Application that upon the representative's information and belief, which is based upon the review of Applicant's business records, would show the following facts as would be admissible in evidence:

    a.  A balance still exists on this debt. The outstanding principal balance owing is $263,057.18. Additionally, late charges and interest have been accruing on the debt because of the default by Respondent.

    b.  The debt on which this Application is based is secured by a lien created under Tex. Const. art. XVI, § 50(a)(6) which encumbers the Subject Property.

    c.  A default has occurred in the payment of the above-referenced debt and said default still exists. A default exists under the Deed of Trust in that Respondent failed to pay the monthly payment which became due on October 1, 2007, and every monthly installment that has become due since that date.

- 2 -

d.      Applicant and/or its attorney has provided the requisite notice of default/notice of intent to accelerate and notice of acceleration to Respondent.  Said notices were given by letters and mailed to Respondent at the last known mailing address of Respondent as reflected in the records of Applicant.  The notice of default/right to cure/notice of intent to accelerate and notice of acceleration were given in accordance with Texas Property Code § 51.002, the Deed of Trust and applicable Texas law.

WHEREFORE, PREMISES CONSIDERED, Applicant WACHOVIA MORTGAGE, FSB, F.K.A. WORLD SAVINGS BANK, its successors and/or assigns, prays that upon final hearing, the Court enter an order allowing Applicant to proceed with foreclosure and sell the Subject Property described herein in accordance with Texas Property Code § 51.002, and for all such other and further relief as may be justly entitled.

Respectfully submitted,

By:_____
Daniel R. Gamez
State Bar No. 24034451
Pite Duncan, LLP
525 East Main Street
El Cajon, CA 92020
(619) 590-1300 telephone
(619) 590-1385 telecopier
Dgamez@piteduncan.com
Attorney for Applicant
WACHOVIA   MORTGAGE,   FSB,
F.K.A. WORLD SAVINGS BANK, its
successors and/or assigns

- 3 -

# EXHIBIT A

WORLD SAVINGS BANK,
A FEDERAL SAVINGS BANK

# NOTE

### TEXAS EQUITY FIXED RATE - FIRST LIEN

Loan Amount:   $296,000.00

Loan Number: 0010585743

Property Address:
12318 MOSSYCUP
HOUSTON, TX  77024

Date: SEPTEMBER 15, 1998

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.   $296,000.00, (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  7.750%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the   1ST   day of each month beginning on NOVEMBER 01, 1998.   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on OCTOBER 01, 2028,   I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
I will make my monthly payments at 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612* * * * * * * * * * * * * * *   or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payments will be in the amount of U.S.   $2,120.59.

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.   LOAN CHARGES AND LEGAL LIMITS

If a law, which applies to this loan and which sets maximum loan charges (including, without limitation, Section 50(a)(6)(E), Article XVI of the Texas Constitution), is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.

TEXAS FIXED RATE NOTE—Single Family
SD243A (02.03.98/1-98) C43A

Page 1 of 4

TX



LENDER'S USE ONLY

0010585743

It is the express intention of the Note Holder and me to structure the extension of credit evidenced by this Note to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument, or any other related loan document transcends the limit of validity prescribed by applicable law, then any such promise, payment, obligation, or provision shall be reduced to the limit of such validity, or eliminated if necessary for compliance with such law, and such document(s) shall be reformed automatically without the necessity of the execution of any new amendment or new document.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
  **(A) Late Charge for Overdue Payments**
  If the Note Holder has not received the full amount of any monthly payment by the end of F I F T E E N   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

  **(B) Default**
  If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

  **(C) Notice of Default**
  If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

  **(D) No Waiver By Note Holder**
  Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

  **(E) Payment of Note Holder's Costs and Expenses**
  If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing the extension of credit evidenced by this Note.

**7.   GIVING OF NOTICES**
  Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
  Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify the Note Holder of failure by the Note Holder to comply with the Note Holder's obligations under, or noncompliance with, any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
  This Note and the lien securing same are authorized by the Texas Constitution, Article XVI, Section 50(a)(6). This Note is given without personal liability against each owner of the Property and the spouse of each owner, unless the owner or spouse obtained this extension of credit by actual fraud. If this extension of credit is obtained by actual fraud of any owner or the spouse of any owner, the Note Holder may enforce its rights under this Note against each person who signs this Note and each person who signs this Note is fully and personally liable for all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note.

0010585743

If this extension of credit is not obtained by actual fraud, the Note Holder may enforce its rights under this Note and the Security Instrument only against the Property and Note Holder shall not seek or obtain a judgment for any deficiency in relation to the amounts owed under this Note against any person who signs this Note who is the owner of the Property or a spouse of an owner of the Property.

## 9. WAIVERS

I and any other person who has obligations under this Note waive notice of intention to accelerate, except as provided in Section 6(C) above, and the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE – ACCELERATION

In addition to the protections given to the Note Holder under this Note, a "Security Instrument," dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**The Loan is Not Assumable.** The extension of credit evidenced by the Note may not be assumed by another Person.

## 11. CLERICAL ERRORS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such error.

## 12. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purpose.

0010585743

13.   NO ORAL AGREEMENTS
     THIS NOTE, THE SECURITY INSTRUMENT AND OTHER DOCUMENTS EMBODY THE
FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND
ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS,
WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND
THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR,
CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE
PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED .

BORROWER(S):

_____ (Seal)
TINA S. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Mailing Address: 12318 MOSSYCUP
                 HOUSTON, TX  77024

TEXAS FIXED RATE NOTE—Single Family                         FORM 3244 12/83
SD24301 (02.03.98/1-98) C430              Page 4 of 4              TX

# EXHIBIT B





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
0010585743

**II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale (broad as provided in Paragraph 24 below), subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in the Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust, and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note, including any changes to the Note made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Note and any changes to the Note made with the written consent of Lender.

**III.   DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)   The property which is located at 12918 MOSSYCUP, HOUSTON, TX 77024. The legal description of this property is attached as Exhibit "A" which is made a part of this Security Instrument. This property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Described Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (i) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (i) through (viii) of this Section;

(x)   All casualty and condemnation proceeds relating to the Described Property; and

(xi)   All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

TEXAS 1st-4 FAMILY-FNMA/FHLMC 3044    DEED OF TRUST-TX COUNTY    TX
Page 2

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:   JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy



00109867A8

**COVENANTS**

I promise and I agree with Lender as follows:

**1.    BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Note and any late charges due under the Note.

**2.    PAYMENTS FOR TAXES AND INSURANCE**

**(A)  Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

**(B)  Escrow Account**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum (Funds) for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. (RESPA), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 24, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

_JER181&6  11.20.94 f1 · CN 2090_          _DEED OF TRUST–TX EQUITY_          1A
_Page 2_

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:     JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____   Deputy
GUC T. LIEN

Title Data, Inc.          FTIN TXE        HA /O.H/259 062

0810568748

**3.  APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any advances due to Lender under this Security Instrument;
Second, to pay the amounts due to Lender under Paragraph 2 above;
Third, to pay interest due under the Note;
Fourth, to pay principal due under the Note;
Last, to pay late charges due under the Note.

**4.  BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.  BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgage Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Note and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds". Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

SF0196D (1,3,4,4011-5) 3/93        DEED OF TRUST-TX EQUITY        16
                                    Page 4

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:  JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T. LIEM

0010388743

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 34 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS.**

I will keep the Property in good repair. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7.   LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THIS PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7 will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Note. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay these amounts with interest.

**8.   LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for this inspection.

**9.   AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

If all of the Property is taken by condemnation, eminent domain or other governmental taking, the proceeds from all awards or claims of damages or from a sale of all or any part of the Property to avoid such governmental taking will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:  JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
GUO T. LIEN

0010886749

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraph 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

(A)  Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under this Note or under this Security Instrument, even if Lender is requested to do so.

(B)  Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 34 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Note and under this Security Instrument.

**11.  OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each party of us individually or against all of us together.

**12.  MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law including, without limitation, Article XVI, Section 50(a)(6)(E) of the Texas Constitution which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13.  LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.  NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 12218 MOSSYCUP, HOUSTON, TX 77024. . . . . . . . . . . . . . . . . . . . . . . . . . .

A notice will be given to me at an alternative address if I give Lender a notice of my alternative address. I may designate only one mailing address at a time for notification purposes. Any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled, "Definitions of Words Used in this Deed of Trust," unless Lender gives me notice of a different address. However, if the purpose of the notice is to notify Lender of failure by Lender to comply with Lender's obligations under, or noncompliance with, any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of the Paragraph 14 or of applicable law.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 09 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
DUO Y. LIEN

0010686743

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Security Instrument or the Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Note.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Note and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If the Property is no longer my homestead, and if Lender requires immediate payment in full or I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 24, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; LENDER'S RIGHTS**

I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. Upon the request of Lender, I will assign these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds for injury or damage to the Property or to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Note or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

SD7048 (13.10.00+1-01) 0500                           DEED OF TRUST 3 PARTY
                                                      Page 7

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:  JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____  Deputy
CUC T. LIEN

Case 4:15-cv-01596   Document 6-5   Filed on 06/08/15 in TXSD   Page 198 of 330

**21. WAIVER OF STATUTE OF LIMITATIONS**

**22. CAPTIONS**

**23. MODIFICATION**

**24. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T. LIEN



0010596749

**25.   NONRECOURSE**

Unless the extension of credit evidenced by the Note was obtained by my or my spouse's actual fraud, Lender shall have no recourse against me or my spouse and Lender may enforce my obligations hereunder and under the Note solely by enforcement of its rights against the Property. If the extension of credit was obtained by my or my spouse's actual fraud, Lender may obtain a personal judgment against me and/or my spouse; including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting my and my spouse's other assets to satisfaction of the debt.

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of this Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

The Loan is Not Assumable. The extension of credit evidenced by the Note may not be assumed by another Person.

**27.   SUBSTITUTION OF TRUSTEE**

Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee, herein and by applicable law.

**28.   PROPERTY IS HOMESTEAD; ACKNOWLEDGMENTS CONCERNING DEBTS**

I represent that the Property is my homestead notwithstanding any voluntary designation of homestead which I may have filed to the contrary. To the extent that the Property is designated for agricultural use under Texas laws governing property taxes, the Property is used primarily for the production of milk.

In the future event that another property becomes my homestead, I understand and agree that the Property will no longer be my homestead and that the extension of credit secured by the lien of this Security Instrument will no longer be a loan of the type described by Section 50(a)(6), Article XVI of the Texas Constitution.

If any portion of the proceeds of the loan secured by the lien of this Security Instrument were used in repayment of any existing indebtedness to Lender not secured by a valid lien on the Property, I acknowledge that such repayment was not required by Lender but rather was made at my voluntary direction and request.

The indebtedness evidenced by the Note is the only indebtedness secured by the Property, as of the date of this Security Instrument unless the other indebtedness was incurred by me for one or more of the purposes allowed under and pursuant to Article XVI, Section 50(a)(1)-(6) of the Texas Constitution.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:  JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas.

_____ Deputy
CUC T. LIEN

0010685748

**29.   RELEASE**

Within a reasonable time after termination and full payment of all Sums Secured, Lender shall provide to me all the cancelled Note and (ii) a release of the lien of this Security Instrument in recordable form or a copy of an endorsement and assignment of the lien to another lender refinancing the indebtedness evidenced by the Note. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.

**30.   STATEMENT OF OBLIGATION**

To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Note.

**31.   SUBROGATION**

If any of the proceeds of the Note have been used to pay outstanding liens against the Property, I have requested Lender to advance the proceeds and I have represented that the liens are valid and are due. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, even if those liens and debts are acquired by Lender by assignment or by release by the holder upon payment.

**32.   SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CO-SIGNERS**

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and me, subject to the provisions of Paragraph 26. My covenants and agreements shall be joint and several, subject to the provisions of Paragraph 25. Any person who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to grant and convey that person's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution providing for execution hereof, in order to establish a valid lien by the spouse of each owner of the Property; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and I may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

**33.   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that (A) the Property is my personal and primary residence; and (B) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded. If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Note and this Security Instrument.

THIS SPACE INTENTIONALLY LEFT BLANK.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OR
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.



A CERTIFIED COPY
ATTEST:   JAN 1 9 2006
BEVERLY B/KAUFMAN, County Clerk
Harris County, Texas,

_____ Deputy
CUC T. LIEN

0010546749

**34.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or that I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may accelerate the indebtedness evidenced by the Note and demand immediate payment of all Sums Secured as described below.

Lender shall give me notice prior to acceleration following my Breach of Duty that will prior to acceleration under Paragraph 33 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the Sums Secured and commencement of foreclosure hereunder. The notice shall further inform me of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of mine to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all Sums Secured without further demand and may, or Trustee, upon written request of Lender may, institute proceedings to foreclose the lien of this Security Instrument either by judicial foreclosure or by court order in accordance with the rules of civil procedure for expedited foreclosure proceedings promulgated from time to time by the Texas Supreme Court pursuant to the provisions of Article XVI, Section 50(r) of the Texas Constitution or, to the extent such promulgated rules or a court order permit, Lender may invoke the power of sale. If for any reason the provisions of Article XVI, Section 50(a)(6) and 50(a)-(i) of the Texas Constitution are invalid, or if the lien of this Security Instrument shall be found not to be compliance with Section 50(a)(6) of Article XVI of the Texas Constitution then, in either such event, any portion of the indebtedness secured by this Security Instrument that refinanced a debt authorized by the provisions of Article XVI, Section 50(a)(1)-(5) of the Texas Constitution shall remain subject to the lien of this Security Instrument, and Lender may require immediate payment in full of all Sums Secured without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 34, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale as may be permitted pursuant to the above provisions or as may be permitted by court order or the rules promulgated by the Texas Supreme Court, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to me in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. I authorize Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. I understand that the power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for me in a judicial proceeding.

Trustee shall deliver to the purchaser Trustee's deed conveying indefensible title to the Property with covenants of general warranty. I covenant and agree to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all Sums Secured; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 34, I or any person holding possession of the Property through me shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, I or such person shall be a tenant at sufferance and may be removed by writ of possession.

**35.    WAIVER OF NOTICE OF INTENTION TO ACCELERATE**

I waive the right to notice of intention to require immediate payment in full of all Sums Secured except as provided in Paragraph 34.

TEXAS HOME EQUITY SECURITY INSTRUMENT              FORM OF LOANT-TX EQUITY
                                                    Page 11

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:    JAN 18 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

                    CUC T. LIEN           Deputy

Tele Data, Inc. LS        FDH7497      HA Z04H223 P11

00108-86-748

**38.   HOME EQUITY LENDING COMPLIANCE**

I and Lender intend to conform strictly to Section 50(a)(6), Article XVI of the Texas Constitution. It shall be a precondition to the exercise by me of any right or remedy against Lender that I advise Lender, in writing, of any alleged failure by Lender to comply with the obligations under Section 50(a)(6), Article XVI of the Texas Constitution with respect to the loan evidenced by the Note and that Lender be given a reasonable time to correct or cure any such failure. I will reasonably cooperate in Lender's efforts to comply with the requirements of Section 50(a)(6), Article XVI of the Texas Constitution. Only after Lender has received my written notice, has had a reasonable time to comply, and has failed to comply, shall all principal and interest be forfeited by Lender if required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution.

If, from any circumstance whatsoever, any promise, payment, obligation, or provision of the Note, this Security Instrument, or any other related loan document transcends the limit of validity prescribed by applicable law, then any such promise, payment, obligation, or provision shall be reduced to the limit of such validity, or eliminated if necessary for compliance with such law, and such documented shall be reformed automatically without the necessity of the execution of any new amendment or new document. Any refund of payment will be made in accordance with Paragraph 12.

Lender's right-to-comply as provided in this Paragraph 38 shall survive the satisfaction of Borrower's payment obligations under the Note and this Security Instrument. The provisions of this Paragraph 38 shall supersede any inconsistent provision of the Note or this Security Instrument.

<center>THIS SPACE INTENTIONALLY LEFT BLANK.</center>

DEED OF TRUST- TX EQUITY

Page 15

TX

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY

ATTEST:   JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ , Deputy
GUO T. LIEN

Title Data, Inc. LS      FD017497     HA 2006x220.012

0010586743

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

YOU MUST SIGN THIS DOCUMENT AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWERS:

_____ (Seal)
TINA S. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
GUS T. IDEN

SINGLE ACKNOWLEDGEMENT

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

STATE OF  TEXAS  )

COUNTY OF  HARRIS  )

BEFORE ME,  the undersigned,  a Notary Public in and for said County and State,
on this day personally appeared TINA B. ALEXANDER

known to me to be the person(s) whose name(s) subscribed to the foregoing instrument,
and acknowledged to me that he  executed the same for the purposes and consideration
therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the  16  day of September

1998  , A.D.

(L.S.)  _____
Notary Public in and for HARRIS  County,
TEXAS

SEAL  _____
Notary Name

_____
Notary Expiration Date

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY

ATTEST:  JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____  Deputy
GUC T. LIEN

Time Data, Inc. LS        TG017407     HA 2046029 v14

B21-21-0042

## WORLD SAVINGS

### E X H I B I T  "A"
### LEGAL DESCRIPTION

LOAN NO. _____ 0010845148

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF HARRIS
STATE OF TEXAS * * * * * * * * , DESCRIBED AS FOLLOWS:

TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:  JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T. LEIY



RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS
CENTRAL PROCESSING CENTER
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

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

FOR RECORDER'S USE ONLY

## PLANNED UNIT DEVELOPMENT RIDER

LOAN NO. 0010585743

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 15TH day of SEPTEMBER, 1998, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned the "Borrower") to secure Borrower's Note to WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, (the "Lender") of the same date and covering the Property described in the Security Instrument and located at
12818 MOSSYCUP
HOUSTON, TX  77024
[ Property Address ]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in EXHIBIT "A" attached incorporated herein (the "Declaration"). The Property is a part of a planned unit development known as

FROSTWOOD
[ Name of Planned Unit Development ]

(the "PUD") The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

MULTISTATE PUD RIDER — Single Family — FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT
FORM 3150 9/90

Page 1

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____, Deputy
GUO T. LIEN



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

00105&5788

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of Incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

MULTISTATE PUD RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT          FORM 3150 9/90
803440 SD,10,A48B-NB,0440                              Page 2          ALL STATES SCRIPT CO, OR, FL, ME, NC, WA

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW

A CERTIFIED COPY
JAN 19 2006
ATTEST:
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____  Deputy
GUO T. LIEN

0010888748

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

THIS SPACE INTENTIONALLY LEFT BLANK.

MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          FORM 3150 9/90
SUMAC 97, TLBARMAR Cont                              Page 2              ALL STATES EXCEPT CO, DE, FL, MN, NC, WA

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY:

ATTEST:     JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T. LIEN

0010686743

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWERS:

_____ (Seal)
TINA S. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Mailing Address:   12818 MOSSYCUP
HOUSTON, TX   77024

ATTACH INDIVIDUAL   NOTARY ACKNOWLEDGEMENT

MULTISTATE PUD RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT          FORM 3150 9/90
ED3A001 MT.16.33/1-345 9485                    Page 2 of 2          ALL STATES EXCEPT DE, OE, FL, MA, ML, NH, SA, PA, WA

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY.
ATTEST:   JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
CUC T. LIEN

Title Data, Inc.  TUA1T-2y2   HA T06UC2S0.DYE

SINGLE ACKNOWLEDGEMENT

STATE OF   TEXAS       )
COUNTY OF   HARRIS     )

    BEFORE ME, the undersigned,   A Notary Public in and for said County and State,
on this day personally appeared TINA S. ALEXANDER

known to me to be the person(s) whose name(s) subscribed to the foregoing instrument,
and acknowledged to me that he executed the same for the purposes and consideration
therein expressed.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this the    16    day of September
                 1998    , A.D.

(L.S.)

                  Notary Public in and for HARRIS        County,
                  TEXAS

       SEAL       Notary Name _____

                  Notary Expiration Date _____



SEP 2 2 1998

COUNTY CLERK
HARRIS COUNTY TEXAS

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY

       JAN 19 2006
ATTEST:_____
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

    _____ Deputy
    CUC T. LIEN

This document is being re-recorded to include the "Exhibit A", legal description listed below that was missing from the original Deed of Trust that was recorded on September 22, 1998 in Harris County Clerk's File No. T280637.

"EXHIBIT A"

Lot Fourteen (14), in Block Thirteen (13), of FROSTWOOD, SECTION TWO (2), an addition in Harris County, Texas according to the map or plat thereof recorded in Volume 77, Page 52 of the Map Records of Harris County

ER 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

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

JAN 2 5 2006

Beverly B. Kaufman

COUNTY CLERK
HARRIS COUNTY, TEXAS

Return To: Stewart Title Houston Division
Underwriting Department
4700 W. Sam Houston Pkwy. #100
Houston, TX 77041
Attn: Victor Davis
TISE 5023.0035553.06

Title Data, Inc. LS       TDI17497       HA 2049229.021

# EXHIBIT C

## SENIOR VICE PRESIDENT'S AFFIDAVIT OF NAME CHANGE

**STATE: California**

**COUNTY: Alameda**

I, _David S. Monson_, being a duly appointed and acting Senior Vice President of Wachovia Mortgage, FSB, whose address is 1901 Harrison Street, Oakland, CA 94612, being first duly sworn on oath, deposes and says:

Effective December 31, 2007, World Savings Bank, FSB ("the Savings Bank") changed its name to Wachovia Mortgage, FSB as a result of an amendment to the charter and bylaws of the Savings Bank, which was accomplished in accordance with federal regulation as evidenced by the Notice of Amendment of Charter and Bylaws letter issued by the Office of Thrift Supervision ("OTS") (California), on November 19, 2007, and is on file in that office. A true and correct copy of that OTS letter is attached to this Affidavit as Exhibit "A".

_____
Senior Vice President

State of California          §
County of Alameda          §

Before me, _____, a Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same under oath in his/her authorized capacity.

_See attached_

Given under my hand and seal of office this
_____ day of _____, 20____.

(Seal)

_____
Signature of Notary Public

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of *Alameda*

On *January 31, 2008* before me, *James A. Oerther, Notary Public*,
   Date                                    Here Insert Name and Title of the Officer

personally appeared *David S. Madsen*
                              Name(s) of Signer(s)

JAMES A. OERTHER
Commission # 1518575
Notary Public - California
Alameda County
My Comm. Expires Oct 9, 2008

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature *James A. Oerther*
                  Signature of Notary Public

— OPTIONAL —

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: *Senior Vice President's Affidavit of Name Change*

Document Date: *1/31/2008*                    Number of Pages: *1*

Signer(s) Other Than Named Above: *N/A*

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: *David S. Madsen*
☐ Individual
☒ Corporate Officer — Title(s): *SVP*
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc: Robert Burns, FDIC - Atlanta

# EXHIBIT "A"

# EXHIBIT D

## VERIFICATION

STATE OF _Texas_
COUNTY OF _Bexar_

BEFORE ME, the undersigned Notary Public, on this day personally appeared

_Angela Vargas_, on behalf of WACHOVIA MORTGAGE, FSB, FKA WORLD

SAVINGS BANK, FSB, its successors and/or assigns, who being by me duly sworn, on his/her oath

deposed and said that he/she has read the above and foregoing Application for Expedited Foreclosure

Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure regarding TINA S.

ALEXANDER and 12318 Mossycup, Houston, TX 77024, and that every statement contained

therein is within his/her personal knowledge and is true and correct.

WACHOVIA  MORTGAGE,  FSB,  FKA
WORLD SAVINGS BANK, FSB

By: _Angela Vargas_
Its: _Asst Secretary_

On _June 16_, 2009, before me, _Joanna M. Gloria_, a Notary Public in and
for said state, personally appeared _Angela Vargas_, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JOANNA M. GLORIA
MY COMMISSION EXPIRES
August 20, 2011

Signature _Joanna M. Gloria_ (Seal)

000008-001305.001

Cause No. _____

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP | § | |
| HOUSTON, TX 77024 | § | 157 JUDICIAL DISTRICT |
| | § | |

## CERTIFICATE OF LAST KNOWN ADDRESS

| | |
|---|---|
| THE STATE OF CALIFORNIA | § |
| | § |
| COUNTY OF SAN DIEGO | § |

BEFORE ME, the undersigned authority, on this day personally appeared Daniel R. Gamez, attorney of record for Plaintiff herein, who, after first being duly sworn, deposed and stated as follows:

I, Daniel R. Gamez, attorney of record for Plaintiff herein, certify that the last known mailing address for Respondent(s), Tina S. Alexander, is at her place of residence: 12318 Mossycup, Houston, TX 77024.

_____
Daniel R. Gamez

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this _30th_ day of ___June___, A.D., 2009.

_____
Notary Public, State of _California_
My commission expires: _Jan 29, 2012_

KELLIE K. OWEN
Commission # 1788179
Notary Public - California
San Diego County
My Comm. Expires Jan 29, 2012

000008-001305.001

2006-48970

Cause No. _____

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
| | § | |
| TINA S. ALEXANDER | § | |
| | § | |
| and | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| 12318 MOSSYCUP | § | |
| HOUSTON, TX 77024 | § | 151 JUDICIAL DISTRICT |
| | § | |

## PLAINTIFF'S SERVICEMEMBERS' AFFIDAVIT

| | |
|---|---|
| THE STATE OF CALIFORNIA | § |
| COUNTY OF SAN DIEGO | § |

BEFORE ME, the undersigned notary, on this day personally appeared Daniel R. Gamez, a person whose identity is known to me, and after administration of the oath, stated as follows:

"My name is Daniel R. Gamez. I am above the age of twenty-one (21) years, have never been convicted of a felony or a crime of moral turpitude and am competent to make this Affidavit. I am capable of making this Affidavit. I understand that if I make or use a military status affidavit, knowing it to be false, I may be fined, imprisoned for not more than one year, or both. See 50 U.S.C. App. Section 521(c). The facts stated in this Affidavit are within my personal knowledge and are true and correct.:

☑ Defendants are not in the military. In support, offer the following facts to show Defendants are not in the military: Per the Department of Defense Manpower Data Center Military Status Report, attached hereto as **Exhibit A**, and incorporated herein by reference.

☐ Plaintiff asks the court to appoint an attorney to represent the Defendant because:

    ☐ Plaintiff is unable to determine if the Defendant is in the military. The Servicemember's Civil Relief Act of 2003, 50 U.S.C App. Section 521, requires the trial court to appoint an attorney to represent Defendant before a judgment may be rendered against him/her.

    ☐ Defendant is in the military The Servicemember's Civil Relief Act of 2003, 50 U.S.C App. Section 521, requires the court to appoint an attorney to represent Defendant before a judgment may be rendered against him/her.

    I understand that costs for the attorney ad litem may be assessed against the Plaintiff as costs of court unless otherwise ordered by the court.

_____
Daniel R. Gamez

SWORN TO AND SUBSCRIBED before me by Daniel R. Gamez on this ___36th___ day of ___June___, A.D., ___2009___.

_____
Notary Public, State of ___California___
My commission expires: ___Jan 29, 2012___

KELLIE K. OWEN
Commission # 1788179
Notary Public - California
San Diego County
My Comm. Expires Jan 29, 2012

000008-001305.001

# EXHIBIT A

Request for Military Status                                                                  Page 1 of 2

Department of Defense Manpower Data Center                                    JUN-16-2009 09:51:48

 Military Status Report
Pursuant to the Servicemembers Civil Relief Act

| ◄ Last Name | First/Middle | Begin Date | Active Duty Status | Service/Agency |
|---|---|---|---|---|
| ALEXANDER | TINA S | | Based on the information you have furnished, the DMDC does not possess any information indicating that the individual is currently on active duty. | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Military.

*Mary M. Snavely-Dixon*

---

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Servicemembers Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's active duty status by contacting that person's Military Service via the "defenselink.mil" URL provided below. If you have evidence the person is on active-duty and you fail to obtain this additional Military Service verification, provisions of the SCRA may be invoked against you.

If you obtain further information about the person ( e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects current active duty status only. For historical information, please contact the Military Service SCRA points-of-contact.

See: http://www.defenselink.mil/faq/pis/PC09SLDR.html

WARNING: This certificate was provided based on a name and Social Security number (SSN) provided

by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.

*Report ID:**BFYWQMLIFMI***

# Exhibit "31"

Bank of America | Online Banking | Transaction Image Print                Page 1 of 1

**Bank of America**                                    Online Banking

Interest Checking - 9589 : Check Image

Check Image:





# Exhibit "32"

Bank of America | Online Banking | Transaction Image Print                    Page 1 of 1

**Bank of America**                     **Online Banking**

Interest Checking - 9589 : Check Image                    11-19-09

Check Image:





# Exhibit "33"

**Bank of America** ◀◀◀                          Online Banking

Interest Checking - 9589 : Check Image                    *12-15-09*

Check Image:



# Exhibit "34"

*1-5-10*

 **WACHOVIA**

**ESCROW BREAKDOWN**

**LOAN #:** 10585743
**BORROWER:** Tina S Alexander
**PROPERTY ADDRESS:** 12318 Mossycup, Houston TX 77024-4907

| PAYMENT DATE | DESCRIPTION | PAYMENTS TO ESCROW | DISBURSEMENTS FROM ESCROW | BALANCE |
|---|---|---|---|---|
| 03/01/05 | Harris County Taxes 2002 | | -1,521.64 | ($1,521.64) |
| 03/01/05 | Harris County Taxes 2003 | | -1,748.54 | ($3,270.18) |
| 03/01/05 | Harris County Taxes 2004 | | -1,923.29 | ($5,193.47) |
| 03/01/05 | Penalty | | -1,857.91 | ($7,051.38) |
| 03/01/05 | City of Houston 2002 | | -1,542.19 | ($8,593.57) |
| 03/01/05 | City of Houston 2003 | | -1,772.17 | ($10,365.74) |
| 03/01/05 | City of Houston 2004 | | -1,934.40 | ($12,300.14) |
| 03/01/08 | Penalty | | -1,881.66 | ($14,181.80) |
| 03/01/05 | Spring Branch ISD 2002 | | -3,363.95 | ($17,545.75) |
| 03/01/05 | Spring Branch ISD 2003 | | -4,625.64 | ($22,171.39) |
| 03/01/05 | Spring Branch ISD 2004 | | -5,115.06 | ($27,286.45) |
| 03/01/05 | Penalty | | -4,511.92 | ($31,798.37) |
| 03/01/05 | Additional Costs | | -453.00 | ($32,251.37) |
| 03/01/05 | Abstractors fee | | -250.00 | ($32,501.37) |
| 03/01/05 | Tax master fee | | -50.00 | ($32,551.37) |
| 03/18/05 | Tax Bill and Court Order | | -4,204.89 | ($36,756.26) |
| 03/23/05 | Delinquent Taxes o4/fy Harris Ct | | -3,857.69 | ($40,613.95) |
| 03/23/05 | Penalty | | -347.20 | ($40,961.15) |
| 10/14/05 | Harris County 02 base | | -2,195.54 | ($43,156.69) |
| 10/14/05 | Penalty | | -1,624.70 | ($44,781.39) |
| 10/14/05 | Harris County 03 base | | -3,520.71 | ($48,302.10) |
| 10/14/05 | Penalty | | -2,098.36 | ($50,400.46) |
| 10/14/05 | ISD Tax office 02 base | | -1,991.09 | ($52,391.55) |
| 10/14/05 | Penalty | | -1,329.05 | ($53,720.60) |
| 10/14/05 | ISD Tax office 03 bse | | -4,625.64 | ($58,346.24) |
| 10/14/05 | Penalty | | -2,449.28 | ($60,795.52) |
| 10/14/05 | ISD Tax office 04 base | | -5,115.06 | ($65,910.58) |
| 10/14/05 | Penalty | | -2,002.54 | ($67,913.12) |
| 07/31/06 | County taxes 02 base | | -2,195.54 | ($70,108.66) |
| 07/31/06 | County taxes 03 base | | -3,520.71 | ($73,629.37) |
| 07/31/06 | County taxes 05 base | | -3,945.48 | ($77,574.85) |
| 07/31/06 | Penalty | | -6,097.66 | ($83,672.51) |
| 07/31/06 | ISD 02 base | | -5,248.28 | ($88,920.79) |
| 07/31/06 | ISD 03 base | | -4,625.64 | ($93,546.43) |
| 07/31/06 | ISD 04 base | | -5,115.06 | ($98,661.49) |
| 07/31/06 | ISD 05 base | | -5,248.28 | ($103,909.77) |
| 07/31/06 | Penalty | | -6,840.72 | ($110,750.49) |

*1-8-2010   attorney for Wachovia gave this to me
at court.*

# Exhibit "35"

☐ **CORRECTED (if checked)**

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 **2009** Form 1098 | **Mortgage Interest Statement** |
|---|---|---|---|
| WACHOVIA MORTGAGE 4101 WISEMAN BOULEVARD SAN ANTONIO TX 78251-4201 (800) 642-0257 | | | |

| RECIPIENT'S federal identification no. | PAYER'S social security number | 1  Mortgage interest received from payer(s)/borrower(s)* | **Copy B** |
|---|---|---|---|
| 94-1347393 | | $                        .00 | **For Payer** |

| PAYER'S/BORROWER'S name, Street address (including apt. no.), City, state, and ZIP code 028458  M9YT8DTA TINA S ALEXANDER 12318 MOSSYCUP DR HOUSTON  TX  77024-4907 | 2  Points paid on purchase of principal residence $ | The information in boxes 1, 2, 3, and 4 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
|---|---|---|
| | 3  Refund of overpaid interest $ | |
| | 4  Mortgage insurance premiums $ | |
| Account number (see instructions) 0010585743 | 5 LOAN TYPE CONV. RES | |

Form **1098**          (keep for your records)          Department of the Treasury - Internal Revenue Service

---

```
        KEEP THIS FORM FOR YOUR RECORDS AND FOR TAX PURPOSES.  WE CANNOT ADVISE
        YOU WITH RESPECT TO YOUR TAX RETURN.  QUESTIONS CONCERNING YOUR TAX
        RETURN SHOULD BE ANSWERED BY YOUR TAX ADVISOR.

        PLEASE REMEMBER TO FILE FOR HOMESTEAD EXEMPTION, IF YOU ARE ELIGIBLE.


                                      DISBURSEMENT ACTIVITY:
                               PROPERTY TAXES              .00
                               HAZARD INSURANCE       5,284.31
    CURR TOTAL PMT      2,561.12   FHA/PMI  INSURANCE        .00
    CURR ESCROW PMT       440.53   ADDT'L ASSESSMENTS        .00

       PRINCIPAL ACTIVITY 2009:
    PAYMENTS APPLIED          .00
    REMAINING BAL      263,057.18

       ESCROW ACTIVITY 2009:
    BEGIN ESCROW BAL    85,503.94-
    TOTAL DEPOSITS           .00
    TOTAL DISBURSE      5,284.31
    CLOSING ESC BAL    90,788.25-


2009 INTEREST PAYMENTS    ****************************      .00

                  YOU MAY OBTAIN ADDITIONAL COPIES OF THIS
              STATEMENT UPON REQUEST, SUBJECT TO APPLICABLE FEES.
```

# Exhibit "36"

RECIPIENT'S/LENDER'S name, address, and telephone number

WACHOVIA MORTGAGE
4101 WISEMAN BOULEVARD
SAN ANTONIO TX 78251-4201
(800) 642-0257

OMB No. 1545-0901

**2010**

Form **1098**

may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

**Mortgage Interest Statement**

| RECIPIENT'S federal identification no. | PAYER'S social security number | |
|---|---|---|
| 94-1347393 | | 1 Mortgage interest received from payer(s)/borrower(s)* $ 1,698.91 |

**Copy B For Payer**

The information in boxes 1, 2, 3, and 4 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

PAYER'S/BORROWER'S name, Street address (including apt. no.), City, state, and ZIP code 010541 M9YT8DTA

TINA S ALEXANDER
12318 MOSSYCUP DR
HOUSTON  TX  77024-4907

2 Points paid on purchase of principal residence
$

3 Refund of overpaid interest
$

4 Mortgage insurance premiums
$

Account number (see instructions)
0010585743

5
LOAN TYPE CONV. RES

Form **1098**          (keep for your records)          Department of the Treasury - Internal Revenue Service

---

KEEP THIS FORM FOR YOUR RECORDS AND FOR TAX PURPOSES.  WE CANNOT ADVISE
YOU WITH RESPECT TO YOUR TAX RETURN.  QUESTIONS CONCERNING YOUR TAX
RETURN SHOULD BE ANSWERED BY YOUR TAX ADVISOR.

PLEASE REMEMBER TO FILE FOR HOMESTEAD EXEMPTION, IF YOU ARE ELIGIBLE.

| | | DISBURSEMENT ACTIVITY: | |
|---|---|---|---|
| LATE CHARGES PD | 2,120.00 | PROPERTY TAXES | 23,496.79 |
| | | HAZARD INSURANCE | 5,284.31 |
| CURR TOTAL PMT | 2,120.61 | FHA/PMI  INSURANCE | .00 |
| CURR ESCROW PMT | .02 | ADDT'L ASSESSMENTS | .00 |
| | | TAX PENALTY | 1,727.98 |

PRINCIPAL ACTIVITY 2010:
PAYMENTS APPLIED        421.68
REMAINING BAL        262,635.50

ESCROW ACTIVITY 2010:
BEGIN ESCROW BAL     90,788.25-
TOTAL DEPOSITS             .00
TOTAL DISBURSE       30,509.08
CLOSING ESC BAL     121,297.33-

2010 INTEREST PAYMENTS REPORTED TO IRS     *****************     1,698.91

YOU MAY OBTAIN ADDITIONAL COPIES OF THIS
STATEMENT UPON REQUEST, SUBJECT TO APPLICABLE FEES.

# Exhibit "37"



**PITE DUNCAN LLP**

Arizona   California   Hawaii   Idaho   Nevada   Oregon   Texas   Utah   Washington

January 30, 2014

**NOTICE OF PRIOR ACCELERATION OF INDEBTEDNESS AND
ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE
RELATIVE TO TEXAS NON-RECOURSE HOME EQUITY LOAN**

Tina S. Alexander
12318 Mossycup
Houston, TX 77024

Re:   Loan No.:        0010585743
      Loan Date:      September 15, 1998
      Property Address:        12318 Mossycup, Houston, TX 77024
      Property Recording Information:        September 22, 1998; Instrument #T280637
      Our File No.:   000008-001305.002

**This is an attempt by a debt collector to collect a consumer debt and any information
obtained will be used for that purpose.**

**Assert and protect your rights as a member of the armed forces of the United States. If you
are or your spouse is serving on active military duty, including active military duty as a
member of the Texas National Guard or the National Guard of another state or as a
member of a reserve component of the armed forces of the United States, please send
written notice of the active duty military service to the sender of this notice immediately**

    1.      The name of the creditor to whom this debt is owed is: Wells Fargo Bank, N.A.,
its successors and/or assigns.

    2.      Because of the failure to pay the delinquent amount due on the above-referenced
Loan, Lender accelerated the maturity of your Loan on March 28, 2012, and declared the entire
balance of the Loan due and payable in full.   Lender will proceed to foreclose and sell the
Property under the terms of the Security Instrument.

    3.      Pursuant to Texas Constitution Article XVI § 50(a)(6) and Rule 736 of the Texas
Rules of Civil Procedure and applicable Texas law, an Order to Proceed with Notice of
Foreclosure Sale and Foreclosure Sale was entered on November 8, 2013, under Cause No.
2013-54353, in the 127th Judicial District Court of Harris County, Texas; a copy of which is
enclosed.

PITE
DUNCAN
LLP

4.     Wachovia Mortgage, FSB, whose address is 4101 Wiseman Boulevard, San Antonio, TX 78251 is acting as the Mortgage Servicer for Wells Fargo Bank, N.A., who is the Mortgagee.  The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee.  Pursuant to the servicing agreement and the Texas Property Code Section 51.0012, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the Property secured by the above-referenced Loan.

5.     The amount necessary for you to pay in order to cure the existing defaults and prevent this foreclosure sale may be determined by contacting:

<div align="center">

Wachovia Mortgage, FSB
c/o Paul A. Hoefker
PITE DUNCAN, LLP
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
SAN DIEGO, CA 92177-0935

</div>

6.     This letter constitutes notice required by law and the terms of the applicable loan documents.  To the extent that you have received a discharge in bankruptcy, this notice does not constitute an attempt to collect a debt from you personally in violation of the discharge injunction of 11 U.S.C. Section 523.

Respectfully,

PITE DUNCAN, LLP

_____
PAUL A. HOEFKER

VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705.  A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550

## <u>NOTICE OF SUBSTITUTE TRUSTEE'S SALE</u>

**Harris County** Texas Home Equity Security Instrument

| | |
|---|---|
| Date of Security Instrument: | September 15, 1998 |
| Amount: | $296,000.00 |
| Grantor(s): | Tina S. Alexander |
| Original Mortgagee: | World Savings Bank, a Federal Savings Bank |
| Current Mortgagee: | Wells Fargo Bank, N.A. |
| Original Trustee: | Gary Bradley |
| Mortgage Servicer and Address: | Wachovia Mortgage, FSB<br>4101 Wiseman Boulevard<br>San Antonio, TX 78251 |
| Recording Information: | Recorded September 22, 1998, under Instrument No. T280637, Harris County, Texas |
| Legal Description: | LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS |
| Date of Sale: | March 4, 2014 |
| Earliest Time Sale Will Begin: | 10:00 A.M. |

Place of Sale: The foreclosure sale will be conducted in the area designated by the Harris County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosures sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

WHEREAS, an Order to Proceed with Notice of Foreclosure Sale and Foreclosure Sale was entered on November 8, 2013, under Cause No. 2013-54353, in the 127th Judicial District Court of Harris County, Texas;

000008-001305.002

The undersigned has been appointed as Substitute Trustee(s), each empowered to act independently, in the place of said Original Trustee, upon the contingency and in the manner authorized by said Texas Home Equity Security Instrument.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time state above or within three (3) hours after that time.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of the notice immediately.**

NOTICE IS FURTHER GIVEN that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Texas Home Equity Security Instrument, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

EXECUTED in multiple originals on February 3, 2014.

_Paul Hoefker_

Paul A. Hoefker, Olga S. Panchenko, Jeff Leva or Theresa Perales or Sandy Dasigenis or Debby Jurasek or Sheila Horak or Tyler Martin, Substitute Trustee(s)
c/o Pite Duncan, LLP, 4375 Jutland Drive, Suite 200, P.O. Box 17935, San Diego, CA 92177-0935

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550

000008-001305.002

P.4
nca
8a
salpx

Cause No. 2013-54353

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning 12318 MOSSYCUP, HOUSTON, TX 77024 | § § § | IN THE DISTRICT COURT |
| under Tex. R. Civ. Proc. 736 | § § | |
| and | § § | OF HARRIS COUNTY, TEXAS |
| TINA S. ALEXANDER, | § § | |
| ("Respondent") | § § | |
| and | § § | 127TH JUDICIAL DISTRICT |
| WELLS FARGO BANK, N.A., | § § | |
| ("Petitioner"). | § § § § | |

**FILED**
Chris Daniel
District Clerk
NOV 08 2013
Time: _____
By _____

### ORDER TO PROCEED
### WITH NOTICE OF FORECLOSURE SALE AND FORECLOSURE SALE

On November 8, 2013, came on to be heard the Application of WELLS FARGO BANK, N.A., its successors and/or assigns ("Petitioner"), for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure ("Application") and that certain real property more particularly described as follows:

**LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS**

which is described by its commonly known street address as 12318 Mossycup, Houston, TX 77024 ("Property").

RECORDERS MEMORANDUM
This instrument is of poor quality
at the time of imaging

Whereas all parties were served with reasonable notice of hearing, Petitioner appeared through its counsel of record.

Respondent **TINA S. ALEXANDER** [did/did not] appear.

Whereas, a debt exists as under the Texas Home Equity Note and Texas Home Equity Security Instrument; the debt is secured by a lien created under TEX. CONST. art. XVI, § 50(a)(6) that encumbers the Property, recorded under County Clerk file No. **T280637** in the Official Real Property Records of **HARRIS** County, Texas; Petitioner has given Respondent the requisite notices to cure the default and accelerate the maturity of the debt under the Texas Home Equity Security Instrument and TEX. PROP. CODE 51.002 and applicable law; and Petitioner has given Respondent the requisite notice of this proceeding under Rule 736 of the Texas Rules of Civil Procedure.

It is hereby ORDERED that Petitioner **WELLS FARGO BANK, N.A., its successors** and/or assigns, is authorized to proceed with foreclosure under the Texas Home Equity Security Instrument executed by Respondent and TEX. PROP. CODE § 51.002. *No sooner than Jan. 15, 2014*

It is further ORDERED that a copy of this Order shall be sent to Respondent with the Notice of Sale of the Property at Respondent last known address:

**Tina S. Alexander**
**12318 Mossycup**
**Houston, TX 77024**

It is further ORDERED that the Petitioner, **WELLS FARGO BANK, N.A.,** its successors and/or assigns, may communicate with the Respondent and all third parties reasonably necessary to conduct the foreclosure sale of the Property, and, if Respondent is

represented by legal counsel, notice of the foreclosure sale date shall also be mailed to legal

counsel by certified mail.

SIGNED this ___8th___ day of ___Nov._____, 2013.

_____
JUDGE PRESIDING

**APPROVED:**

By: _____
Paul A. Hoefker
State Bar No. 09772800
Olga S. Panchenko
State Bar No. 24058773
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600 telephone
(619) 326-2430 telecopier
phoefker@piteduncan.com
Attorney for Petitioner
**WELLS FARGO BANK, N.A.**, its successors and/or assigns

No foreclosure proceedings before Jan. 15, 2014.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Order to Proceed with Notice of Foreclosure Sale and Foreclosure Sale was sent via certified and regular mail to the defendants listed below on _____ October 17 _____, 2013.

Tina S. Alexander                              C/M R.R.R. 7013 1710 0000 7123 1846
12318 Mossycup                                 AND REGULAR U.S. MAIL
Houston, TX 77024


_____
Paul A. Hoefker
Olga S. Panchenko



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 21, 2013

Certified Document Number:        58235601

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Filed 13 September 16 I
Chris Daniel - District Cl
Harris County
ED101J017/15612
By: Nelson Cuero

| 2013-54353 / Court: 127 |
|---|

Cause No. .....................

| In re: Order for Foreclosure Concerning | § | IN THE DISTRICT COURT |
|---|---|---|
| 12318 MOSSYCUP | § | |
| HOUSTON, TX 77024 | § | |
| under Tex. R. Civ. Proc. 736 | § | |
| and | § | |
| TINA S. ALEXANDER, | § | OF HARRIS COUNTY, TEXAS |
| ("Respondent[s]") | § | |
| and | § | |
| WELLS FARGO BANK, N.A., | § | JUDICIAL DISTRICT |
| ("Petitioner"). | § | |

## APPLICATION FOR EXPEDITED FORECLOSURE PROCEEDING PURSUANT TO RULE 736 OF THE TEXAS RULES OF CIVIL PROCEDURE

To the Honorable Judge of Said Court:

Comes now, **Wells Fargo Bank, N.A.,** its successors and/or assigns ("Petitioner"), and files this, its verified Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure ("Application"). In support of this Application, Petitioner would show as follows:

1.    **Harris** is the county where all or part of the real property sought to be foreclosed is located.

2.    The opportunity to cure has expired under applicable law and the loan agreement contract, or lien sought to be foreclosed.

3.    **Wells Fargo Bank, N.A.,** its successors and/or assigns ("Petitioner"), 4101

-1-                                    000008-001305.002

Certified Document Number: 57308983 - Page 1 of 60

Wiseman Boulevard, San Antonio, TX 78251 is the holder of the lien and is legally authorized to prosecute this foreclosure.

4.      On December 31, 2007, World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB.  On November 1, 2009, Wachovia Mortgage, FSB changed its name to Wells Fargo Bank, N.A. True and correct copies of the Affidavit of Name Change are attached hereto as **Exhibit 1** and **Exhibit 2** and are incorporated herein by reference.

5.      **Tina S. Alexander** ("Respondent") is an obligor under the loan agreement and may be served with citation with copy of application attached by first class and certified mail at his/her last known address: **12318 Mossycup, Houston, TX 77024.**

6.      **PROPERTY:** The property which is the subject of this Application is described by its commonly known street address as **12318 Mossycup, Houston, TX 77024** ("Subject Property") and more particularly described by its legal description as follows:

> **LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS**

7.      **TYPE OF LIEN:** The debt is secured by a Home Equity lien created under Tex. Const. art. XVI, Section 50(a)(6) as evidenced by the Texas Home Equity Security Instrument ("Security Instrument") dated **September 15, 1998** recorded under County Clerk File No. **T280637,** and re-recorded on January 25, 2006 under County Clerk File No. **Z049229** to add the Planned Unit Development Rider and Legal Description, in the Official Real Property Records of **Harris** County, Texas, as executed by **Tina S. Alexander.**

000008-001305.002

Certified Document Number: 57308983 - Page 2 of 60

8.   **AUTHORITY OF PETITIONER**: Petitioner is the holder of the Note and Deed of Trust as evidenced by the assignment(s) or other instruments attached hereto and may proceed with a foreclosure sale under the terms of the security instrument, Tex. Prop. Code § 51.002 and applicable law with respect to the secured Property made the subject of this proceeding.

9.   **PERSONS OBLIGATED TO PAY THE LIEN: Tina S. Alexander** executed the **Promissory Note** ("Note") dated **September 15, 1998,** in the original principal sum of **$296,000.00,** bearing interest and being payable as therein set out to the order of **World Savings Bank, a Federal Savings Bank,** and is the party who, according to the records of Petitioner, are obligated to pay the debt secured by the property (as hereinafter defined).

10.   **DEFAULT**: A default exists under the debt for failure to make payments due and owing under the Note and Security Instrument. **Tina S. Alexander** failed to remit the installment payment due for December 1, 2007 and the obligation secured by the lien sought to be foreclosed is in default.

A.   As of **September 3, 2013,** the loan agreement is in default a total of 70 months, including the **September 1, 2013** payment,

B.   As of **September 3, 2013,** the total amount to cure the debt is **$203,644.55.**

C.   As of **September 3, 2013,** the amount required to payoff the lien is **$562,761.01.**[1]

11.   Petitioner and/or its attorney has provided the requisite notice of default/notice of intent to accelerate and notice of acceleration to **Tina S. Alexander** (who signed the Note). Said notices were given by letter dated **August 3, 2011** and **March 28, 2012,** respectively, and mailed

---

1   The amounts referenced herein do not include attorneys' fees and costs associated with this Application. Interested parties can obtain an exact payoff and/or reinstatement quote by contacting Petitioner's undersigned counsel.

-3-                                                      000008-001305.002

Certified Document Number: 57308983 - Page 3 of 60

to **Tina S. Alexander** (who signed the Note) at the last known mailing address of **12318 Mossycup, Houston, TX 77024** (who signed the Note) as reflected in the records of Petitioner. The notice of default/right to cure/notice of intent to accelerate and notice of acceleration were given in accordance with Texas Property Code § 51.002, the Deed of Trust and applicable Texas law. The opportunity to cure has expired, and all other actions required under applicable Texas law and the loan agreement has been performed.

THIS APPLICATION IS NOT BEING SOUGHT AGAINST THE OCCUPANT OF THE PROPERTY UNLESS THE OCCUPANT IS ALSO NAMED AS A RESPONDENT IN THE APPLICATION.

IF THE PETITIONER OBTAINS A COURT ORDER, THE PETITIONER WILL PROCEED WITH A FORECLOSURE OF THE PROPERTY IN ACCORDANCE WITH APPLICABLE LAW AND THE TERMS OF THE LIEN SOUGHT TO BE FORECLOSED.

12.    Petitioner is informed and believes that the last known mailing address for Respondent is: **12318 Mossycup, Houston, TX 77024**. Petitioner's Certificate of Last Known Address is attached hereto as **Exhibit 3** and is incorporated herein by reference.

13.    Petitioner is informed and believes that Respondent is/are not in the military. Petitioner's Servicemembers' Affidavit is attached as **Exhibit 4** and is incorporated herein by reference.

14.    In further support of this Application, an Affidavit, which is attached and made part of this Application for all purposes, was made on personal knowledge and set forth facts as would be admissible in evidence.

WHEREFORE, PREMISES CONSIDERED, Petitioner, prays that upon final hearing,

000008-001305.002

Certified Document Number: 57308983 - Page 4 of 60

the Court enter an order pursuant to Tex. Const. art. XVI, § 50(a)(6)(D), allowing Petitioner to proceed with foreclosure and sell the Subject Property described herein in accordance with the security instrument and Texas Property Code § 51.002, and for all such other and further relief as may be justly entitled.

Respectfully submitted,

By: _Paul A. Hoefker_
Paul A. Hoefker
State Bar No. 09772800
Olga S. Panchenko
State Bar No. 24058773
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177–0935
(858) 750-7600 telephone
(619) 326-2430 telecopier
phoefker@piteduncan.com
Attorney for Petitioner
**WELLS FARGO BANK, N.A.**, its successors and/or assigns

-5-

000008-001305.002

Certified Document Number: 57308983 - Page 5 of 60

## AFFIDAVIT IN SUPPORT OF ORDER FOR FORECLOSURE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

The undersigned affiant, being first duly sworn, hereby states the following:

1. I am over the age of 18 and competent to testify as to the matters contained herein. Every statement contained in this affidavit in support of the TEX. RULE CIV. P. 736 Application for Home Equity Foreclosure Order is true and correct.

2. I am Gary Garza II, and am over the age of 18 years. I am a Vice President Loan Documentation of Wells Fargo Bank, N.A. (Wells Fargo), Plaintiff in the above-captioned mortgage foreclosure action, and as such I am authorized to execute this affidavit. In the regular performance of my job functions, I am familiar with business records maintained by Wells Fargo for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Wells Fargo. It is the regular practice of Wells Fargo mortgage servicing business to make these records. In connection with making this affidavit, I have acquired personal knowledge of the matters stated herein by examining these business records.

3. According to the business records of Wells Fargo, each Respondent's last known address is as follows:

> **TINA S. ALEXANDER**
> **12318 MOSSYCUP DR**
> **HOUSTON, TX 77024**

001-TXHE-V5

Certified Document Number: 5730983 - Page 6 of 60

4.     Tina S. Alexander (Hereafter "Obligor") is the maker and obligor of the debt evidenced by a Promissory Note ("Note" or "Debt"), a copy of which, consisting of 4 pages, is attached hereto as Exhibit A. The Note reflects that Obligor agreed to pay in regular installments the principal sum of $296,000.00 with interest as set out in the Note, and reasonable attorney fees and other expenses in the event of enforcement, all without personal liability of Obligor.

5.     Obligors executed a security instrument ("Deed of Trust"), a copy of which consisting of 21 pages, is attached hereto and incorporated herein in Exhibit B.

6.     Wells Fargo Bank, N.A., directly or through an agent, has possession of the Note. Wells Fargo Bank, N.A. is either the original payee of the Note or the Note has been duly indorsed. Copies of any assignments of the Deed of Trust or other pertinent instruments, if any, consisting of 3 pages, are attached hereto and incorporated herein in Exhibit C.

7.     Based upon the business records of Wells Fargo, and as of September 4, 2013:

     a.   Obligor failed to remit the installment payment due for December 1, 2007 and the installments that have become due after that date.

     b.   There are at least 70 unpaid scheduled payments.

     c.   The amount required to cure the default before September 3, 2013 is $203,644.55. This amount does not include attorneys' fees, late charges, interest, fees, costs, escrow advances or other lawful charges incurred after September 3, 2013, all of which will continue to accrue according to the terms of the Note and Deed of Trust.

001-TXHE-V5

d.  The total amount required to pay off the loan agreement, contract or lien in full before September 3, 2013  is $562,761.01.  This amount does not include attorneys' fees,  late charges, interest, fees, costs, escrow advances or other lawful charges incurred after September 3, 2013, all of which will continue to accrue according to the terms of the Note and Deed of Trust.

Wells Fargo Bank, N.A., directly or through an agent, has possession of the Promissory Note. Wells Fargo Bank, N.A. is either the original payee of the Promissory Note, or the Promissory note has been duly indorsed.

SEP 0 4 2013
_____
Date

Gary Garza II
_____
Affiant Printed Name

_____
Affiant Signature

Name: Gary Garza II
Title: Vice President Loan Documentation
Company: Wells Fargo Bank, N.A.
Date: September 4, 2013

State of Texas      )
County of Bexar    )

Sworn and subscribed to before me this _4th_ day of September, 2013.

CHRISTY JENKINS
My Commission Expires
June 17, 2017

Christy Jenkins
_____
Notary Public
My Commission expires: _06/17/2017_

001-TXHE-V5

<u>AFFIDAVIT IN SUPPORT OF ORDER FOR FORECLOSURE</u>

STATE OF TEXAS

COUNTY OF HARRIS

The undersigned affiant, being first duly sworn, hereby states the following:

1. I am over the age of 18 and competent to testify as to the matters contained herein. Every statement contained in this affidavit s within my personal knowledge and is true and correct.

2. I am currently an attorney employed by the law firm of Pite Duncan, LLP ("PD"), and am authorized to make this affidavit. In my capacity and in performing my duties, I have access to the business records of PD, and am authorized to make this affidavit. including the business records for and relating to the loan that is the subject of the Debt described in the TEX. RULE CIV. P. 736 APPLICATION FOR EXPEDITED FORECLOSURE. The facts stated in this Affidavit are also within my personal knowledge and stated based on my employment with PD, my responsibilities in said position and my review of the business records maintained by PD.

3. Information contained in this AFFIDAVIT in support of the TEX. RULE CIV. P. 736 APPLICATION FOR EXPEDITED FORECLOSURE is obtained from records kept by PD in the regular course of business, and it was the regular course of business for an employee or representative of PD with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the records or to transmit information thereof to be included in such records; and the records were made at or near the time or reasonably soon thereafter. The records attached to this affidavit are originals or exact duplicates of the original.

4. PD was retained by WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A. TO represent its interest in foreclosure proceeding for the Debt described in the TEX. RULE CIV. P. 736 APPLICATION FOR EXPEDITED FORECLOSURE.

Certified Document Number: 57308983 - Page 9 of 60

5.   At the request of WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS
FARGO BANK, N.A. the requisite Notice(s) of Intent has or have been mailed to:

**Tina S. Alexander**

True and correct copies of such notices and proof of their mailing, consisting of 2 pages,
are attached hereto and incorporated by reference as Exhibit D.

Paul A. Hoefker
State Bar No. 09772800
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177–0935
(858) 750-7600 telephone
(619) 326-2430 telecopier
phoefker@piteduncan.com
Attorney for Petitioner

Subscribed to and sworn before me this 16 day of September, 2013 by
Paul A Hoefker_____, known to me.

Notary Public

NATALIE GILLILAN
Notary Public, State of Texas
My Commission Expires
May 23, 2015

State of Texas_____
My Commission expires: 2015

Certified Document Number: 57308983 - Page 10 of 60

Certified Document Number: 5730983 - Page 11 of 60

# EXHIBIT 1

## SENIOR VICE PRESIDENT'S AFFIDAVIT OF NAME CHANGE

**STATE: California**

**COUNTY: Alameda**

I, _David S. Madsen_, being a duly appointed and acting Senior Vice President of Wachovia Mortgage, FSB, whose address is 1901 Harrison Street, Oakland, CA 94612, being first duly sworn on oath, deposes and says:

Effective December 31, 2007, World Savings Bank, FSB ("the Savings Bank") changed its name to Wachovia Mortgage, FSB as a result of an amendment to the charter and bylaws of the Savings Bank, which was accomplished in accordance with federal regulation as evidenced by the Notice of Amendment of Charter and Bylaws letter issued by the Office of Thrift Supervision ("OTS") (California), on November 19, 2007, and is on file in that office. A true and correct copy of that OTS letter is attached to this Affidavit as Exhibit "A".

_____
Senior Vice President

State of California          §
County of Alameda        §

Before me, _____, a Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity.

Given under my hand and seal of office this _____ day of _____, 20 _____.

(Seal)

_____
Signature of Notary Public

Certified Document Number: 57308983 - Page 12 of 60

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Alameda_ }

On _January 31, 2008_ before me, _James A. Oerther, Notary Public_
Here Insert Name and Title of the Officer

personally appeared _David S. Madsen_
Name(s) of Signer(s)

JAMES A. OERTHER
Commission # 1518575
Notary Public - California
Alameda County
My Comm. Expires Oct 9, 2008

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _James A. Oerther_
Signature of Notary Public

Place Notary Seal Above

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _Senior Vice President's Affidavit of Name Change_

Document Date: _1/31/2008_         Number of Pages: _1_

Signer(s) Other Than Named Above: _N/A_

### Capacity(ies) Claimed by Signer(s)

Signer's Name: _David S. Madsen_
☐ Individual
☒ Corporate Officer — Title(s): _SVP_
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

©2007 National Notary Association • 9350 De Soto Ave., P.O.Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

Certified Document Number: 57308983 - Page 13 of 60



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA  94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re:  World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office.  The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws.  The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

*Nicholas J. Dyer*

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta

# EXHIBIT "A"

Certified Document Number: 5730898.3 - Page 14 of 60

Certified Document Number: 57308983 - Page 15 of 60

# EXHIBIT 2

Certified Document Number: 57308983 - Page 16 of 60



**Comptroller of the Currency**
**Administrator of National Banks**

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:     Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
        bank and application to merge the converted bank with and into Wells Fargo Bank,
        National Association, Sioux Falls, South Dakota
        Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert



Certified Document Number: 57308983 - Page 17 of 60

# EXHIBIT 3

Cause No. _____

| | | |
|---|---|---|
| In re: Order for Foreclosure Concerning<br>**12318 MOSSYCUP**<br>**HOUSTON, TX 77024**<br>**under Tex. R. Civ. Proc. 736** | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| and | §<br>§ | |
| **TINA S. ALEXANDER**<br>("Respondent[s]") | §<br>§<br>§ | OF **HARRIS** COUNTY, TEXAS |
| and | §<br>§ | |
| **WELLS FARGO BANK, N.A.**<br>("Petitioner") | §<br>§<br>§ | JUDICIAL DISTRICT |

## CERTIFICATE OF LAST KNOWN ADDRESS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared **Paul A. Hoefker**, attorney of record for Plaintiff herein, who, after first being duly sworn, deposed and stated as follows:

I, **Paul A. Hoefker**, attorney of record for Plaintiff herein, certify that the last known mailing address for Respondent, **TINA S. ALEXANDER**, is: **12318 Mossycup, Houston, TX 77024**.

Paul A. Hoefker

SUBSCRIBED AND SWORN TO (OR AFFIRMED) before me, Natalie Gillilan on this 16 day of September 2013, by Paul H Hoefker, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

NATALIE GILLILAN
Notary Public, State of Texas
My Commission Expires
May 23, 2015

Signature of Notary Public

000008-001305.002

Certified Document Number: 57308983 - Page 19 of 60

# EXHIBIT 4

Cause No. ...........................

| | |
|---|---|
| **In re: Order for Foreclosure Concerning** § | IN THE DISTRICT COURT |
| **12318 MOSSYCUP** § | |
| **HOUSTON, TX 77024** § | |
| **under Tex. R. Civ. Proc. 736** § | |
| § | |
| **and** § | |
| § | |
| **TINA S. ALEXANDER** § | |
| ("Respondent[s]") § | OF HARRIS COUNTY, TEXAS |
| **and** § | |
| § | |
| **WELLS FARGO BANK, N.A.** § | |
| ("Petitioner") § | |
| § | JUDICIAL DISTRICT |
| § | |

## PLAINTIFF'S SERVICEMEMBERS' AFFIDAVIT

| | |
|---|---|
| THE STATE OF TEXAS | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned notary, on this day personally appeared **Paul A. Hoefker**, a person whose identity is known to me, and after administration of the oath, stated as follows:

"My name is **Paul A. Hoefker**. I am above the age of twenty-one (21) years, have never been convicted of a felony or a crime of moral turpitude and am competent to make this Affidavit. I am capable of making this Affidavit. I understand that if I make or use a military status affidavit, knowing it to be false, I may be fined, imprisoned for not more than one year, or both. See 50 U.S.C. App. Section 521(c). The facts stated in this Affidavit are within my personal knowledge and are true and correct.:

☒ Defendants are not in the military. In support, offer the following facts to show Defendants are not in the military: Per the Department of Defense Manpower Data Center Military Status Report, attached hereto as **Exhibit 1**, and incorporated herein by reference.

☐ Plaintiff asks the court to appoint an attorney to represent the Defendant because:
☐ Plaintiff is unable to determine if the Defendant is in the military. The Servicemember's Civil Relief Act of 2003, 50 U.S.C App. Section 521, requires the trial court to appoint an attorney to represent Defendant before a judgment may be rendered against him/her.
☐ Defendant is in the military The Servicemember's Civil Relief Act of 2003, 50 U.S.C App. Section 521, requires the court to appoint an attorney to represent Defendant before a judgment may be rendered against him/her.
I understand that costs for the attorney ad litem may be assessed against the Plaintiff as costs of court unless otherwise ordered by the court."

000008-001305.002

Certified Document Number: 57308983 - Page 20 of 60

Paul A. Hoefker

SUBSCRIBED AND SWORN TO (OR AFFIRMED) before me, Natalie G. Illian on this 16 day of September 2013 , by Paul A Hoefker personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature of Notary Public

NATALIE GILLILAN
Notary Public, State of Texas
My Commission Expires
May 23, 2015

000008-001305.002

Certified Document Number: 57308983 - Page 22 of 60

# EXHIBIT 4a

Department of Defense Manpower Data Center

Results as of: Aug-28-2013 04:03:42

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: ALEXANDER
First Name: TINA
Middle Name: S.
Active Duty Status As Of: Aug-28-2013

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected.

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: U45EDC44J0920B0

Certified Document Number: 57308983 - Page 25 of 60

# EXHIBIT A

(Page 1 of 4)

**WORLD SAVINGS BANK,**
**A FEDERAL SAVINGS BANK**



# NOTE

### TEXAS EQUITY FIXED RATE - FIRST LIEN

Loan Amount   **$298,000.00**

Loan Number:

Property Address:
**12318 MOSSYCUP**
**HOUSTON, TX  77024**

Date:  **SEPTEMBER 15, 1998**

**1.   BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S.   **$298,000.00.**
(this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
**WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK,**
    **ITS SUCCESSORS AND/OR ASSIGNEES.** I understand that the Lender may
transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
    Interest will be charged on unpaid principal until the full amount of principal has been paid.
I will pay interest at a yearly rate of  **7.750%.**
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 6(B) of this Note.

**3.   PAYMENTS**
    **(A) Time and Place of Payments**
    I will pay principal and interest by making payments every month.
    I will make my monthly payments on the   **1ST**   day of each month beginning on
**NOVEMBER 01, 1998.**     I will make these payments every month until I have paid all
of the principal and interest and any other charges described below that I may owe under
this Note. My monthly payments will be applied to interest before principal. If, on
**OCTOBER 01, 2028.**     I still owe amounts under this Note, I will pay those amounts
in full on that date, which is called the "maturity date."
    I will make my monthly payments at **1901 HARRISON STREET, OAKLAND,**
**CALIFORNIA  94612\* \* \* \* \* \* \* \* \* \* \* \* \* \***   or at a different place
if required by the Note Holder.

    **(B) Amount of Monthly Payments**
    My monthly payments will be in the amount of U.S.   **$2,120.59.**

**4.   BORROWER'S RIGHT TO PREPAY**
    I have the right to make payments of principal at any time before they are due. A
payment of principal only is known as a "prepayment." When I make a prepayment, I will tell
the Note Holder in writing that I am doing so.
    I may make a full prepayment or partial prepayments without paying any prepayment
charge. The Note Holder will use all of my prepayments to reduce the amount of principal
that I owe under this Note. If I make a partial prepayment, there will be no changes in the due
date or in the amount of my monthly payment unless the Note Holder agrees in writing to
those changes.

**5.   LOAN CHARGES AND LEGAL LIMITS**
    If a law, which applies to this loan and which sets maximum loan charges (including,
without limitation, Section 50(a)(6)(E), Article XVI of the Texas Constitution), is finally
interpreted so that the interest or other loan charges collected or to be collected in
connection with this loan exceed the permitted limits, then (i) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any
sums already collected from me which exceeded permitted limits will be refunded to me. The
Note Holder may choose to make this refund by reducing the principal I owe under this Note
or by making a direct payment to me. My acceptance of any such refund will constitute a
waiver of any right of action I might have arising out of such overcharge.

TEXAS FIXED RATE NOTE—Single Family
SD242A (07.03.98/1-98) 643A      Page 1 of 4      TX

Certified Document Number: 57308983 - Page 26 of 60

It is the express intention of the Note Holder and me to structure the extension of credit evidenced by this Note to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument, or any other related loan document transcends the limit of validity prescribed by applicable law, then any such promise, payment, obligation, or provision shall be reduced to the limit of such validity, or eliminated if necessary for compliance with such law, and such document(s) shall be reformed automatically without the necessity of the execution of any new amendment or new document.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of F I F T E E N   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 . 00%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing the extension of credit evidenced by this Note.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify the Note Holder of failure by the Note Holder to comply with the Note Holder's obligations under, or noncompliance with, any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

This Note and the lien securing same are authorized by the Texas Constitution, Article XVI, Section 50(a)(6). The Note is given without personal liability against each owner of the Property and the spouse of each owner, unless the owner or spouse obtained this extension of credit by actual fraud. If this extension of credit is obtained by actual fraud of any owner or the spouse of any owner, the Note Holder may enforce its rights under this Note against each person who signs this Note and each person who signs this Note is fully and personally liable for all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note.

Certified Document Number: 57308983 - Page 27 of 60

Certified Document Number: 5730898 - Page 28 of 60

If this extension of credit is not obtained by actual fraud, the Note Holder may enforce its rights under this Note and the Security Instrument only against the Property and Note Holder shall not seek or obtain a judgment for any deficiency in relation to the amounts owed under this Note against any person who signs this Note who is the owner of the Property or a spouse of an owner of the Property.

## 9. WAIVERS

I and any other person who has obligations under this Note waive notice of intention to accelerate, except as provided in Section 8(C) above, and the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE – ACCELERATION

In addition to the protections given to the Note Holder under this Note, a "Security Instrument," dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

The Loan is Not Assumable. The extension of credit evidenced by the Note may not be assumed by another Person.

## 11. CLERICAL ERRORS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such error.

## 12. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purpose.

(Page 4 of 4)

13. NO ORAL AGREEMENTS

THIS NOTE, THE SECURITY INSTRUMENT AND OTHER DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED .

BORROWER(S):

_____ (Seal)
TINA S. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Mailing Address: 12318 MOSSYCUP
HOUSTON, TX 77024

Certified Document Number: 57308983 - Page 29 of 60

TEXAS FIXED RATE NOTE— Single Family
SD2420 1 (92 03) MU1-98) C420

Page 4 of 4

FORM 3244 12/83
TX

Certified Document Number: 57308983 - Page 30 of 60

# EXHIBIT B

Exhibit B



RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS
CENTRAL PROCESSING CENTER
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER

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

FOR RECORDER'S USE ONLY

## TEXAS EQUITY DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE.

THE EXTENSION OF CREDIT SECURED BY THE LIEN OF THIS DEED OF TRUST IS THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
   (A)   Security Instrument. This Deed of Trust, which is dated SEPTEMBER 15, 1999, will be called the "Security Instrument."

   (B)   Borrower.   TINA S. ALEXANDER, AN UNMARRIED WOMAN

sometimes will be called "Borrower" and sometimes simply "I" or "me".

   (C)   Lender. WORLD SAVINGS BANK, A FEDERAL SAVINGS BANK * * * * * * * * * * * * * * , ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is A FEDERAL SAVINGS BANK * * * * * * which is organized and exists under the laws of the United States. Lender's address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612.

   (D)   Note. The note signed by Borrower and having the same date as this Security Instrument will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $206,000.00, plus accrued interest and such other amounts as stated in the Note. I have promised to pay this debt in monthly payments and to pay the debt in full by OCTOBER 01, 2029.

   (E)   Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

   (F)   Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

   (G)   Person. Any person, organization, governmental authority or other party will be called "Person."

   (H)   Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and Gary Bradley, 4105 Wiseman Boulevard, San Antonio, Texas 78251, is the "Trustee."

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST   JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy



Certified Document Number: 57308983 - Page 31 of 60

Title Data, Inc. LB TDI18950 HA 2049229.001

Certified Document Number: 57308983 - Page 32 of 60

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

II.   **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust, for Lender, with a power of sale based as provided in Paragraph 24 below, subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee those rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note, including any changes to the Note made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Note and any changes to the Note made with the written consent of Lender.

III.   **DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)   The property which is located at 12818 HOBBYCUP , HOUSTON , TX 77024 . The legal description of this property is attached as Exhibit "A" which is made a part of this Security Instrument. This property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Described Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All minerals, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (i) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section;

(x)   All casualty and condemnation proceeds relating to the Described Property; and

(xi)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A certified copy

ATTEST:   JAN 19 2006

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

Title Data, Inc. LS TD118850 HA 2049229.002

## COVENANTS

I promise and I agree with Lender as follows:

1. BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Note and any late charges due under the Note.

2. PAYMENTS FOR TAXES AND INSURANCE

(A) Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

(B) Escrow Account

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and time prescribed by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 20, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

[signature] Deputy

Certified Document Number: 57308983 - Page 33 of 60

Title Data, Inc. LG 20115859 HA 2049229.003

3.   **APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any charges due to Lender under this Security Instrument;
Second, to pay the amounts due to Lender under Paragraph 2 above;
Third, to pay interest due under the Note;
Fourth, to pay principal due under the Note;
Last, to pay late charges due under the Note.

4.   **BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien". I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.   **BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. This insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Note and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds". Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST    JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
COD T. IHEN

Certified Document Number: 57308983 - Page 34 of 60

Title Data, Inc. LS TDI1895G HA X049229 004

Certified Document Number: 57308983 - Page 35 of 60

If any Proceeds are used to reduce the amount of principal which I owe to Lender under this Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those changes.

If Lender acquires the Property under Paragraph 24 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7 will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Note. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.    LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

If all of the Property is taken by condemnation, eminent domain or other governmental taking, the proceeds from all awards or claims of damages or from a sale of all or any part of the Property to avoid such governmental taking will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:        JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

                                     Deputy
CUD T. LIEN

Title Data, Inc. LB TDI18850 HA 6049229.005

If any payments are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraph 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)   Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Person, who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

**(B)   Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 34 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Note and under this Security Instrument.

**11.   OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.

**12.   MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law providing, without limitation, Article XVI, Section 50(a)(6)(Q) of the Texas Constitution which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 12916 MOSSYVILLE, HOUSTON, TX 77024. * * * * * * * * * * * * * * *

A notice will be given to me at an alternate address if I give Lender a notice of the alternate address. I may designate only one mailing address at a time for notification purposes. Any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I, (C) above entitled "Definitions of Words Used in this Deed of Trust" unless Lender gives me notice of a different address. However, if the purpose of the notice is to notify Lender of failure by Lender to comply with Lender's obligations under, or unconscionability with, any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice be verified such is required. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

55-MP-TX-DEED-1-98 2000                        DEED OF TRUST-TX 50(a)(6)                        TX
                                               Page 6

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST:   JAN 09 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
DUG T. WEN

Certified Document Number: 5730983 - Page 36 of 60

Title Data, Inc. LS TDI18850 HA Z049229.006



15.   **GOVERNING LAW; SEVERABILITY**
      This Security Instrument and the Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Security Instrument or the Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted, and shall not affect the remaining provisions of this Security Instrument or the Note.

16.   **BORROWER'S COPY**
      I acknowledge the receipt of one conformed copy of the Note and of this Security Instrument.

17.   **LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**
      If the Property is no longer my homestead and if Lender requires immediate payment in full or I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

      If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 24, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to pay the sums secured by this Security Instrument. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.   **INJURY TO PROPERTY; LENDER'S RIGHTS**
      I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. Upon the request of Lender, I will assign those rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce those rights in its own name and may apply any proceeds for injury or damage to the Property or to any amounts that I may owe to Lender under the Note and this Security Instrument, after deducting any expenses, including attorneys' fees, incurred in enforcing these rights.

19.   **CLERICAL ERRORS**
      In the event Lender at any time discovers that this Security Instrument, the Note or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such errors and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

20.   **LOST, STOLEN OR MUTILATED DOCUMENTS**
      If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

Certified Document Number: 5308983 - Page 37 of 60

Title Data, Inc. LS TD118880 HA Z049229.007

**21. WAIVER OF STATUTE OF LIMITATIONS**
I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or the Note.

**22. CAPTIONS**
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23. MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project" and I have an interest in the common elements of the Project, then Lender and I agree that:

(A) If an owners association or other entity, called "Owners Association" holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B) The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project (ii) By-laws of the Owners Association (iii) Code of regulations for the Project (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association (v) The Project's regulations, conditions and restrictions and (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including any obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C) If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D) I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally (iii) termination of professional management and assumption of self-management of the Owners Association or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
SUC Y. LIEN

Title Data, Inc. LS TD116950 HA 2649029.008

26. NONRECOURSE

27. SUBSTITUTION OF TRUSTEE

28. PROPERTY IS HOMESTEAD; ACKNOWLEDGMENTS CONCERNING DEBTS

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL,
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:   JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
OUC T. LIEN

Title Data, Inc. LS TDI18850 HA 2049229.009

Certified Document Number: 57308983 - Page 39 of 60



Certified Document Number: 57308983 - Page 40 of 60

34.   **RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

_[body text illegible due to scan quality]_

35.   **WAIVER OF NOTICE OF INTENTION TO ACCELERATE**
      I waive the right to notice of intention to require immediate payment in full of all Sums Secured except as provided in Paragraph 34.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

JAN 1 9 2006

ATTEST: BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

                                        Deputy

Certified Document Number: 5730983 - Page 41 of 60



**28.   HOME EQUITY LENDING COMPLIANCE**

THIS SPACE INTENTIONALLY LEFT BLANK.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy

Certified Document Number: 57308983 · Page 42 of 60

Title Data, Inc. LS TOI18850 HA Z049229.012

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider signed by me and recorded in proper official records.

YOU MUST SIGN THIS DOCUMENT AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED.

PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW.

BORROWERS:

_____ (Seal)
TINA S. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGMENT

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

Title Data, Inc. LS TGI18850 HA 2049229.013

Certified Document Number: 5730983 - Page 43 of 60

SINGLE ACKNOWLEDGEMENT

STATE OF    TEXAS        }
COUNTY OF   HARRIS       }

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

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared TINA S. ALEXANDER

known to me to be the person(s) whose name(s) subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the ____ day of ____ 1998 , A.D.

[L.S.]

SEAL

Notary Public in and for HARRIS County, TEXAS

Notary Name

Notary Expiration Date

RP 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

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST   JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy

Title Data, Inc. LS TDX18859 HA 2049229.014

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

## WORLD SAVINGS

### E X H I B I T  "A"
### LEGAL DESCRIPTION

LOAN NO. ........

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF HARRIS
STATE OF TEXAS  * * * * * * * , DESCRIBED AS FOLLOWS:

TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF
COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:    JAN 19 2006

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

GUO T. LIEN

Title Data, Inc.  LS TDX11985D RA 2009229.015



Certified Document Number: 57308983 - Page 46 of 60

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY
ATTEST JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy

Title Data, Inc. LS TD118850 HA 2049229.016



PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property, which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage", then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

MULTISTATE PUD RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT    FORM 3150 8/90

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

Certified Document Number: 57308983 - Page 47 of 60

Title Data, Inc. LS TDI18853 HA 2045229.017

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

THIS SPACE INTENTIONALLY LEFT BLANK.

MULTISTATE PUD RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT          FORM 3150 3/93
SOURCE (Macintosh) Copy                                    Page 2          ALL STATES EXCEPT CO, HI, FL, MD, ND, WA

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:   JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy
GUS Y. LIEN

Certified Document Number: 57308983 - Page 48 of 60

Title Data, Inc. LS TDY18855 HA 2049229.018

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

[PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW]

BORROWER(S):

_____ (Seal)
TINA T. ALEXANDER

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Mailing Address:   12318 MOSSYCUP
HOUSTON, TX  77024

ATTACH INDIVIDUAL  NOTARY ACKNOWLEDGEMENT

MULTISTATE PUD RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT       FORM 3150 9/90
Page 2 of 4       ALL STATES EXCEPT CO, DC, FL, MA, NE, NM, NC, PA, VA

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW

A CERTIFIED COPY:
ATTEST:   JAN 19 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ , Deputy
SUC T. LIEN

Certified Document Number: 5730983 - Page 49 of 60

Title Data, Inc. LB TDI18860 HA Z049229.019

Certified Document Number: 57308983 - Page 50 of 60

SINGLE ACKNOWLEDGEMENT

STATE OF   TEXAS

COUNTY OF  HARRIS

BEFORE ME, the undersigned, a Notary Public in and for said County and State on this day personally appeared TINA S. ALEXANDER

known to me to be the person(s) whose name(s) subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 16 day of September 1998, A.D.

N.B.:

Notary Public in and for HARRIS COUNTY, TEXAS

SEAL

Notary Name

Notary Expiration Date

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER THE FEDERAL LAW.

A CERTIFIED COPY
ATTEST: JAN 1 9 2006
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

CUC T. LEN         Deputy

Title Data, Inc. LS TDI18850 HA 2649229.020

This document is being re-recorded to include the "Exhibit A", legal description listed below that was missing from the original Deed of Trust that was recorded on September 22, 1998 in Harris County Clerk's File No. T280637.

"EXHIBIT A"

Lot Fourteen (14), in Block Thirteen (13), of FROSTWOOD, SECTION TWO (2), an addition in Harris County, Texas according to the map or plat thereof recorded in Volume 77, Page 52 of the Map Records of Harris County

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

JAN 2 5 2006

COUNTY CLERK
HARRIS COUNTY, TEXAS

Return To:  Stewart Title Houston Division
Underwriting Department
4700 W. Sam Houston Pkwy. #100
Houston, TX 77041

Attn: Victor Davis

Title Data, Inc. LS TDI19850 HA Z049229.021

Certified Document Number: 57308983 - Page 51 of 60

Certified Document Number: 57308983 - Page 52 of 60

# EXHIBIT C



Exhibit C

Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re: Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national bank and application to merge the converted bank with and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota
Application Control Numbers: 2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the name Wells Fargo Bank Southwest, National Association, effective November 1, 2009. This is also the official certification to merge Wells Fargo Bank Southwest, National Association with and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at: Stephen.Lybarger@occ.treas.gov. Please reference the application control number or numbers in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division — NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

*Nicholas J. Dyer*

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta

# EXHIBIT "A"

Certified Document Number: 57308983 - Page 54 of 60

January 2, 2008

ATTENTION

Re:  Amendment of World Savings Bank, FSB's charter to change its name

As you know, on October 1, 2006, Golden West Financial Corporation, parent company of World Savings Bank, FSB ("World"), merged with Wachovia Corporation. Since October 1, 2006, the two institutions have undergone several integration procedures, one of which has been an amendment of World's charter to reflect a name amendment. Effective December 31, 2007, World Savings Bank, FSB became known as **Wachovia Mortgage, FSB.**

The charter amendment and/or name change may affect various matters relating to mortgage loans for which you have been retained. Accordingly, this letter is intended to provide guidance in your efforts to represent Wachovia Mortgage, FSB in those loan related matters. Subject to particular state or local rules, the name change should not require any special pleadings. All pleadings or documents prepared subsequent to December 30, 2007 both in furtherance of any outstanding legal matter or new matter in which the underlying documents reflect World, should set forth a statement of the charter amendment and refer to the surviving entity as, **"World Savings Bank, FSB, now known as Wachovia Mortgage, FSB"** or **"Wachovia Mortgage, FSB formerly known as World Savings Bank, FSB".**  Should you need a Secretary's Affidavit please contact me.

Should you determine that your jurisdiction requires some other pleading or notice other than as set forth above, which would generate additional attorney fees or costs, please contact me before proceeding forward.

Sincerely,

Kristi Garcia
Assistant General Counsel, Wachovia Corp.
on behalf of Wachovia Mortgage, FSB, its subsidiary
4101 Wiseman Blvd., MC TX1621
San Antonio, TX 78250
tel. 210-543-5747  fax 210-543-3015
kristi.garcia@wachovia.com



PITE
DUNCAN
LLP

*[attorney names in left margin, illegible]*

August 3, 2011

**<u>VIA CERTIFIED MAIL-RETURN RECEIPT REQUESTED</u>**
**<u>AND FIRST-CLASS MAIL</u>**

Tina S. Alexander
12318 Mossycup
Houston, TX 77024

Re:   **<u>Property Address: 12318 Mossycup, Houston, TX 77024</u>**
      **Loan No.:**
      **Our File No.: 000008-001305.002**

Dear Ms. Alexander:

This firm has been authorized by the holder of the note, Wells Fargo Bank, N.A. ("Creditor"), on the above-referenced home loan (hereinafter referred to as "the Debt"), to contact you regarding the status of your account.

You are hereby provided formal notice that you are in default under the terms and conditions of the Note and Security Instrument (i.e., Deed of Trust, Mortgage, etc.) for failure to pay the required installments when due.

This letter serves as further notice that Creditor intends to enforce the provisions of the Note and Security Instrument. You must pay the full amount of the default on this loan by the thirty-third (33rd) day from the date of this letter, which is September 5, 2011 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). If you do not pay the full amount of the default on or before the date specified in this notice, Creditor, will thereafter accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property without further notice, demand, or other action. If you received a bankruptcy discharge which included this debt, this notice is not intended and does not constitute an attempt to collect a debt against you personally. Notice provisions may be contained within your mortgage/deed of trust which notice may be required prior to foreclosure.

You are hereby informed that you have the right to "cure" or reinstate the loan after acceleration and the right to bring a court action asserting the non-existence of a default or any other defense you may have to acceleration and sale.

> **This is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose. If you have received a discharge in bankruptcy, we do not seek a money judgment against you, but we seek only possession of the collateral which is security for the debt.**

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
*See above or visit www.piteduncan.com re individual attorney admissions.*

PITE
DUNCAN, LLP

August 3, 2011
Page 2

**As of August 3, 2011, the date of this letter, the amount of the debt that Creditor is seeking to collect is $124,863.14,** which includes the sum of payments that have come due on and after the date of default, December 1, 2007; late charges; periodic adjustments to the payment amount (if applicable); and $155.59 in additional debt for attorneys' fees and costs that have been incurred by Creditor to protect its interest in the property and/or rights under the Security Instrument. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day that you pay may be greater. Please be advised that as of September 1, 2011, the amount of the debt will also include the September 2011 payment and will be $126,983.75.

Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-500-8757. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current delinquency.

Please note, however, that your right to cure this default as referenced herein does not suspend your payment obligations. Pursuant to the terms of the Note, your September 2011 installment is still due on September 1, 2011 (or if said date(s) falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). In addition, any advances made by Creditor to protect their lien position must be added to the total amount necessary to cure the default. Please disregard this notice if a payment sufficient to cure the default has already been sent.

**Federal law gives you thirty days after you receive this letter to dispute the validity of this debt or any part of it. Unless you dispute the debt within that 30-day period, we will assume that it is valid. If you notify this law firm in writing at the firm address within the 30-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and will mail you a copy of the verification via first-class mail. Also, upon your written request within 30 days of this notice, we will provide you with the name and address of your original creditor on this loan, if it is different from the current creditor.**

A "CURE" or "Reinstatement Right" similar to that described in the prior paragraph may be available in many states. NO PERSON IN THIS LAW OFFICE WILL GIVE YOU ANY LEGAL ADVICE. If, at any time, you make a written request to this law firm not to be contacted by phone at your place of employment, we will not do so. If, at any time, you make a written request to this law firm not to contact you, we will not do so, except by legal action.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by Creditor.

Creditor would like you to be aware that if you are unable to make payments or resume payments within a reasonable period of time due to a reduction in your income resulting from a loss or reduction in your employment, you may be eligible for Homeownership Counseling. Please contact the HUD toll free number (800-569-4287) to obtain a list of HUD-approved nonprofit organizations servicing your residential area.

This is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose. If you have received a discharge in bankruptcy, we do not seek a money judgment against you, but we seek only possession of the collateral which is security for the debt.

2502189.wpd

PITE
DUNCAN, LLP

August 3, 2011
Page 3

Creditor requests that all payments be made in **certified funds, cashier's check or money order(s)** payable to and mailed to Wachovia Mortgage, FSB, to one of the below addresses (always include Loan # **with your payment):**

Wells Fargo Bank, N.A.
Attn: Cashiering Department
4101 Wiseman Boulevard
San Antonio, TX 78251

All written correspondence should be forwarded to:

**Gemma R. Galeoto**
**Pite Duncan, LLP**
**4375 Jutland Drive, Suite 200**
**P.O. Box 17935**
**San Diego, CA 92177-0935**

Sincerely,

Gemma R. Galeoto
ggaleoto@piteduncan.com
(858) 750-7600

cc:    Wachovia Mortgage, FSB



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

OFFICIAL USE

Postage | $
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee   5.59
(Endorsement Required)
Total Po                                      Postmark
Here

Tina S. Alexander
12318 Mossycup
Houston, TX 77024

This is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose.  If you have received a discharge in bankruptcy, we do not seek a money judgment against you, but we seek only possession of the collateral which is security for the debt.

Certified Document Number: 57308983 - Page 59 of 60

2502189.wpd



Certified Document Number: 57308983 - Page 60 of 60



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   September 16, 2013

Certified Document Number:        57308983 Total Pages:  60

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

EXPEDITED FORECLOSURE    CAUSE NO. 2013-54353
RECEIPT NO. 468816

Del_CTM/FCM__
-TR# 72947946

| Plaintiff: | In The 127th |
|---|---|
| WELLS FARGO BANK, N.A., ITS SUCCESSORS AND/OR ASSIGNS | Judicial District Court of |
| vs. | Harris County, Texas |
| Defendant: | |
| TINA S. ALEXANDER | Houston, Texas |

**CITATION BY CERTIFIED & FIRST CLASS MAIL**
**Expedited Order Proceeding (TRC 106, 736)**

**THE STATE OF TEXAS**
**County of Harris**
    **In Re: Order of Foreclosure Concerning (12318 MOSSYCUP, HOUSTON, TEXAS 77024)**
    **To: TINA S. ALEXANDER**
        **12318 MOSSYCUP**
        **HOUSTON, TEXAS 77024**

    Attached is a copy of: **APPLICATION FOR EXPEDITED FORECLOSURE PROCEEDING PURSUANT TO RULE 736 OF THE TEXAS RULES OF CIVIL PROCEDURE**

This instrument was filed on the 16th **day of SEPTEMBER, 2013** in the above cited cause number and court. The instrument attached describes the claim against you.

    **YOU HAVE BEEN NOTIFIED.** You may employ an attorney. If you or your attorney do not file a written response with the Harris County District Clerk's Office who issued this citation by the first Monday after the expiration of 38 days from the date the citation was placed in the custody of the U.S. Postal Service, the Applicant may file a motion for a default order of foreclosure. On the 19th **day of SEPTEMBER, 2013** the citation was placed in the custody of the U.S. Postal Service in accordance with the clerk's standard mailing procedures. If the court grants the motion, a foreclosure sale will be conducted on the following property: **(12318 MOSSYCUP, HOUSTON, TEXAS 77024).**

**THE OFFICER SERVING:**
    This citation was issued on the 19th **day of SEPTEMBER, 2013** under my hand and seal of said court.

Issued at the request of:

PAUL A. HOEFKER
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
SAN DIEGO, CA 92177
Phone #858-750-7600
Bar Number: 09772800

CHRIS DANIEL, District Clerk

Harris County, Texas
201 Caroline Houston Texas 77002

(PO Box 4651, Houston, Texas 77210)

By: _Jerri Coble_
Deputy: JERRI COBLE

**OFFICER - AUTHORIZED PERSON RETURN**

CAUSE # _____                        COURT# _____

Came to hand the _____ day of _____, 20_____, and executed by mailing to Defendant first class mail and certified mail, return receipt requested, restricted delivery, a true copy of this citation together with an attached copy of _____ to the following address:

_____           Address

Service was executed in accordance with Rule 736 TRCP, upon the Defendant as evidenced by the return receipt incorporated herein and attached hereto at
Addressee

_____

_____

On _____ day of _____, 20_____

by U.S. Postal delivery.
**CHRIS DANIEL**, District Clerk
HARRIS COUNTY, T E X A S

Certified Mail Tracking # _____
And First Class Mail

By: _____
    Deputy:

# Exhibit "38"



**PITE**
**DUNCAN**
LLP

**San Diego**

Steven W. Pite CA/NV/WA
John D. Duncan CA/WA
Peter J. Salmon CA/ID/UT/WA
David E. McAllister AZ/CA/HI/OR/UT/WA

Rochelle L. Stanford AZ/CA/OR/WA
Josephine E. Salmon AK/AZ/CA/NY
Laurel I. Handley AZ/CA/ID/NV
Daniel R. Gamez CA/TX
Eddie R. Jimenez CA/NV/TX
Susan L. Petit AK/CA/WA
Douglas A. Toleno AZ/CA
Cuong M. Nguyen CA/NV
Casper J. Rankin CA
Charles A. Correia CA
Melodie A. Whitson CA
Brian A. Paino CA/TX/VA
Christopher M. McDermott CA
Jillian A. Benbow CA
Thomas N. Abbott CA
Tracy D. Mabry TX
Drew A. Callahan CA
Natalie T. Nguyen CA
Alyssa K. McCorkle AZ/CA
Caroline M. Robert CA
Genail M. Anderson CA
Ellen Cha CA/MN
Jose A. Garcia CA
Erin L. Laney CA
Angela M. Fontanini CA
Jacque A. Gruber CA
John B. Acierno CA
William L. Partridge CA
Christopher L. Peterson CA
Katie L. Johnson CA

*Mailing*
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935

*Overnight*
4375 Jutland Drive, Suite 200
San Diego, CA 92117

Ph.: (858) 750-7600
Fax: (619) 590-1385

**Orange County**
Bruce J. Quilligan CA
Kerry W. Franich CA/NV
Elana J. Moeder CA
Bryan T. Brown CO/TX
Michael J. Fox CA

1820 E. First St., Ste. 420
Santa Ana, CA 92705
Ph: (714) 285-2633
Fax: (714) 285-2668

**Arizona Office**
Charles L. Firestein
Phoenix, AZ

**Hawaii Office**
David B. Rosen
Honolulu, HI

**Washington Office**
Seattle, WA

**Texas Office**
William P. Weaver, Jr.
San Antonio, TX

April 28, 2009

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Tina S. Alexander
12318 Mossycup
Houston, TX 77024

Re:   **Wachovia Mortgage, FSB v. Alexander**
      **Case No.:**    **2008-30835**
      **Loan No.:**    **0010585743**
      **Property:**    **12318 Mossycup, Houston, TX 77024**
      **Our File No.: 000008-001305.001**

Dear Ms. Alexander:

Pursuant to your request, I have obtained an escrow breakdown for the above referenced loan. Please review the documents and contact me at your earliest convenience to discuss this matter further. I can be reached at (619) 326-2408.

I look forward to speaking with you soon.

Respectfully,

PITE DUNCAN, LLP

Daniel R. Gamez

Enclosure

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
*See above or visit www.piteduncan.com re individual attorney admissions.*

 **WACHOVIA**

### ESCROW BREAKDOWN

**LOAN #:** 10585743
**BORROWER:** Tina S Alexander
**PROPERTY ADDRESS:** 12318 Mossycup, Houston TX 77024-4907

| PAYMENT DATE | DESCRIPTION | PAYMENTS TO ESCROW | DISBURSEMENTS FROM ESCROW | BALANCE |
|---|---|---|---|---|
| 03/01/05 | Harris County Taxes 2002 | | -1,521.64 | ($1,521.64) |
| 03/01/05 | Harris County Taxes 2003 | | -1,748.54 | ($3,270.18) |
| 03/01/05 | Harris County Taxes 2004 | | -1,923.29 | ($5,193.47) |
| 03/01/05 | Penalty | | -1,857.91 | ($7,051.38) |
| 03/01/05 | City of Houston 2002 | | -1,542.19 | ($8,593.57) |
| 03/01/05 | City of Houston 2003 | | -1,772.17 | ($10,365.74) |
| 03/01/05 | City of Houston 2004 | | -1,934.40 | ($12,300.14) |
| 03/01/08 | Penalty | | -1,881.66 | ($14,181.80) |
| 03/01/05 | Spring Branch ISD 2002 | | -3,363.95 | ($17,545.75) |
| 03/01/05 | Spring Branch ISD 2003 | | -4,625.64 | ($22,171.39) |
| 03/01/05 | Spring Branch ISD 2004 | | -5,115.06 | ($27,286.45) |
| 03/01/05 | Penalty | | -4,511.92 | ($31,798.37) |
| 03/01/05 | Additional Costs | | -453.00 | ($32,251.37) |
| 03/01/05 | Abstractors fee | | -250.00 | ($32,501.37) |
| 03/01/05 | Tax master fee | | -50.00 | ($32,551.37) |
| 03/18/05 | Tax Bill and Court Order | | -4,204.89 | ($36,756.26) |
| 03/23/05 | Delinquent Taxes o4/fy Harris Ct | | -3,857.69 | ($40,613.95) |
| 03/23/05 | Penalty | | -347.20 | ($40,961.15) |
| 10/14/05 | Harris County 02 base | | -2,195.54 | ($43,156.69) |
| 10/14/05 | Penalty | | -1,624.70 | ($44,781.39) |
| 10/14/05 | Harris County 03 base | | -3,520.71 | ($48,302.10) |
| 10/14/05 | Penalty | | -2,098.36 | ($50,400.46) |
| 10/14/05 | ISD Tax office 02 base | | -1,991.09 | ($52,391.55) |
| 10/14/05 | Penalty | | -1,329.05 | ($53,720.60) |
| 10/14/05 | ISD Tax office 03 bse | | -4,625.64 | ($58,346.24) |
| 10/14/05 | Penalty | | -2,449.28 | ($60,795.52) |
| 10/14/05 | ISD Tax office 04 base | | -5,115.06 | ($65,910.58) |
| 10/14/05 | Penalty | | -2,002.54 | ($67,913.12) |
| 07/31/06 | County taxes 02 base | | -2,195.54 | ($70,108.66) |
| 07/31/06 | County taxes 03 base | | -3,520.71 | ($73,629.37) |
| 07/31/06 | County taxes 05 base | | -3,945.48 | ($77,574.85) |
| 07/31/06 | Penalty | | -6,097.66 | ($83,672.51) |
| 07/31/06 | ISD 02 base | | -5,248.28 | ($88,920.79) |
| 07/31/06 | ISD 03 base | | -4,625.64 | ($93,546.43) |
| 07/31/06 | ISD 04 base | | -5,115.06 | ($98,661.49) |
| 07/31/06 | ISD 05 base | | -5,248.28 | ($103,909.77) |
| 07/31/06 | Penalty | | -6,840.72 | ($110,750.49) |

 **WACHOVIA**

**ESCROW BREAKDOWN**

LOAN #:   10585743
BORROWER:   Tina S. Alexander
PROPERTY ADDRESS:   12318 Mossycup, Houston, TX 77024-4907

| PAYMENT DATE | DESCRIPTION | PAYMENTS TO ESCROW | DISBURSEMENTS FROM ESCROW | BALANCE |
|---|---|---|---|---|
| 01/01/05 | | | | $0.00 |
| 03/23/05 | County Tax Payment | | 3,857.69 | $3,857.69 |
| 03/23/05 | Tax Penalty | | 347.20 | $4,204.89 |
| 04/01/05 | Insurance Pyament | | 5,286.33 | $9,491.22 |
| 04/05/05 | Insurance Refund | $5,286.33 | | $4,204.89 |
| 04/12/05 | Tax Payment & Penalty Refund | $4,204.89 | | $0.00 |
| 04/18/05 | Insurance Payment | | 5,286.33 | $5,286.33 |
| 02/15/09 | Insurance Refund | $5,286.33 | 5,286.33 | $5,286.33 |
| 03/09/07 | Tax Penalty | | 470.54 | $5,756.87 |
| 03/09/07 | Tax Penalty | | 389.84 | $6,146.71 |
| 03/13/07 | Insurance Payment | | 5,286.33 | $11,433.04 |
| 03/30/07 | Misapplication Reversal/Corp Advance | | 55,568.26 | $67,001.30 |
| 03/30/07 | Misapplication Reversal/Corp Advance | | 15,861.51 | $82,862.81 |
| 10/02/07 | Payment | $440.53 | | $82,422.28 |
| 10/02/07 | Payment | $440.53 | | $81,981.75 |
| 10/02/07 | Payment | $440.53 | | $81,541.22 |
| 10/02/07 | Payment | $440.53 | | $81,100.69 |
| 10/02/07 | Payment | $440.53 | | $80,660.16 |
| 10/12/07 | Payment | $440.53 | | $80,219.63 |
| 03/18/08 | Insurance Payment | | 5,284.31 | $85,503.94 |

# Exhibit "39"

Loan No. xxxxx5743

## NOTICE OF RESCISSION OF ACCELERATION

**THE STATE OF TEXAS**

**COUNTY OF HARRIS**

On September 15, 1998, TINA S. ALEXANDER executed and delivered to, as Trustee, a certain Texas Home Equity Security Instrument ("Security Instrument") which was recorded as File No. T280637, on September 22, 1998, in the Official Public Records of Real Property of Harris County, Texas, and described as:

**LOT FOURTEEN (14), IN BLOCK THIRTEEN (13) OF FROSTWOOD, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 77, PAGE 52 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS**

The Security Instrument was given to secure the payment of Texas Home Equity Note ("Note") of even date, in the original principal sum of $296,000.00, executed by Tina S. Alexander ("Borrower") and payable to World Savings Bank, a Federal Savings Bank. The Note is now held by WELLS FARGO BANK, N.A., its successors and/or assigns ("Lender").

Default occurred in the terms of the Note and/or Security Instrument and Lender provided notice to Borrower of said default, and of Lender's intent to accelerate maturity of the Note if the default was not cured within a specified period of time; and

Because the default was not cured, Lender accelerated the maturity of the Note on March 28, 2012, and declared all unpaid sums owing thereunder to be immediately due and payable; and

NOW, THEREFORE, Lender, without prejudice or waiver of any right or remedy available to it by reason of past or future default by Borrower, other than the specified defaults, hereby rescinds Acceleration of the debt and maturity of the Note. The Note and Security Instrument are now in effect in accordance with their original terms and conditions, as though no acceleration took place. Lender expressly requires full performance of any and all terms, conditions or requirements set forth in the Note and Security Instrument or any other documents executed by the parties to the indebtedness.

The validity of the Security Instrument or the perfection of any liens securing payment of the Note are not diminished in any way and this Notice is not intended, nor should it be construed to waive, release or limit any rights Lender would otherwise have under the terms of the Note and Security Instrument. Lender retains all rights of recourse against any and all parties obligated under the terms of the Note and/or Security Instrument. It is unnecessary for this

Loan No. xxxxx5743

Notice to be executed by any party other than Lender or its attorneys, agents or other authorized representatives whose actions benefit Lender.

Executed on March _6_, 2014

PITE DUNCAN, LLP

By: _____
Paul A. Hoefker
State Bar No. 09772800
Olga S. Panchenko
State Bar No. 24058773
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600 telephone
(619) 326-2430 telecopier
phoefker@piteduncan.com
Attorney for Petitioner
**WELLS FARGO BANK, N.A.,** its
successors and/or assigns

Acknowledgment

State of Texas            §
                          §
County of Harris          §

This instrument was acknowledged before me on March 6, 2014, by Paul A. Hoefker

_____
Notary Public – State of Texas

NATALIE GILLILAN
Notary Public, State of Texas
My Commission Expires
May 23, 2015

Tina S. Alexander                    C/M R.R.R. 7013 1710 0000 7505 4392
12318 Mossycup                       AND REGULAR U.S. MAIL
Houston, TX, 77024

# Exhibit "40 A"

March 17, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
12859 Kimberly Lane,
Houston, TX 77024

Mr Rueben Guzman, branch manager, refused to accept my payment for the following reason:

> He said I had to call 1-800-642-0257 because their system would not accept my offered payment. Wells Fargo's system showed a different account number for my loan and my account said loan was from Wisconson & was paid off. Finally located my under a different name. Said to call # & find out how to get payment processed. Refused to sign statement.

_____   Date: _____
Branch Manager:

_Tina Alexander_   Date: 3-17-2014
Tina Alexander

_Julius K Fetter_   Date: 3-17-2014
Witnessed by:   Julius "Kim" Fetter

\* Note Called 1-800-642-0257 & they said loan still in foreclosure - despite recission that was sent and to call 1-855-519-3481; They said did not know what was happening & to call back. 3-17-2014 late afternoon

# Exhibit "40 B"

March 18, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
901 Gessner
Houston, TX 77024

_Jan Gage_____, branch manager, refused to accept my payment for the following reason:

> Said system would not accept payment and I needed to call 1-800-642-0257. Told her I did that yesterday & it sent me to legal who knew nothing. She suggested I try & call again.
>
> ~~Refused~~ to sign.

_____ Date: _____
Branch Manager:

_Tina Alexander_____ Date: 3-18-14
Tina Alexander

_Julius K Fetter_____ Date: 3-18-214
Witnessed by:   Julius "Kim" Fetter

* called #'s again and got run around again. Spent 45 min. on hold for calls.

# Exhibit "40 C"

April 2, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
12850 Memorial Dr.
Houston, TX 77024

*Michele Nguyen* branch manager, refused to accept my payment for the following reason:

System told would not allow payment to be accepted. Said I needed to call 1-800-642-0257. Did not want to sign

* Despite Receiver, system still reflected - foreclosure.

_____  Date: _____
Branch Manager:

_____  Date: 4-2-14
Tina Alexander

_____  Date: 4-2-2014
Witnessed by:   Julius "Kim" Fetter

# Exhibit "40 D"

April 21, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
1304 Blalock Dr.
Houston, TX 77055

*Eric Ordonez*, branch manager, refused to accept my payment for the following reason:

> Want to deposit payment & System refused.
> Said to call 1-800-642-0257.
> I explained my frustration for not being
> to make payment.
> Did not want to sign. & suggested I continue
> to call # provided

_____  Date: _____
Branch Manager:

*Tina Sedhyaide*  Date: 4-21-14
Tina Alexander

*Julius K. Fetter*  Date: 4-21-2014
Witnessed by:   Julius "Kim" Fetter

# Exhibit "40 E"

May 1, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
7846 Longpoint Rd
Houston, TX 77055

_Maria Giugra_, branch manager, refused to accept my payment for the following reason:

System would not accept payment &
said to call 1800-642-0257.
Very frustrated & left.
Would not sign, just said I needed
to call.

_____ Date: _____
Branch Manager:

_Tina Alexander_ Date: 5-1-14
Tina Alexander

_Julius K Fetter_ Date: 5-1-2014
Witnessed by:   Julius "Kim" Fetter

# Exhibit "40 F"

May 12, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
2824 Hillcroft
Houston, TX 77057

*Andre Padda*, branch manager, refused to accept my payment for the following reason:

> System would not accept payment.
> Said to call 1800-642-0257
> D/N want to sign.
> Said to call & good luck

_____ Date: _____
**Branch Manager:**

_____ Date: 5-12-14
**Tina Alexander**

_____ Date: 5-12-2014
Witnessed by:   Julius "Kim" Fetter

# Exhibit "40 G"

June 3, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
1625 S. Voss Rd
Houston, TX 77057

_Mike Dim_ , branch manager, refused to accept my payment for the following reason:

System would not accept payment & just said to call 1800-642-0257. Refuse to sign & suggest I keep calling the #.

_____   Date: _____
Branch Manager:

_Tina Alexander_ Date: 6-3-14
Tina Alexander

_Julius K Fetter_ Date: 6-3-2014
Witnessed by:   Julius "Kim" Fetter

# Exhibit "40 H"

June 17, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
9413 Katy Freeway
Houston, TX 77024

_Brian Konwa_, branch manager, refused to accept my payment for the following reason:

System w/ not accept pmt.
Said to call same damn # 1800 642-0257
Would not sign

Very Frustrated

_____   Date: _____
Branch Manager:

_____   Date: 6-17-14
Tina Alexander

_____   Date: 6-17-2014
Witnessed by:   Julius "Kim" Fetter

# Exhibit "40 I"

July 8, 2014

On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:

Wells Fargo Bank, N.A.
5650 Memorial Dr.
Houston, TX 77007

_Rachael Bakes_, branch manager, refused to accept my payment for the following reason:

Very nice but but System will not accept payment. Said to call 1800-642-0257. Did not sign

can get No where w/ calling # b/c if refers one on. Have Spent that hours trying to give Wells Fargo $.

_____   Date:
Branch Manager:

_Tina Alexander_   Date: 7-8-14
Tina Alexander

_Julius K. Fetter_   Date: 7-8-2014
Witnessed by:   Julius "Kim" Fetter