United States District Court
Southern District of Texas
**ENTERED**
May 12, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TINA ALEXANDER,                    §
                                   §
          Plaintiff,               §
                                   §
v.                                 §
                                   §
WELLS FARGO BANK, N.A. f/k/a       §    CIVIL ACTION NO. H-15-1596
WACHOVIA MORTGAGE, FSB, f/k/a      §
WORLD SAVINGS BANK, FSB, ITS       §
SUCCESSORS AND/OR ASSIGNS, and     §
"DOES" 1-10,                       §
                                   §
          Defendants.              §

## MEMORANDUM OPINION AND ORDER

Plaintiff Tina Alexander ("Alexander" or "Plaintiff"), pro se, brought this action against Wells Fargo Bank, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB ("Defendant") and "Does 1-10" in the 165th Judicial District Court of Harris County, Texas.[1]  The case was transferred to the 127th Judicial District Court of Harris County, Texas, and Defendant subsequently removed the action to this court.[2]  Pending

---

[1]See Plaintiffs' Original Petition and Request for Declaratory Judgement and Temporary Restraining Order ("Petition"), Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 2-31.  Does 1-10 are various bank employees Alexander communicated with regarding her loan.  Alexander has not named any of the Doe defendants, and the court's file does not reflect that they have been served.  Alexander's claims against them will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  See Order for Conference and Disclosure of Interested Parties, Docket Entry No. 7, p. 2 ¶ 9.

[2]See Notice of Removal, Docket Entry No. 6; Transfer Order, Exhibit I to Notice of Removal, Docket Entry No. 6-9.

before the court is Defendant's Motion to Dismiss and Brief in Support ("Motion to Dismiss"), Docket Entry No. 18.  For the reasons stated below, the Motion to Dismiss will be granted, and this action will be dismissed with prejudice.

## I. Background

The Petition contains an extensive and detailed factual background that is summarized here.  On September 15, 1998, Alexander executed a promissory note in the amount of $296,000.00 made payable to Defendant.[3]  She also executed a Deed of Trust to secure its repayment (together, the "Loan"), granting Defendant a security interest in her home located at 12318 Mossycup, Houston, Texas 77024 (the "Property").[4]

On June 14, 2002, Alexander discovered that there was no Acknowledgment of Fair Market Value or appraisal of the home in her

---

[3]See Note, Texas Equity Fixed Rate - First Lien (the "Note"), Exhibit 1 to Petition, Docket Entry No. 6-5, pp. 33-36.  World Savings Bank was the original lender.  World Savings Bank, FSB changed its name to Wachovia Mortgage, which later merged into Wells Fargo.  See Ogundipe v. Wells Fargo Bank, N.A., Civ. Action No. H-11-2387, 2012 WL 3234211, at *1 (S.D. Tex. Aug. 6, 2012) ("It is undisputed that World Savings Bank changed its name to Wachovia Mortgage, and that Wachovia Mortgage subsequently merged into Wells Fargo."); Olaoye v. Wells Fargo Bank, NA, Civ. Action No. 4:11-cv-772-Y, 2012 WL 1082307, at *1 n.1; *3 n.4 (N.D. Tex. April 2, 2012).  Since the name of the bank at the time is not relevant to this opinion, Wells Fargo and its predecessors are referred to as Defendant.

[4]See Texas Equity Deed of Trust ("Deed of Trust"), Exhibit 2 to Petition, Docket Entry No. 6-5, pp. 38-50.

personal files on the home.[5]  Alexander sent Defendant a letter the next day requesting a copy of the Fair Market Value Acknowledgment from their files, but Defendant never responded.[6]  On September 1, 2005, Alexander fell behind on her payments, and on June 8, 2006, Defendant sent Alexander a notice of acceleration with a copy of an application for an order for foreclosure.[7]

A year later, on June 3, 2007, Alexander filed for Chapter 13 Bankruptcy.[8]  On July 25, 2007, the Chapter 13 bankruptcy filing was dismissed and Defendant was given leave to proceed with foreclosure.[9]  On September 7, 2007, Defendant sent Alexander another notice of acceleration.[10]  On September 19 Defendant sent

---

[5]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 5 ¶ 14.

[6]See id. ¶ 15; Letter Re: Appraisal and FMV Acknowledgement [o]n Loan Number: 0010585743 dated June 15, 2002, from Alexander to Defendant, Exhibit 3 to Petition, Docket Entry No. 6-5, p. 52.

[7]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 5 ¶¶ 16-17; June 8, 2006, Notice of Acceleration, Exhibit 4 to Petition, Docket Entry No. 6-5, pp. 54-55; Application for Order for Foreclosure, Exhibit 5 to Petition, Docket Entry No. 6-5, pp. 57-59.

[8]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 5 ¶ 18.  Alexander did not attach any of the filings from her bankruptcy case to the Petition.

[9]See id. ¶ 19.

[10]See id. at 6 ¶ 20; September 7, 2007, Notice of Acceleration and Notice of Posting & Foreclosure, Exhibit 6 to Petition, Docket Entry No. 6-5, p. 64.  This exhibit includes Notice of Trustee's Sale scheduled for October 2, 2007, and an Order to Proceed with Notice of Foreclosure Sale and Foreclosure Sale signed on February 5, 2006.  Id. at 61-63.

Alexander a Reinstatement Quote listing a total of $105,440.15 to reinstate the loan.[11]   On September 28, 2007, Alexander faxed Mr. Lara, an employee in Defendant's foreclosure department, a confirmation of wire transfer of funds to Defendant in the amount of $106,000.00.[12]

On October 12, 2007, Alexander contacted Defendant regarding the regular monthly payment of the reinstated loan.[13]   She received a letter dated October 3, 2007, stating that "World Savings is pleased to inform you that we have received and processed the funds to reinstate the above referenced loan.   The loan is now due for the October 01, 2007 payment in the amount of $ 2,561,12."[14] Defendant verbally indicated that an additional $440.53 was added to the October 1 payment to clear the final escrow amount, and that

---

[11]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 6 ¶ 21; Reinstatement Quote, Exhibit 7 to Petition, Docket Entry No. 6-5, pp. 66-67.   This exhibit includes a Letter dated September 19, 2007, Re: Reinstated Quote for Loan Number: 0010585743 from Alexander to Mr. Mike Lara, employee of Defendant. Id. at 68.

[12]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 6-7 ¶¶ 22; Fax Cover Sheet and Wachovia Wire Transfer of Funds Request, dated 9/28/2007, Exhibit 8 to Petition, Docket Entry No. 6-5, pp. 70-71.

[13]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 7 ¶ 23.

[14]See id.; Letter dated October 3, 2007, from Defendant to Alexander (stating "World Savings is pleased to inform you that we have received and processed the funds to reinstate the above referenced loan"), Exhibit 10 to Petition, Docket Entry No. 6-5, p. 76; Loan Statement with a payment due date of 10/01/07, id. at 75.

-4-

regular monthly payments would return to $2,120.59 after that.[15] Alexander made the October monthly payment and single forbearance payment and received a confirmation from Defendant in the mail.[16]

On October 15, 2007, Defendant forwarded to Alexander an Annual Escrow Account Disclosure Statement dated October 4, 2007, which reflected a new monthly payment amount of $8,768.85 effective December 1, 2007.[17]   Alexander immediately contacted Defendant and was told that the Annual Escrow Account Disclosure Statement was in error.[18]

On October 16, 2007, Alexander received a Loan Statement dated October 6, 2007, which demanded $11,350.21 in payment, including a past-due amount of $8,789.09, made up of the October 1, 2007, payment totaling $2,561.12 and an additional $6,227.97 in fees

---

[15]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 7 ¶ 23.  The Petition is not clear how the contact on October 12 occurred, but it indicates that Alexander discussed the October payment with an employee and made that payment telephonically.

[16]See id.; October 12, 2007, Letter Re: 0010585743, acknowledging a one-time payment in the amount of $2,561.12 per Alexander's verbal authorization, Exhibit 9 to Petition, Docket Entry No. 6-5, p. 73.

[17]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 7 ¶ 24; Annual Escrow Account Disclosure Statement dated October 4, 2007, reflecting a change from current monthly loan payment of $2,561.12 to new monthly loan payment of $8,768.85 effective December 1, 2007, Exhibit 11 to Petition, Docket Entry No. 6-5, pp. 78-79.

[18]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 7 ¶ 24.

due.[19]   Alexander called Defendant and was told to ignore the October 6, 2007, statement because Defendant had received Alexander's October 1, 2007, payment and that the $6,227.97 in fees was still being cleared from escrow disbursements on her monthly loan statements.[20]   Defendant also told Alexander that it was still applying her reinstatement funds, and the discrepancies would be cleared up and she would receive an accounting of the applied reinstatement funds.[21]   Alexander then contacted Defendant by mail to inquire into the discrepancy between the Annual Escrow Account Disclosure Statement, Defendant's statement that the Annual Escrow Account Disclosure Statement was in error, the Loan Statement dated October 6, 2007, and the acknowledgment of her October 12, 2007, payment, and to confirm and document what she was told over the telephone.[22]

Alexander mailed another letter to Defendant on October 20, 2007, reflecting her confusion and frustration that she had received conflicting accountings and demands, none of which reflected that the Loan terms had been reinstated.[23]   After

---

[19]See id. at 7-8 ¶ 25.   Loan Statement dated 10/06/07, Exhibit 12 to Petition, Docket Entry No. 6-5, p. 81.

[20]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 8 ¶ 25.

[21]See id.

[22]See id.; Letter dated October 16, 2007, from Alexander to Defendant, Exhibit 13 to Petition, Docket Entry No. 6-5, pp. 83-84.

[23]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 8-9 ¶ 26.   Letter dated October 20, 2007, from
(continued...)

receiving a Loan Statement dated October 18, 2007, which reflected an escrow balance of $80,219.63 that was not included on the previous statements,[24] Alexander sent Defendant a third letter on October 29, 2007.[25]   This letter also details the conflicting information she was receiving regarding the status of her loan.[26]

On November 1, 2007, Alexander attempted to make the "regular monthly payment of $2,120.59, as previously instructed," but Defendant refused the payment, stating that an additional $6,227.97 in past due fees also had to be paid.[27]   During this conversation Alexander explained that Defendant had previously told her that World Savings Bank, FSB was transitioning to Wachovia Mortgage,

---

[23](...continued)
Alexander to Defendant, Exhibit 14 to Petition, Docket Entry No. 6-5, p. 86.

[24]The previous statement says that a loan History Statement will follow under separate cover, rather than including that information under the "Transaction Activity" heading.   See Loan Statement dated 10/06/07, Exhibit 12 to Petition, Docket Entry No. 6-5, p. 81.

[25]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 9 ¶ 27; October 18, 2007, Loan Statement that reflects a choice between making the minimum payment due of $8,789.09 or a 15-year payment plan payment of $11,248.67, Exhibit 14 to Petition, Docket Entry No. 6-5, p. 87 (this loan statement was erroneously included as part of Exhibit 14, but is referred to as Exhibit 15 in the Petition).   This statement appears to reflect the $2,561 October payment made by telephone.

[26]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 9 ¶ 27; Letter dated October 29, 2007, from Alexander to Defendant, Exhibit 16 to Petition, id. at 89-90.

[27]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 9-10 ¶ 28.

FSB, and that some funds might have been applied incorrectly.[28] Alexander told Defendant that the loan was fully reinstated and that she had previously enquired about the escrow balance and was told Defendant would look into the issue.[29] Defendant's employee still insisted that she pay either $8,789.09 or $11,248.67, as directed on the loan statement dated October 18, 2007.[30]

On November 20, 2007, Alexander received a refund of $61.00 for "overpayment of foreclosing fees and cost as a result of an estimated quote."[31] A week later, Alexander received a Loan Statement in the mail that showed a total payment due of $14,182.97 by December 1, 2007.[32] When Alexander contacted Defendant to ask why she received a refund if she still owed money, she was told to disregard earlier loan statements and that Defendant would only accept $14,182.97.[33] On November 27, 2007, Alexander sent Defendant a letter "pointing out that Defendant had forwarded multiple loan

---

[28]See id.

[29]See id.

[30]See id.

[31]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 10 ¶ 29. See Letter dated November 20, 2007, from Defendant to Alexander, Exhibit 17 to Petition, Docket Entry No. 6-5, pp. 92-93. The letter states "[w]e appreciate your recent remittance of funds to reinstate your loan."

[32]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 10 ¶ 30. See Loan Statement dated 11/20/07, Exhibit 18 to Petition, Docket Entry No. 6-5, p. 95.

[33]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 10-11 ¶ 30.

statements for the same period with conflicting demands for payment, and that none of the statements reflected the terms of Plaintiff's loan agreement that had been reinstated," and that she had tried to make the "accurate reinstated loan payments" for both November and December but Defendant refused them.[34]   Then, on November 28, 2007, Alexander received a letter from Defendant informing her that her November payment had not been received and demanding the payment of $5,414.12 immediately.[35]   Alexander responded by mail on November 28, 2007, mentioning the letter she sent the previous day.[36]   This letter again requests a complete and accurate accounting of the loan and states that Defendant is in breach of the loan agreement.[37]

In December of 2007 Alexander received a "Notice of Intent to Foreclose" dated December 4, 2007.[38]   The notice states that

---

[34]See id.; Letter dated November 27, 2007, from Alexander to Defendant, Exhibit 19 to Petition, Docket Entry No. 6-5, pp. 97–98.

[35]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 11 ¶ 31; Letter dated November 21, 2007, from Defendant to Alexander, Exhibit 20 to Petition, Docket Entry No. 6-5, p. 100.

[36]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 12 ¶ 31.   See Letter dated November 28, 2007, from Alexander to Defendant, Exhibit 21 to Petition, Docket Entry No. 6-5, pp. 102–03.

[37]See Letter dated November 28, 2007, from Alexander to Defendant, Exhibit 21 to Petition, Docket Entry No. 6-5, pp. 102–03.

[38]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 12–13 ¶ 32.   See Notice of Intent to Foreclose dated December 4, 2007, Exhibit 22 to Petition, Docket Entry No. 6-5, pp. 105–06.

Defendant has not received Alexander's last two mortgage payments and that the loan is in default.[39]   It demanded payment of $14,182.97 within 30 days of the date of the notice and stated that failure to cure the default on or before January 3, 2008, would result in acceleration of the sums secured by the Security Instrument, making the entire loan immediately due and payable.[40] Alexander responded by letter on December 11, 2007.[41]   She also called Defendant to explain the situation, but was told to pay the most current statement.[42]   She expressed frustration with the conflicting demands and Defendant's refusal to accept her "correct reinstated loan payment of $2,120.59 for November 2007 and December 2007 . . . ."[43]

On December 17, 2007, Alexander received a letter stating that "[w]e are very concerned about the past due payment(s) on your mortgage.  The total payment(s) due to [Defendant] as of today is

---

[39]See Notice of Intent to Foreclose dated December 4, 2007, Exhibit 22 to Petition, Docket Entry No. 6-5, pp. 105-06.

[40]See id.

[41]See id.; Letter Re: Reinstated Loan Number: 0010585743 from Alexander to Defendant, Exhibit 23 to Petition, Docket Entry No. 6-5, pp. 108-09.

[42]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 13 ¶ 32.

[43]See Letter Re: Reinstated Loan Number: 0010585743 from Alexander to Defendant, Exhibit 23 to Petition, Docket Entry No. 6-5, p. 109.

$14,289.00."[44]   This  letter  warned  Alexander  of  the  credit
implications  of  foreclosure  and  urged  her  to  contact  a  loan
counselor  to  discuss  her  options.[45]  Alexander  called  to  ask  why  she
had  not  received  an  accounting  with  explanations,  why  none  of  the
payment  demands  reflected  the  reinstated  loan  agreement,  and  why
the  mysteriously  appearing  escrow  that  Defendant  previously  told
her  was  incorrect  had  not  been  corrected.[46]  Alexander  was  told  to
pay  the  amount  demanded  in  the  December  17th  letter  or  face
foreclosure.[47]  Alexander  mailed  Defendant  a  letter  reiterating  her
confusion  and  concerns  on  December  21,  2007.[48]  Alexander  sent
another  on  December  27th.[49]  This  one  detailed,  in  bullet  points,

---

[44]See Petition, Exhibit E to Notice of Removal, Docket Entry
No. 6-5, pp. 14-15 ¶ 33; Letter dated December 17, 2007, from
Defendant to Alexander, Exhibit 24 to Petition, Docket Entry
No. 6-5, p. 111.

[45]See Letter dated December 17, 2007, from Defendant to
Alexander, Exhibit 24 to Petition, Docket Entry No. 6-5, p. 111.

[46]See Petition, Exhibit E to Notice of Removal, Docket Entry
No. 6-5, p. 14 ¶ 33.

[47]See id.

[48]See Letter dated December 21, 2007, from Alexander to
Defendant, Exhibit 25 to Petition, Docket Entry No. 6-5, p. 113.

[49]See Petition, Exhibit E to Notice of Removal, Docket Entry
No. 6-5, p. 15 ¶ 34; Letter dated December 27, 2007, from Alexander
to Defendant, Exhibit 26 to Petition, Docket Entry No. 6-5,
pp. 115-18.   This  letter  mentions  a  loan  statement  dated
December 20, 2007, reflecting an amount due of $23,057.85, but this
loan statement is not attached to the Petition.

-11-

Alexander's communications with Defendant in September of 2007, when she received the Reinstatement Quote.[50]

Alexander received a notice of acceleration of the Loan on April 25, 2008.[51] The same day she sent Defendant a letter along with copies of her prior correspondence.[52] Alexander summarized her position in bullet points as follows:

- The Loan Agreement is a Contract.

- I performed under the contract until you refused to accept payment as specified in the loan agreement.

- World Savings/Wachovia breached the Loan Agreement by refusing the contractually specified payments and providing inaccurate and widely varying accountings and payment demands.

- World Savings/Wachovia pursuing legal action and attempting to seize my home is causing me harm.

- I was unable to act and was forced to not perform, because World Savings/Wachovia breached the loan agreement, despite repeated requests for clear accountings with explanations and warnings of their breach, World Savings/Wachovia refused to repair the breach.

---

[50]See Letter dated December 27, 2007, from Alexander to Defendant, Exhibit 26 to Petition, Docket Entry No. 6-5, pp. 115-18.

[51]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 15-16 ¶ 35; Notice of Acceleration of Texas Non-Recourse Home Equity Loan dated April 18, 2008, from Pite Duncan LLP (representing Defendant) to Alexander, Exhibit 27 to Petition, Docket Entry No. 6-5, pp. 120-21.

[52]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 15-16 ¶ 35. See Letter dated April 25, 2008, from Alexander to Defendant, Exhibit 28 to Petition, Docket Entry No. 6-5, p. 123. This exhibit includes the forwarded correspondence. See id. at 124-39.

On June 5, 2008, Alexander received a notice that an application for foreclosure had been filed by Defendant on May 19, 2008.[53]

The Petition does not contain any facts about what occurred over the next year, but on May 3, 2009, Alexander received an "Escrow Breakdown" from Defendant.[54] In July of 2009 Defendant sent another notice of application for expedited foreclosure.[55] On October 9, 2009, Alexander attended an oral hearing in the 157th District Court of Harris County. The court ordered Alexander to pay the regular monthly payment of $2,120.00 each month for three months.[56] On October 12, 2009, Alexander attempted to make a

---

[53]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 16 ¶ 36.  See In re: Order for Foreclosure Concerning TINA S. ALEXANDER and 12318 MOSSYCUP, HOUSTON HOUSTON [sic] TX 77024, Cause No. 2008-30835, Exhibit 29 to Petition, Docket Entry No. 6-5, pp. 141-42. The notice includes a copy of the Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rule of Civil Procedure and its exhibits. Id. at 143-77.

[54]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 16 ¶ 37. The "Escrow Breakdown" is not attached.

[55]See id. at 16-17 ¶ 38. See Letter Re: Cause No. 2009-42370; WACHOVIA MORTGAGE, FSB, FKA WORLD SAVINGS BANK, FSB, its successors and/or assigns/TINA S. ALEXANDER; In the 157th Judicial District Court of Harris, Texas, Exhibit 30 to Petition, Docket Entry No. 6-5, p. 179, with attachments: Notice to Tina S. Alexander that an application for non-judicial foreclosure has been filed (id. at 180-81) and Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure (id. at 182-222).

[56]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 17 ¶ 39. The record of this hearing is not attached. Alexander alleges that she "informed Judge Wilson that [Defendant] had refused to accept [her] reinstated loan payment of $2,120.59 numerous times in the past." Id. Judge Wilson "did not order
(continued...)

-13-

monthly payment of $2,120, but Defendant refused to accept it[57] because Alexander "was only able to effectuate payment through [Defendant's] counsel of record."[58]   The same sequence of events occurred on November 19, 2009, and December 16, 2009.[59]

Defendant's counsel provided Alexander an Escrow Breakdown on January 8, 2010.[60]   The Escrow Breakdown covered the period from

---

[56](...continued)
[Defendant] to accept the payments, but that [Alexander] should make the payments even 'if you have to camp out in Wachovia's offices.'"   Id.

[57]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 17 ¶ 40.

[58]See id.; Bank of America|Online Banking|Transaction Image Print - Check Image 001763 (referencing Loan #0010585743), Exhibit 31 to Petition, Docket Entry No. 6-5, p. 224.   The check image itself is difficult to read, but appears to be dated 11/12/09, although 10-12-09 is handwritten elsewhere on the printed page.   There is a stamped date of Nov. 20, 2009, on the check image itself, apparently from Wachovia Mortgage.   See Petition, Docket Entry No. 6-5, p. 17 ¶ 40.

[59]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 17-18 ¶¶ 41-42.   See Bank of America|Online Banking|Transaction Image Print - Check Image 001779 (10585743) dated 11/19/09 (stamp dated November 27, 2009), Exhibit 32 to Petition, Docket Entry No. 6-5, p. 226; Bank of America|Online Banking|Transaction Image Print - Check Image 001802 (10585743) dated 12/15/09 (stamp dated January 21, 2010), Exhibit 33 to Petition, Docket Entry No. 6-5, p. 228.

[60]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 18 ¶ 43.   A handwritten notation at the bottom of the exhibit states "1-8-2010 attorney for Wachovia gave this to me at court."   See Escrow Breakdown for Loan #10585743, Exhibit 34 to Petition, Docket Entry No. 6-5, p. 230.   Exhibit 38 to the Petition, not referenced therein, is a letter to Alexander Re: Wachovia Mortgage, FSB v. Alexander, Case No. 2008-30835, dated April 28, 2009.   It states "Pursuant to your request, I have obtained an escrow breakdown for the above referenced loan."   See Exhibit 38 to Petition, Docket Entry No. 6-5, pp. 307-09.
(continued...)

-14-

March 1, 2005, to July 31, 2006, and reflected a cumulative balance
of disbursements from escrow of $110,750.49.[61]  On January 30, 2010,
Alexander received an IRS Form 1098 Mortgage Interest Statement
that did not reflect any principal payments in 2009, even though
Alexander had made two payments in 2009 as ordered by the
Harris County District Court.[62]  On February 10, 2010, the court
entered an order permitting Defendant to foreclose on the lien.[63]

The Petition does not reflect what occurred over the next
year.  On January 30, 2011, Defendant sent Alexander an IRS Form
1098 Mortgage Interest Statement for 2010.[64]  Approximately two-and-
a-half years later, Defendant filed an application for expedited

---

[60] (...continued)
Exhibit 38 contains the same "Escrow Breakdown" page as Exhibit 34
(without the handwritten notation) and an additional "Escrow
Breakdown" page.

[61] Petition, Exhibit E to Notice of Removal, Docket Entry
No. 6-5, p. 18 ¶ 43.  Alexander alleges that Defendant "paid [] the
exact same tax bills three separate times."  Id.

[62] See Petition, Exhibit E to Notice of Removal, Docket Entry
No. 6-5, p. 18 ¶ 44; 2009 Form 1098 Mortgage Interest Statement,
Exhibit 35 to Petition, Docket Entry No. 6-5, p. 232.

[63] See Petition, Exhibit E to Notice of Removal, Docket Entry
No. 6-5, p. 18 ¶ 45.  The order is not attached.

[64] See Petition, Exhibit E to Notice of Removal, Docket Entry
No. 6-5, p. 19 ¶ 46.  The Petition erroneously refers to this
exhibit as the Form 1098 for 2009.  See 2010 Form 1098 Mortgage
Interest Statement, Exhibit 36 to Petition, Docket Entry No. 6-5,
p. 234.  The Petition is unclear on the issue, as this form
reflects a "late charges pd" of 2,120.00, which is the amount
Alexander alleges she paid in 2010.  See Bank of America|Online
Banking|Transaction Image Print - Check Image 001802 (10585743)
dated 12/15/09 (stamp dated January 21, 2010), Exhibit 33 to
Petition, Docket Entry No. 6-5, p. 228.

foreclosure pursuant to Rule 736 of the Texas Rules of Civil Procedure.[65]  Defendant received an Order to Proceed with Notice of Foreclosure Sale and Foreclosure Sale on November 8, 2013.[66]

The substitute trustee's sale of the Property was scheduled for March 4, 2014.[67]  On March 3, 2014, Alexander filed a Complaint and Application for a Temporary Restraining Order against Defendant.[68]  Three days later, Defendant executed a Notice of Rescission of Acceleration.[69]  On March 18, 2014, "based upon the

---

[65]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 19 ¶ 47; Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure, Exhibit 37 to Petition, Docket Entry No. 6-5, pp. 245-305.  The Petition states "there is a copy of a demand for payment but no notice of acceleration."  Petition, Docket Entry No. 6-5, p. 19 ¶ 47.  However, the application relies on earlier notice of intent to accelerate and notice of acceleration from August of 2011 and March of 2012.  See Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure, Exhibit 37 to Petition, Docket Entry No. 6-5, p. 247.

[66]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 19 ¶ 47; Order to Proceed with Notice of Foreclosure Sale and Foreclosure Sale, Exhibit 37 to Petition, Docket Entry No. 6-5, pp. 240-44.  See also Notice of Prior Acceleration of Indebtedness and Enclosing Notice of Substitute Trustee's Sale Relative to Texas Non-Recourse Home Equity Loan dated January 30, 2014, and Notice of Substitute Trustee's Sale, id. at 236-39.

[67]See Notice of Prior Acceleration of Indebtedness and Enclosing Notice of Substitute Trustee's Sale Relative to Texas Non-Recourse Home Equity Loan dated January 30, 2014, and Notice of Substitute Trustee's Sale, Exhibit 37 to Petition, Docket Entry No. 6-5, p. 238.

[68]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 19 ¶ 48.  This complaint is not attached and the Petition does not state what court it was filed in.

[69]See id. at 19 ¶ 49; Notice of Rescission of Acceleration dated March 6, 2014, Exhibit 39 to Petition, Docket Entry No. 6-5, pp. 311-12.

inducement of the Notice of Rescission," Alexander moved to dismiss her pending complaint in the United States District Court for the Southern District of Texas.[70]   The action was dismissed without prejudice on March 18, 2014.[71] Following that dismissal, Alexander, "in an act of forbearance, attempted to pay the contractually specified payment to the Defendant, physically at various branches of the Defendant's business."[72]   These attempts occurred between March 10, 2014, and July 25, 2014.[73] The result of her attempts was generally the same at each branch; Defendant's system would not

---

[70]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 19 ¶ 50.   The motion to dismiss is not attached. Alexander alleges that the action was removed to federal court on March 13, 2014.

[71]See id.   The order of dismissal is not attached.

[72]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 19 ¶ 51.

[73]Plaintiff documented these attempts with dated statements that contain a blank for the name of the branch manager, a box for handwritten notes about the encounter, and three signature lines. Each page states "On the above date, Tina Alexander attempted to pay $2,120.59, a monthly payment, on loan number 10585743 at:" and lists the branch address.   Above the box for notes the page states "_____, branch manager, refused to accept my payment for the following reason:"   Each is signed by Alexander and a witness, Julius "Kim" Fetter.   There is a blank for the branch manager's signature, but none are signed by a branch manager.   See Exhibits 40A-40I to Petition, Docket Entry No. 6-5, pp. 314-30, dated March 17, 2014, March 18, 2014, April 2, 2014, April 21, 2014, May 1, 2014, May 12, 2014, June 3, 2014, June 17, 2014, and July 8, 2014 (although the Petition states the attempts continued through July 25, 2014).   On at least one occasion, Defendant identified Alexander's account as belonging to another person in a different state.   See March 17, 2014, Statement, Exhibit 40A to Petition, Docket Entry No. 6-5, p. 314.

-17-

accept the proffered payment because her account was in foreclosure, and Alexander was told to call a 1-800 number.[74]

On July 28, 2014, Defendant forwarded a Notice of Acceleration of Texas Non-Recourse Home Equity Loan to Alexander.[75]   On September 2, 2014, Defendant filed an Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure.[76]   A trustee sale of the Property was set for May 5, 2015, but apparently did not occur.[77]   Alexander filed her Petition on May 4, 2015, asserting claims for Texas constitutional violations, breach of contract, negligent misrepresentation, and violation of the duty of good faith and fair dealing, seeking injunctive and declaratory relief.[78]

---

[74]See Exhibits 40A-40I to Petition, Docket Entry No. 6-5, pp. 314-30.

[75]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 20 ¶ 52.  Alexander did not attach a copy of this notice.

[76]See id. at 20 ¶ 53.  Alexander did not attach a copy of this application.

[77]See id. at 20 ¶ 54.

[78]See id. at 20, 21, 23, 26.  On the first page of the Petition in this list of violations, Alexander alleges that Defendant violated the Texas Deceptive Trade Practices Act and the "Ogden Notice Requirement."   See id. at 2.   The Petition does not reference these claims again.   Such conclusory, bare-bones allegations fail "to raise a right to relief above a speculative level."   Twombly, 127 S. Ct. at 1965; see also Iqbal, 129 S. Ct. at 1949.   Therefore, the DTPA and "Ogden Notice Requirement" claims fail as a matter of law.   Additionally, Alexander is not a consumer under the DTPA because her claim is based on subsequent mortgage
(continued...)

## II.  **Standard of Review**

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id.

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

---

[78] (...continued)
servicing and foreclosure activities, not on the purchase of her home.  See Rojas v. Wells Fargo Bank, N.A., 571 F. App'x 274, 279 (5th Cir. 2014); Brown v. Wells Fargo Bank, N.A., Civ. Action No. H-13-3228, 2015 WL 926573, at *3 (S.D. Tex. March 4, 2015); Fowler v. U.S. Bank, National Association, 2 F. Supp. 3d 965, 974-75 (S.D. Tex. 2014).

(2009) (citing <u>Twombly</u>, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1966).

When considering a motion to dismiss, courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." <u>Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC</u>, 594 F.3d 383, 387 (5th Cir. 2010). "[C]ourts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." <u>Flynn v. State Farm Fire and Casualty Insurance Co. (Texas)</u>, 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing <u>Neitzke v. Williams</u>, 109 S. Ct. 1827, 1832 (1989)). "If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." <u>Jones v. Bock</u>, 127 S. Ct. 910, 920-21 (2007); <u>see also</u> <u>Cooley v. Deutsche National Trust Co.</u>, Civ. Action No. 3:14-CV-1181-D, 2014 WL 2475895, at *1 (N.D. Tex. June 3, 2014).

### III.   Analysis

**A.   Violation of Texas Constitution Article XVI, § 50(A)(6)**

Alexander seeks a declaration that Defendant violated Texas Constitution Article XVI, § 50(A)(6)(Q)(ix) and (x).[79]  Defendant argues that this claim is time-barred.[80]  Citing Smith v. JPMorgan Chase Bank, National Association, 825 F. Supp. 2d 859, 867-68 (S.D. Tex. 2011), Alexander responds that no limitations period applies to a homestead owner's action to reclaim homestead and quiet title when the purported lien was void ab initio under the Texas Constitution, and the only way to transform an invalid lien into a valid one is to cure the constitutional violation within 60 days of notice by the owner.[81]

"'A lien on a homestead can be created only in the manner set out in the [Texas] Constitution.'"   Jones v. Bank of New York

───────────────

[79]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 20-21 ¶¶ 55-57.   Tex. Const. art. XVI, § 50(A)(6)(Q)(ix) requires that "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made."   Section 50(A)(6)(Q)(x) provides that "except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply . . . ."

[80]See Motion to Dismiss, Docket Entry No. 18, pp. 12-14.

[81]See Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Complaint ("Plaintiff's Response"), Docket Entry No. 20, pp. 3-4.

Mellon, Civ. Action No. H-13-2414, 2015 WL 300495, at *3 (S.D. Tex. Jan. 22, 2015) (quoting Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 784 (Tex. 1988)). Section 50(a)(6) provides that "[t]he homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for . . . an extension of credit that [is made on certain enumerated conditions]."

Alexander's argument fails in light of Priester v. JP Morgan Chase Bank, N.A., 708 F.3d 667 (5th Cir. 2013), where the Fifth Circuit addressed whether a statute of limitations applies to claims under the Texas Constitution Article XVI, § 50(a)(6). There, the plaintiffs alleged that defendants violated two provisions of Texas Constitution Article XVI: § 50(a)(6)(M)(I) and § 50(a)(6)(N). Id. at 672-73. The defendants argued that the plaintiffs' claims were barred by limitations, although there is no express limitations period for claims under § 50(a)(6). Id. at 672. The Fifth Circuit concluded that the residual statute of limitations in Texas Civil Practice and Remedies Code § 16.051 "applies to constitutional infirmities under § 50(a)(6)."[82] Id. at

---

[82]Although the Texas Supreme Court has not directly addressed the issue, the Priester court noted that Doody v. Ameriquest Mortgage Co., 49 S.W.3d 342 (Tex. 2001), suggests that "the Texas Supreme Court considers liens created in violation of Section 50(a)(6) to be voidable rather than void . . . ." and that the two Texas courts of appeals that have addressed the issue found that the residual statute applies. Priester, 708 F.3d at 673-74 (citing Rivera v. Countrywide Home Loans, Inc., 262 S.W.3d 834, 839 (Tex. App.—Dallas 2008, no pet.), and Schanzle v. JPMC Specialty Mortg. LLC, No. 03-09-00639-CV, 2011 WL 832170, at *4 (Tex. App.—Austin March 11, 2011, no pet.) (emphasis added).

673-74.   The "discovery rule" does not apply, and limitations begins to run when the lien is created.  Id. at 675-76.

Smith, 825 F. Supp. 2d at 867-68, on which Alexander relies, held that the residual statute of limitations does not apply to claims challenging home equity liens formed in contravention of § 50(a)(6)'s requirements.  Smith was decided before Priester, and the Priester court acknowledged that not all courts had previously agreed on the issue.  See Priester, 708 F.3d at 674, 674 n.4 (citing Smith, 825 F. Supp. 2d at 861).  However, Priester resolved the split among Texas federal district courts.  See Ausmus v. Deutsche Bank Trust Co. National Association, Civ. Action No. 3:13-CV-148, 2013 WL 3938515, at *2 (S.D. Tex. July 29, 2013) (noting that Priester resolved the split and comparing Reagan v. U.S. Bank National Association, Civ. Action No. H-10-2478, 2011 WL 4729845, at *3 (S.D. Tex. Oct. 6, 2011) and Hannaway v. Deutsche Bank National Trust Co., No. A-10-CV-714-LY, 2011 WL 891669, at *3 (W.D. Tex. March 11, 2011) (both applying a four-year limitations period), with Smith, 825 F. Supp. 2d at 867).

Under this authority Alexander's claim accrued on September 15, 1998.  She did not bring this action until May 4, 2015, more than four years later.[83]  See Jones, 2015 WL 300495, at

---

[83]See Alexander requested a copy of the Fair Market Value Acknowledgment via letter dated June 15, 2002.  Defendant "did not respond, nor made [sic] any attempt to cure the violation, as is clearly stated in the Plaintiff's complaint, let alone within the 60 days specified in [Smith]."). Regardless, the statute of (continued...)

*6 ("<u>Priester</u> controls and binds this Court to conclude that even if the lien were defective . . . when Jones' mortgage was created on June 4, 2003, it became valid as a matter of law when the four-year statute of limitations expired on June 4, 2007 and that [the bank] has the right to foreclose on the Property."); <u>see also</u> <u>Gutowsky v. Deutsche Bank National Trust Co.</u>, Civ. Action No. H-14-00839, 2014 WL 2696630, at *2-4 (S.D. Tex. June 11, 2014). Therefore, this claim has no merit.   <u>See</u> <u>Jones</u>, 127 S. Ct. at 920-21; <u>Cooley</u>, 2014 WL 2475895, at *1.

## B.   Breach of Contract

Alexander seeks a declaration that Defendant breached the Loan agreement before Defendant took legal action against Alexander, and that said breaches are ongoing.[84]   Defendant argues that the breach of contract claim is barred by limitations and that the claim otherwise fails because Alexander cannot state a breach of contract action when she admits that she was in breach herself.[85]   Alexander

---

[83](...continued)
limitations on Alexander's claim for violation of the Texas Constitution began to run on September 15, 1998, and expired four years later.   <u>See</u> <u>also</u> <u>Priester</u>, 708 F.3d at 675 (Plaintiffs argue that "some version of the discovery rule, rather than the injury rule, should apply here.   [Plaintiffs] contend that the period runs at the notice of demand for cure of the constitutional deficiencies or failure to cure."   "We . . . conclude that the legal injury rule applies to the creation of unconstitutional liens.").

[84]<u>See</u> Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 21-23 ¶¶ 58-61.

[85]<u>See</u> Motion to Dismiss, Docket Entry No. 18, pp. 14-16.

responds that Defendant relies on a "highly selective" reading of the Petition and that the breaches are ongoing, vitiating any time limitation.[86]

The court will address the statute of limitations arguments first.  Defendant relies on Alexander's reference to specific paragraphs in the factual background of the Petition.[87]  The Petition alleges, "[r]eferencing the facts evidenced in paragraphs 20 through 27 above Plaintiff states that [Defendant] knowingly breached the loan agreement."[88]  Paragraphs 20 through 27 discuss events occurring between September 7, 2007, and October 29, 2007.[89]

Under Texas law "[a] party asserting a breach of contract claim must sue no later than four years after the day the claim accrues."  See Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002) (citing Tex. Civ. Prac. & Rem. Code. § 16.051).  "It is well-settled law that a breach of contract claim accrues when the contract is breached."  See id.  A claim for breaches occurring in 2007 is barred by the four-year statute of limitations, which expired at the end of October of 2011, four years after the last

---

[86]See Plaintiff's Response, Docket Entry No. 20, pp. 4-5.

[87]See Motion to Dismiss, Docket Entry No. 18, p. 14.

[88]Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 21 ¶ 58.

[89]See id. at 6-9 ¶¶ 20-27.  See Loan Statement dated 10/18/07, Exhibit 14 to Petition, Docket Entry No. 6-5, p. 87 (The Petition cites this as Exhibit 15); Letter dated October 29, 2007, from Alexander to Defendant, Exhibit 16 to Petition, Docket Entry No. 6-5, pp. 89-90.

alleged breach occurred.  Nevertheless, the court has considered the Petition as a whole given the level of frustration Alexander experienced as a result of Defendant's conduct, which at a minimum evidences very poor customer relations.

To prevail on a breach of contract claim a plaintiff must show:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach.  See Sport Supply Group, Inc. v. Columbia Casualty Co., 335 F.3d 453, 465 (5th Cir. 2003); Brown, 2015 WL 926573, at *3 (citing Owens v. Bank of America, NA, Civ. Action No. H-11-2552, 2012 WL 912721, at *4 (S.D. Tex. Mar. 16, 2012)).  Generally, a home-owner in default on mortgage payments cannot establish the second element — performance or tendered performance — because the homeowner has not performed.  See Brown, 2015 WL 926573, at *3; Owens, 2012 WL 912721, at *4 ("[T]he plaintiffs have undisputedly not performed their contractual obligations because they have not stayed current on their mortgage payments.").  Thus, "a party to a contract who is himself in default cannot maintain a suit for its breach."  Kaechler v. Bank of America, N.A., Civ. Action No. H-12-423, 2013 WL 127555, at *3 (S.D. Tex. Jan. 9, 2013) (quoting RE/MAX of Texas, Inc. v. Katar Corp., 989 S.W.2d 363, 365 n.4 (Tex. 1999)); see also Cole v. Bank of America, N.A., Civ. Action No. H-12-0006, 2012 WL 465190, at *2 (S.D. Tex. Feb. 13, 2012).

Alexander admits that she defaulted on her loan obligations in September of 2005.[90]   As of September 13, 2007, she had missed 43 payments.[91]   Alexander argues that "Plaintiff informed Defendant that Defendant was in breach prior to Defendant claiming a breach by the Plaintiff."[92]   However, there are no allegations of breach by Defendant before September of 2005 when Alexander fell behind on her payments and defaulted on the Loan.

However, Alexander alleges that the Loan was "reinstated" and Defendant breached the "reinstated Loan Agreement."[93]   The Reinstatement Quote states:   "[p]lease note that we do not recognize mailing postmark dates.   Therefore, the amount quoted above must be received in a World Savings branch or at our San Antonio office no later than 5:00 p.m., Central Time, on 09-25-07.   After this date, additional amounts may become due."[94]

---

[90]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 5 ¶ 16.

[91]See Reinstatement Quote, Exhibit 7 to Petition, Docket Entry No. 6-5, pp. 66-67.

[92]See Plaintiff's Response, Docket Entry No. 20, p. 5. Alexander's argument appears to rely on the timing of which party informed the other of the breach first, rather than the timing of which party breached the contract first.   This argument is not supported by her case law.

[93]"When [Defendant] provided the Plaintiff misleading and inaccurate accounting, conflicting demands for payment and refusal to accept contractually specified payment, thereby preventing Plaintiff from performing under the agreement, [Defendant] materially breached the reinstated loan agreement."   Petition, Docket Entry No. 6-5, p. 21 ¶ 58; see also id. at 22-23 ¶ 60.

[94]Reinstatement Quote, Exhibit 7 to Petition, Docket Entry No. 6-5, pp. 66-67.   Additionally, the Reinstatement Quote states:
(continued...)

In the "Breakdown of Total Due to Reinstate" section, it states "Good through 09-25-07."[95]   The faxed wire confirmation for Alexander's $106,000 reinstatement payment is dated September 28, 2007.[96]   Alexander admits that she did not make the payment by the time required in the Reinstatement Quote (although she paid more than the required reinstatement amount because she "wanted to be sure that everything was current, and figured an additional 3 days of interest charges that should be due since the reinstatement quote was calculated to be accurate until 5:00 pm on September 25, 2007, so [she] rounded up to $106,000.00 to ensure everything was paid to a current status.").[97]   Her Petition, therefore, does not

_____

[94](...continued)
"This reinstatement quote may or may not include advances for insurance, property taxes and other assessments.  If World Savings advanced delinquent property taxes, hazard/flood insurance, or other assessments on your behalf, you may be required to make payment into an escrow account with World Savings.  You will be notified in writing upon the reinstatement of your loan as to specific requirements, if any."  Id. at 67.

[95]See id.

[96]See Fax Cover Sheet and Wachovia Wire Transfer of Funds Request, dated 9/28/2007, Exhibit 8 to Petition, Docket Entry No. 6-5, pp. 70-71.

[97]See Letter dated December 27, 2007, from Alexander to Defendant, Exhibit 26 to Petition, Docket Entry No. 6-5, p. 116. The Petition also fails to identify the specific provisions of the contract (Note and Deed of Trust) that Defendant allegedly violated.  See Sandhar v. Grewal, Civ. Action No. H-08-2348, 2009 WL 175073, at *4 (S.D. Tex. Jan. 23, 2009) ("[Plaintiffs] must set forth their breach of contract claims under clear headings.  For each claim, [Plaintiffs] must plead the date of the contract, the parties to the contract, and the provisions of the contract allegedly breached.  Further, as to each contract claim, [Plaintiffs] also should plead facts in support of each element of
(continued...)

show the Loan was reinstated.  However, Alexander also alleges that Defendant acknowledged that the Loan was reinstated and that subsequent Loan Statements and the Annual Escrow Account Disclosure Statements were in error.  Indeed, there are communications from Defendant indicating that it accepted the reinstatement payment and the Loan was reinstated, although Alexander made the payment late.[98]

Alexander undoubtedly experienced frustration at the lack of communication from Defendant since she attempted to rectify her default by making a large payment to reinstate her Loan. Unfortunately, these events occurred over seven years before the filing of this action (during which time she has presumably lived in the home).  Alexander argues the breaches are "ongoing," but this does not save her claim.  Alexander provided an extensive factual background, but the Petition and Plaintiff's Response fail to identify how Defendant's actions within four years of the filing of the Petition breached any provisions of the Note or Deed of Trust, and do not show that Alexander had performed or tendered performance at that time.

---

[97](...continued)
the claim."); King v. Wells Fargo Bank, N.A., 2012 WL 1205163, at *2 (N.D. Tex. March 30, 2012).  "Federal courts in this circuit, applying the pleading standards of Rule 8(a), have consistently held that a plaintiff must identify the specific contract provisions that the defendant allegedly breached."  In re Trevino, 535 B.R. 110, 154 (Bankr. S.D. Tex. 2015).  However, this is not always fatal, as long as the allegations are not so "vague and conclusory" as to deprive defendants of fair notice.  See id.

[98]See, e.g., Letter dated November 20, 2007, from Defendant to Alexander, Exhibit 17 to Petition, Docket Entry No. 6-5, p. 92 ("We appreciate your recent remittance of funds to reinstate your loan.").

## C.   Negligent Misrepresentation

Alexander requests a judicial determination and declaration that Defendant's actions in misrepresenting material facts, which Alexander relied on, constitute negligent misrepresentation.[99] Defendant argues that Alexander's negligent misrepresentation claim fails because the two-year statute of limitations has run, because it is barred by the economic loss rule, and because the Petition otherwise fails to state a claim.[100]   Alexander responds that Defendant's misrepresentation is ongoing and that the negligent misrepresentation "is based upon the loan reinstatement quote."[101]

---

[99]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 23-26 ¶¶ 62-69.

[100]See Motion to Dismiss, Docket Entry No. 18, pp. 16-19. Defendants argue that Alexander failed to allege certain elements of the claim.  The elements of a negligent misrepresentation claim are:  "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." Ayres v. Parker, Civ. Action No. SA-12-CV-621-XR, 2013 WL 4048328, at *12 (W.D. Tex. July 29, 2013) (quoting Federal Land Bank Association of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)). In Ayres the court noted that "Plaintiffs have failed to adduce evidence demonstrating that any of the aforementioned representations were made for the guidance of others in a business or that either Bank of America or FNMA failed to exercise reasonable care or competence in obtaining or communicating the information." Id. at *14.  The court granted the defendant bank's motion for summary judgment on that claim, which also stemmed from a mortgage loan transaction. See id. at *1, *14.

[101]See Plaintiff's Response, Docket Entry No. 20, p. 5.

Alexander argues that "[t]he loan reinstatement quote references the original contract, but is a separate action from the contract and as such is not barred [by the economic loss rule]."[102]

A claim for negligent misrepresentation is subject to the two-year statute of limitations. <u>See</u> Tex. Civ. Prac. & Rem. Code § 16.003(a); <u>Gallier v. Woodbury Financial Services, Inc.</u>, Civ. Action No. H-14-888, 2015 WL 3404934, at *4-5 (S.D. Tex. May 26, 2015). The claim accrues when the misrepresentation is made. <u>See</u> <u>Val-Com Acquisitions Trust v. Bank of America, N.A.</u>, Civ. Action No. 4:10-cv-421, 2011 WL 4591959, at *4 (E.D. Tex. Sept. 30, 2011); <u>Anderson v. American Tank and Vessel Inc.</u>, Civ. Action No. H-05-3652, 2007 WL 954228, at *5 (S.D. Tex. March 26, 2007) (citing <u>Sabine Towing & Transportation Co., Inc. v. Holliday Insurance Agency, Inc.</u>, 54 S.W.3d 57, 59-60 (Tex. App.—Texarkana 2001, pet. denied)). The statute may be tolled, however, by fraudulent concealment or under the discovery rule. <u>See</u> <u>Val-Com Acquisitions</u>, 2011 WL 4591959, at *4 ("A cause of action for negligent misrepresentation accrues at the time the misrepresentation occurs unless the plaintiff sets forth facts establishing that he did not discover, and with reasonable diligence could not have discovered, the fraudulent nature of the representations so as to defer the accrual date beyond the date the defendant allegedly made the misrepresentations."); <u>see also</u> <u>Gallier</u>, 2015 WL 3404934, at *8.

---

[102]<u>See</u> <u>id.</u> at 5-6.

In support of her negligent misrepresentation claim Alexander cites events occurring between September 7, 2007, and November 1, 2007.[103] This cause of action also refers to "the facts evidenced in paragraphs 34 and 35 above," which recount events in December of 2007 and April of 2008.[104] Alexander does not argue that a tolling rule applies. The Petition indicates that she knew of the alleged misrepresentations immediately, as evidenced by her detailed correspondence and record keeping. Thus, the statute of limitations expired two years after Defendant made the alleged misrepresentations in 2007 and 2008.

Additionally, "the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties." Clark v. Bank of American NA, No. 3:12-CV-1277-N-BK, 2012 WL 4793465, at *5 (N.D. Tex. Aug. 1, 2012) (citing Southwestern Bell Telephone Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991)). "[W]hen a plaintiff alleges only an economic loss arising out of a contractual relationship between the parties, the plaintiff is precluded from proceeding under a negligence cause of action." Ellis v. PNC Bank, N.A., Civ. Action No. 4:11-CV-03990, 2012 WL 2958266, at *4 (S.D. Tex. July 19, 2012) (citations and quotations omitted). "Nevertheless, if the defendant's conduct would give rise to liability independent of the

---

[103]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 23–25 ¶ 64.

[104]See id. at 23 ¶ 62; 15–16 ¶¶ 34–35.

fact that a contract exists between the parties, the plaintiff may bring a tort claim in addition to a claim for breach of contract." Clark, 2012 WL 4793465, at *5.  "The economic loss rule applies to real estate transactions."  Id. (citing Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986)).

Alexander argues that the loan reinstatement quote and "the actions and behavior arising therefrom" are "a separate action from the original contract"[105] and not barred.  The court addressed a similar argument in this context in Ellis, 2012 WL 2958266, at *4, where the plaintiff alleged that the defendant "represented that the foreclosure scheduled for March 1, 2011 'was suspended pending a review of his recently submitted documents.'  Despite this, the foreclosure took place on March 1."  The court found that the plaintiff "contend[ed] that PNC promised to forgo a pre-existing contractual right to foreclose under the loan agreement," and dismissed the negligent misrepresentation claim because the plaintiff's "complaints relate[d] only to the parties' contractual relationship, and cannot, as a matter of law, form the basis of a tort claim."  Id.; see also Sanghera v. Wells Fargo Bank, N.A., 2012 WL 555155, at *6 ("[T]he economic loss rule bars Plaintiffs' negligent misrepresentation claim.  Any rights or obligations of the parties stemmed from the Deed of Trust.  Plaintiffs' alleged loss of title and creditworthiness are economic damages that arise

---

[105]See Plaintiff's Response, Docket Entry No. 20, pp. 5-6.

directly from the alleged breach of this contractual relationship[.]").

Alexander argues that she paid $106,000 based on the misrepresentation of the Loan Reinstatement quote.[106] The economic loss rule bars tort claims when, as here, "the parties' relationship and their attendant duties arise from a contract." See Kiper v. BAC Home Loans Servicing, LP, 884 F. Supp. 2d 561, 573 (S.D. Tex. 2012). Facing similar arguments, the Kiper court stated

> Under the doctrine the court examines two factors, the source of the duty and the nature of the remedy. [Plaintiff]'s fraud/misrepresentation allegations are based on Defendants' "misleading and inconsistent information, lost correspondence, verbal abuse, and extensive delay" in "communicating the status of Emma's mortgage loan modification." The claim derives from the default and enforcement of the indebtedness at issue. Therefore Kiper's alleged tort damages are economic and arise from claims dependent upon the existence of a contract.

Id. The same reasoning applies here. For these reasons, the negligent misrepresentation claim has no merit.[107]

---

[106]See id. at 6. She does not explain how the Reinstatement Quote was a misrepresentation.

[107]Promises of future action are also not actionable in Texas as a negligent misrepresentation tort; the false information provided by the defendant must be a misstatement of existing fact. See Clardy Manufacturing Co. v. Marine Midland Business Loans Inc., 88 F.3d 347, 357-58 (5th Cir. 1996). This rule has been applied in the mortgage foreclosure context. See, e.g., De Franceschi v. BAC Home Loans Servicing, L.P., 477 F. App'x 200, 205 (5th Cir. 2012) ("The plaintiffs claim that the district court erred in dismissing their negligent-misrepresentation claims based on BAC's representation to De Franceschi that their property would not be foreclosed upon while their loan-modification application was pending. Plaintiffs maintain that the representation was one of existing fact—that BAC, as a matter of practice, does not foreclose
(continued...)

### D.   Breach of the Texas UCC Duty of Good Faith and Fair Dealing

Alexander seeks a judicial determination and declaration that Defendant's actions "constitute a violation of the "Texas Legal Duty to Deal in Good Faith."[108]  Defendant argues that the two-year statute of limitations has run in part on the duty of good faith and fair dealing claim.[109]  Defendant also argues that the claim otherwise fails because the duty does not arise between a mortgagor and a mortgagee and because the UCC does not apply to a transaction giving rise to a lien on real property.[110]  Alexander responds that the "UCC breach and its effects are ongoing, uncorrected, and necessitated the seeking of judicial relief" and is thus not time barred.[111]  Alexander also argues that Defendant erroneously relies on cases involving mortgages when Alexander and Defendant are parties to a contractual loan rather than a mortgage.[112]

---

[107](...continued)
on properties while a modification application is pending—rather than a promise of future action that BAC would, in this case, not foreclose on the property while the application was pending.  After reviewing the record, we see that it is plain that the alleged statements by the BAC representative were promises of future action rather than representations of existing fact. . . .").  To the extent Alexander claims she relied on the Reinstatement Quote as a promise that Defendant would not foreclose in the future, such a promise is not actionable as negligent misrepresentation in Texas.

[108]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, pp. 26-28 ¶¶ 70-76.

[109]See Motion to Dismiss, Docket Entry No. 18, p. 20.

[110]See id. at 20-22.

[111]See Plaintiff's Response, Docket Entry No. 20, p. 6.

[112]See id. at 6-7.

-35-

A claim for breach of the duty of good faith and fair dealing is subject to the two-year statute of limitations. See Tex. Civ. Prac. & Rem. Code § 16.003(a); Martinez Tapia v. Chase Manhattan Bank, N.A., 149 F.3d 404, 411 (5th Cir. 1998); Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 827-28 (Tex. 1990). A cause of action accrues when the wrongful act effects an injury. See Murray, 800 S.W.2d at 828. "The fact that damage may continue to occur for an extended period after denial[113] does not prevent limitations from starting to run. Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff." Id. Alexander references conduct that occurred between June of 2002 and September of 2014.[114] The statute of limitations has run for a claim based on actions taken more than two years before Alexander filed her Petition on May 4, 2015.

Significantly, "[s]uch a duty does not exist in the present relationship, as Texas does not recognize a covenant of good faith and fair dealing between 'a mortgagor and a mortgagee' . . . ." Water Dynamics, Ltd. v. HSBC Bank USA National Association, No. 4:11-CV-614-A, 2012 WL 34252, at *6 (N.D. Tex. Jan. 6, 2012) (citing FDIC v. Coleman, 795 S.W.2d 706, 709 (Tex. 1990)). "Ordinarily, there is no such a duty in lender-lendee

---

[113]This case deals with wrongful denial of insurance coverage, and the court held that wrongful denial triggered the running of the statute of limitations. See id.

[114]See Petition, Exhibit E to Notice of Removal, Docket Entry No. 6-5, p. 26 ¶ 70 (referencing ¶¶ 35, 36, and 49-53 of the Petition); p. 27 ¶ 73 (referencing ¶¶ 14-48 of the Petition).

relationships." Id.  The "duty of good faith and fair dealing is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." Id. (quotations omitted); Coleman v. Bank of America, N.A., No. 3-11-CV-0430-G-BD, 2011 WL 2516169, at *1 (N.D. Tex. May 27, 2011) ("Nor does Texas law recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a 'special relationship[] marked by shared trust or an imbalance in bargaining power.'"); Jones v. Wells Fargo Bank, N.A., No. 4:12-CV-446, 2013 WL 4414321, at *1 (E.D. Tex. Aug. 13, 2013) ("[I]t is well established that the relationship between a borrower and lender is usually neither a fiduciary relationship nor a special relationship.  Texas courts have consistently found that there is no duty of good faith and fair dealing between a mortgagor and a mortgagee.").  Alexander has not pleaded any facts that demonstrate she had a special relationship with Defendant beyond that of a borrower to a lender or a mortgagor to a mortgagee.  See King, 2012 WL 1205163, at *2.[115]

Because the Deed of Trust places a lien on real property, the UCC does not apply.  Water Dynamics, 2012 WL 34252, at *6 (quoting

---

[115]See also Ayres, 2013 WL 4048328, at *1, *11 (holding that bank's acceptance of a check after it started the foreclosure process did not "create a new contract" or impose a duty to act in good faith because Plaintiffs were merely tendering an amount they already owed the bank under the Note, although the payment was tendered with a letter stating "Your acceptance of the tendered payment will confirm your agreement to work in good faith with my clients in their attempt to settle the above referenced account.").

Vogel v. Travelers Indemnity Co., 966 S.W.2d 748, 753 (Tex.
App.—San Antonio 1998, no pet.)); Tremble v. Wells Fargo Home
Mortgage, Inc., 478 F. App'x 164, 166 (5th Cir. 2012) ("The UCC,
however, does not govern the mortgage, a lien on real property.")
(citations omitted); Jones, 2013 WL 4414321, at *9.   Although
Alexander argues that this was a "contract" rather than a mortgage,
the Deed of Trust created a lien on real property, and the UCC does
not apply.   For these reasons, the court concludes that Alexander
has failed to state a claim for breach of the duty of good faith
and fair dealing, and this claim will be dismissed.[116]

---

[116]Alexander seeks various forms of declaratory and injunctive
relief throughout the Petition.  See Petition, Exhibit E to Notice
of Removal, Docket Entry No. 6-5.  The requests for declaratory and
injunctive relief will also be dismissed.  "Both Texas and federal
law require the existence of a justiciable case or controversy in
order to grant declaratory relief."  Val-Com Acquisitions Trust v.
CitiMortgage, Inc., 421 F. App'x 398, 400 (5th Cir. 2011) (citing
Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995)); see
also Conrad v. SIB Mortgage Corp., No. 4:14-CV-915-A, 2015
WL 1026159, at *7 (N.D. Tex. Mar. 6, 2015) ("A declaratory judgment
action requires the parties to litigate some underlying claim or
cause of action."); Elekes v. Wells Fargo Bank, N.A., No. 5:13-CV-
89, 2014 WL 2700686, at *5 (S.D. Tex. June 11, 2014) ("Declaratory
judgment is merely a form of relief that the Court may grant; it is
not a substantive cause of action.").  Because Plaintiff's claims
will be dismissed, her requests for declaratory relief have no
merit.  The same reasoning applies to her requests for injunctive
relief.  See Smith v. Wells Fargo Bank, N.A., Civ. Action No. H-14-
283, 2014 WL 3796413, at *2 (S.D. Tex. July 31, 2014); Brittingham
v. Ayala, 995 S.W.2d 199, 201 (Tex. App.—San Antonio 1999, pet.
denied) ("An injunction is an equitable remedy, not a cause of
action.  To obtain an injunction, a party must prove a probable
right of recovery through a claim or cause of action.") (citations
omitted).

### IV.   <u>Conclusions and Order</u>

For the reasons discussed above, Alexander has not stated any claims in her Petition upon which relief can be granted. Defendant's Motion to Dismiss (Docket Entry No. 18) is therefore **GRANTED,** and this action will be dismissed with prejudice as to Defendant.

**SIGNED** at Houston, Texas, on this the 12th day of May, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE